UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH LITTLE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> UNILEVER UNITED STATES, INC., <br><br> *Defendant*. | No. 3:22-cv-01189-MPS |

**RULING ON MOTIONS TO APPOINT INTERIM LEAD CLASS COUNSEL**

**I.    INTRODUCTION & BACKGROUND**

This case concerns allegedly defective dry shampoo products sold by Defendant Unilever United States, Inc. ("Unilever"). Plaintiffs, on behalf of themselves and all other similarly situated, allege that a number of Unilever's dry shampoo products contained dangerous levels of benzene and bring claims for (i) breach of express warranty, (ii) breach of implied warranty, (iii) fraudulent misrepresentation, (iv) fraud by omission, (v) negligent misrepresentation, (vi) unjust enrichment, and (vii) violation of state consumer protection statutes. ECF No. 1 at ¶ 6. Plaintiffs in the *Little* action were the first to bring these claims against Unilever, and several follow-on actions were filed shortly thereafter.[1] ECF No. 36 at 3; ECF No. 37 at 9–10. These cases have been consolidated into the present action, *see* ECF No. 30, and two groups of counsel now move to be appointed interim lead class counsel. For the reasons stated herein, I appoint Steven L.

---

[1] The follow-on actions are *Rullo v. Unilever United States, Inc.*, No. 3:22-cv-01618; *Barnette v. Unilever United States, Inc.*, No. 3:22-cv-01649; *Schriver v. Unilever United States, Inc.*, No. 3:22-cv-01617; *Simmons v. Unilever United States, Inc.*, No. 3:23-cv-00491; *Loudenslager v. Unilever United States, Inc.*, No. 3:23-cv-00625; *Earl et al. v. Unilever United States, Inc.*, No. 3:23-cv-00702; and *Sims v. Unilever United States, Inc.*, No. 3:23-cv-00708. Plaintiffs dismissed the *Schriver* action without prejudice. *Schriver* action ECF No. 22.

Bloch and Ian W. Sloss of Silver Golub & Teitell LLP as interim lead class counsel and Joseph G. Sauder of Sauder Schelkopf LLC and Stephen Fearon of Squitieri & Fearon LLP as members of Plaintiffs' Executive Committee.

## II.     LEGAL STANDARD

Rule 23(g)(3) provides that a court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]" Manual for Complex Litigation (Fourth) § 21.11 (2004). "When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g) of the Federal Rules of Civil Procedure." *Granata v. Pratt & Whitney*, No. 3:21-cv-01657, 2022 WL 732271, at *1 (D. Conn. Mar. 11, 2022). Under Rule 23(g)(1)(A), a court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Ultimately, "[t]he selection of lead counsel for the plaintiff class is left to the discretion of the district court guided by the best interests of [the class] . . . ." *In re Agent Orange Product Liability Litig.*, 818 F.2d 179, 187 (2d Cir. 1987).

## III.   DISCUSSION

Two counsel groups—(1) Silver Golub & Teitell LLP ("SGT") and (2) The Sultzer Law Group, P.C. ("Sultzer") and Bradley Grombacher LLP ("BG") (collectively, "Sultzer-Bradley")—have moved to be appointed interim lead or co-lead class counsel. I will first consider SGT's motion before turning to Sultzer-Bradley's motion.

### A.   SGT's Motion

SGT moves to appoint Steven L. Bloch and Ian W. Sloss as interim lead class counsel and to appoint Joseph G. Sauder of Sauder Schelkopf LLC and Stephen Fearon of Squitieri & Fearon LLP as members of Plaintiffs' Executive Committee. ECF No. 36 at 1, 6. In support of their motion, they argue that their prior work on the case, their experience in litigating similar matters, and their collective resources "unqualifiedly demonstrate[] that they are in best position to vigorously pursue the interests of putative Class Members." *Id.* at 1. I agree.

The first Rule 23(g)(1)(A) factor—"the work counsel has done in identifying or investigating potential claims in the action"—is especially indicative of SGT's fitness to serve as interim lead class counsel. SGT was the "first to identify the claims in these actions and to investigate them and have expended substantial resources to do so." *In re Bystolic Antitrust Litig.*, No. 20-cv-5735, 2020 WL 6700830, at *1 (S.D.N.Y. Nov. 12, 2020). Specifically, the SGT group:

> (i) investigated the dangers of benzene in aerosol products; (ii) engaged an independent laboratory who tested numerous Dry Shampoo Products, including Unilever's Products; (iii) reviewed and analyzed the results of independent testing with the assistance of experts; (iv) put together a broad and representative class of plaintiffs [across] multiple states, who purchased a variety of Products, and (v) notified Unilever of the presence of benzene in Unilever's Dry Shampoo Products which has already resulted in substantial benefits to the putative Class and general public by causing Unilever to recall the Products.

ECF No. 36 at 8.  Further, the *Little* action, brought by SGT, was the first of the consolidated cases to be filed.  ECF No. 36 at 3; ECF No. 37 at 9–10.  And while subsequent cases relied on public information following Unilever's recall of its dry shampoo products, *Little* relied on SGT's original investigation of Unilever's products and independent investment of resources.  ECF No. 36 at 8.  Indeed, it is likely that the *Little* suit motivated the subsequent actions.  *See In re: Int. Rate Swaps Antitrust Litig.*, No. 16-mc-2704, 2016 WL 4131846, at *3 (S.D.N.Y. Aug. 3, 2016) (appointing as lead class counsel the law firms that first brought the actions that "catalyzed the filing of the later actions").

The second and third Rule 23(g)(1)(A) factors also counsel in favor of approving SGT's proposed leadership structure.  These factors consider "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action" as well as "counsel's knowledge of the applicable law."  The law firms of SGT, Sauder Schelkopf, and Squitieri & Fearon have extensive experience and demonstrated success litigating class actions generally as well as cases involving benzene contamination specifically.  *See* ECF No. 36 at 10–17.  And both attorneys Bloch and Sloss have significant experience representing classes in complex litigation.  *Id.* at 11–15.  I am satisfied that this collection of lawyers and firms has the knowledge and skillset required to effectively pursue this action.

The fourth and final Rule 23(g)(1)(A) factor, which concerns the "resources that counsel will commit to representing the class," also weighs in favor of appointing SGT as interim lead class counsel.  As discussed previously, SGT has already expended considerable resources to prosecute this case, specifically by engaging an independent lab and experts to investigate the level of benzene in Unilever's dry shampoo products.  *Id.* at 1–2.  Moreover, the addition of the

Sauder Schelkopf and Squitieri & Fearon firms as members of Plaintiffs' Executive Committee will provide additional resources committed to the class's representation.

In short, I am persuaded that SGT's proposed leadership structure will best serve the interests of the class, and thus I grant its motion to appoint attorneys Bloch and Sloss as interim lead class counsel and to appoint attorneys Sauder and Fearon as members of the Plaintiff's Executive Committee.

### B. Sultzer-Bradley's Motion

Sultzer-Bradley moves to serve as co-lead counsel alongside SGT.[2] ECF No. 37 at 1. Rather than appointing individual attorneys as lead counsel, Sultzer-Bradley's proposed leadership structure would allow any lawyer from several firms to litigate portions of the case, with Sultzer-Bradley attorneys serving in coordination and "advisory" roles. *See id.* at 2–6.

While I appreciate, as Sultzer-Bradley suggests, that a diffuse leadership structure can benefit junior and diverse attorneys, I am convinced that a more defined leadership structure involving the lawyers who initiated the investigation of Unilever's dry shampoo products will best serve the interests of the class and promote judicial efficiency in this case. With multiple law firms often come the potential for inefficiencies. *See, e.g., Haynie v. Cornell Univ.*, No. 3:20-cv-467, 2020 WL 6043947, at *2 (N.D.N.Y. Oct. 13, 2020) ("While case law does allow for multiple firms to serve as class counsel, we are also aware of the caution in the Manual for Complex Litigation that although the functions of lead counsel may be divided among several attorneys, the number should not be so large as to defeat the purpose of making such appointments." (internal quotations omitted)); *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 436 (S.D.N.Y. 2016) ("[H]aving too many lawyers in one case, no matter how large the case,

---

[2] Sultzer-Bradley clarifies in its motion that SGT has not consented to this proposal. ECF No. 37 at 1 n.1.

inevitably invites duplication of tasks with a concomitant escalation of fees."). I therefore prefer SGT's proposed leadership structure, in which individual lawyers from one firm will serve as interim lead class counsel, with other attorneys serving as members of an executive committee. As discussed above, the SGT lawyers have done the most work to prepare this case to date. Moreover, SGT's proposed leadership structure does not preclude the delegation of specific tasks to attorneys at other firms. *See* ECF No. 36 at 19.

Thus, although I have no doubt that Sultzer-Bradley attorneys possess relevant experience and skills, I deny Sultzer-Bradley's motion to be appointed interim co-lead class counsel.

## IV. CONCLUSION

For the reasons discussed above, I appoint Steven L. Bloch and Ian W. Sloss as interim lead class counsel, and I appoint Joseph G. Sauder of Sauder Schelkopf and Stephen Fearon of Squitieri & Fearon as members of Plaintiffs' Executive Committee. Interim Lead Class Counsel will be responsible for the overall prosecution of this litigation on behalf of the putative class. Within 30 days of the issuance of this order, Interim Lead Class Counsel will file a consolidated Class Action Complaint on behalf of all Plaintiffs. Unilever will file any responses within 21 days of the filing of the Class Action Complaint.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

July 28, 2023