UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ELIZABETH LITTLE, CATHY ARMSTRONG, CLAIR AWAD, KELLY BRANCH, SUZANNE FITZGERALD, MARI GUNN, SARAH HERNANDEZ, STACY VAIL, CHRISTINA VANVLIET, BILLIE BARNETTE, and ROBERT RULLO, on behalf of themselves and all others similarly situated, | : : : : : : : : : : | 3:22-cv-01189 (MPS) |
| Plaintiffs, | : : |  |
| v. | : : |  |
| UNILEVER UNITED STATES, INC., AEROPRES CORPORATION, and VOYANT BEAUTY, LLC, | : : : : |  |
| Defendants. | : | MARCH 13, 2024 |

**<u>MEMORANDUM IN SUPPORT OF UNILEVER'S MOTION TO DISMISS
THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................1

FACTUAL BACKGROUND...............................................................................................3

     A.     Plaintiffs' Allegations .................................................................................3

     B.     Low levels of benzene are present everywhere. .........................................5

     C.     Plaintiffs' claims are based on test results from a third-party laboratory
          that FDA and the courts have admonished. .................................................6

     D.     Analysis of Unilever's products by an FDA-compliant laboratory using a
          validated methodology shows the number of affected products was much
          smaller....................................................................................................7

     E.     Unilever recalls selected products and offers refunds. .............................8

LEGAL STANDARD............................................................................................................9

I.     Standing .....................................................................................................9

II.     Failure to State a Claim...............................................................................10

ARGUMENT ........................................................................................................................10

I.     Plaintiffs have not shown they have standing to bring these claims..................10

     A.     Plaintiffs have not plausibly alleged an injury-in-fact because they have
          not shown they bought products containing benzene. ............................11

     B.     Plaintiffs have not alleged an injury-in-fact because they fail to plausibly
          show the products pose any health risk........................................................20

     C.     Plaintiffs have not shown they failed to receive the benefit of the bargain. ..........24

     D.     Plaintiffs lack standing to seek equitable relief. ......................................25

II.     Plaintiffs' labeling claims are expressly preempted. ........................................27

     A.     Plaintiffs' claims based on failure to include benzene on the products'
          ingredient list are expressly preempted...................................................27

     B.     Plaintiffs' claims based on failure to warn of the risks of benzene are
          expressly preempted for similar reasons...................................................29

III.     Plaintiffs' claims based on the sale of allegedly adulterated or misbranded
      products are impliedly preempted....................................................................31

IV.     Plaintiffs have not plausibly alleged any deceptive statements or omissions...................35

     A.     The only statements Plaintiffs identify with particularity are puffery on
          which a reasonable consumer could not rely. ..........................................37

     B.     Plaintiffs have not plausibly alleged that Unilever knew the facts it
          allegedly omitted at the time of sale. .....................................................39

      C.     Plaintiffs have not plausibly alleged that Unilever had any fraudulent intent or duty to disclose. ...................................................................41

V.     Plaintiffs' claims for negligent misrepresentation fail for additional reasons. .................43

VI.    The fraud by omission claims of Plaintiffs Armstrong, Branch, Fitzgerald, Hernandez, Vail, Barnette, and Rullo are barred by the economic-loss rule. ...................45

VII.   The economic-loss rule bars Plaintiff Rullo's fraudulent misrepresentation claim ..........45

VIII.  Plaintiffs fail to state a claim under the various state consumer fraud statutes for additional reasons. ...........................................................................................................45

      A.     Plaintiff Little's claim under CUTPA fails for additional reasons. .....................46

      B.     Plaintiffs Armstrong and Hernandez fail to state a claim under California's CLRA, FAL, and UCL for additional reasons. ......................................................46

      C.     Plaintiffs Awad and VanVliet fail to state a claim under N.Y. GBL §§ 349 and 350 for additional reasons. ................................................................................48

      D.     Plaintiff Gunn fails to state a claim under the ICFA for additional reasons..........49

      E.     Plaintiff Rullo fails to state a claim under Pennsylvania's UTPCPL for additional reasons. .......................................................................................................49

      F.     Plaintiffs fail to state a claim under the NJCFA for additional reasons.................49

IX.    Plaintiffs have not stated a claim for unjust enrichment for additional reasons. ...............50

X.     Plaintiffs' claims for breach of express warranty fail. .......................................................51

      A.     Plaintiffs have not stated a claim for breach of express warranty. ........................51

      B.     The express warranty claims of Plaintiffs Little, Awad, VanVliet, Gunn, and Barnette are barred by lack of privity. ...........................................................53

      C.     Plaintiffs Barnette's and Rullo's express warranty claims fail for lack of pre-suit notice. .......................................................................................................54

XI.    Plaintiffs have not stated a claim for breach of implied warranty. ....................................54

      A.     Plaintiffs have not alleged the breach of any implied warranty.............................54

      B.     The implied warranty claims of Plaintiffs Little, Armstrong, Awad, Gunn, Hernandez, VanVliet, and Barnette are barred by lack of privity. .......................55

      C.     Plaintiffs Barnette's and Rullo's implied warranty claims fail for lack of pre-suit notice. .......................................................................................................56

XII.   Plaintiffs' strict liability claims fail as a matter of law. ......................................................56

XIII.  The Court should dismiss Plaintiffs' medical-monitoring claims. .....................................57

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akridge v. Whole Foods Mkt. Grp., Inc.*,
  2022 WL 955945 (S.D.N.Y. Mar. 30, 2022) ........................................................15

*Anschutz Corp. v. Merrill Lynch & Co.*,
  690 F.3d 98 (2d Cir. 2012) ..............................................................................43, 44

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................10, 16

*Asnat Realty, LLC v. United Illuminating Co.*,
  253 A.3d 56 (Conn. App. Ct. 2021) ....................................................................42

*Aviamax Aviation, Ltd. v. Bombardier Aerospace Corp.*,
  2010 WL 1882316 (D. Conn. May 10, 2010) ......................................................50

*Axon v. Florida's Natural Growers, Inc.*,
  813 F. App'x 701 (2d Cir. 2020) ........................................................................38

*Bailey v. Rite Aid Corp.*,
  2020 WL 6789435 (N.D. Cal. Nov. 18, 2020) ...................................................7, 8

*Barrows v. Forest Labs., Inc.*,
  742 F.2d 54 (2d Cir. 1984) ..................................................................................24

*BCBSM, Inc. v. Walgreen Co.*,
  512 F. Supp. 3d 837 (N.D. Ill. 2021) ..................................................................44

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................10

*Bell v. Publix Super Mkts., Inc.*,
  982 F.3d 468 (7th Cir. 2020) ..............................................................................36

*Bell v. Univ. of Hartford*,
  577 F. Supp. 3d 6 (D. Conn. 2021) ................................................................41, 43

*BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*,
  77 F.3d 603 (2d Cir. 1996) ..................................................................................56

*Benoit v. Saint-Gobain Performance Plastics Corp.*,
  959 F.3d 491 (2d Cir. 2020) ................................................................................57

*Berni v. Barilla S.p.A.*,
   964 F.3d 141 (2d Cir. 2020)........................................................................26

*Berry v. City of Chicago*,
   181 N.E.3d 679 (Ill. 2020) ........................................................................57

*Bimont v. Unilever U.S., Inc.*,
   2015 WL 5256988 (S.D.N.Y. Sept. 9, 2015)...........................................27

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...................................................................12

*Bodle v. Johnson & Johnson Consumer Inc.*,
   2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) .......................................13

*Bohac v. Gen. Mills, Inc.*,
   2014 WL 1266848 (N.D. Cal. Mar. 26, 2014)..........................................54

*Bojko v. Pierre Fabre USA, Inc.*,
   2023 WL 4204663 (N.D. Ill. June 27, 2023) ......................................13, 28

*Bowen v. Energizer Holdings, Inc.*,
   2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ..................................21, 22, 23

*Bowling v. Johnson & Johnson*,
   65 F. Supp. 3d 371 (S.D.N.Y. 2014)........................................................27

*Boysen v. Walgreen Co.*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012) ..........................................21

*Brown v. Coty, Inc.*,
   2023 WL 2691581 (S.D.N.Y. Mar. 29, 2023) ..........................................38

*Bubak v. GOLO, LLC*,
   2024 WL 86315 (E.D. Cal. Jan. 8, 2024) ................................................34

*Buckman Co. v. Plaintiffs' Legal. Comm.*,
   531 U.S. 341 (2001).........................................................................31, 33, 34

*Budhani v. Monster Energy Co.*,
   527 F. Supp. 3d 667 (S.D.N.Y. 2021).................................................32, 54

*Burbank v. BMW of N. Am., LLC*,
   2022 WL 833608 (D.N.J. Mar. 21, 2022).................................................20

*Burnley v. America's Servicing Co.*,
   2018 WL 4103226 (S.D. Tex. June 14, 2018) .........................................45

*Cable v. Microsoft Corp.*,
   2009 WL 10696302 (E.D. Cal. Aug. 7, 2009) ....................................................56

*Cangemi v. United States*,
   13 F.4th 115 (2d Cir. 2021) ......................................................................4, 8

*Caplinger v. Medtronic, Inc.*,
   921 F. Supp. 2d 1206 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335 (10th Cir.
   2015) ...............................................................................................................32

*Cardenas v. Toyota Motor Corp.*,
   418 F. Supp. 3d 1090 (S.D. Fla. 2019) ..........................................................45

*Caronia v. Philip Morris USA, Inc.*,
   715 F.3d 417 (2d Cir. 2013).............................................................................55

*Cascio v. Johnson & Johnson*,
   2024 WL 693489 (N.D. Ga. Feb. 20, 2024) ....................................................19

*Central States SE & SW Areas Health & Welfare Fund v. Merck–Medco
   Managed Care, LLC*,
   433 F.3d 181 (2d Cir. 2005).............................................................................10

*Cesar v. Champion Petfoods USA Inc.*,
   429 F. Supp. 3d 55 (W.D. Pa. 2019).................................................................45

*Chiappetta v. Kellogg Sales Co.*,
   2022 WL 602505 (N.D. Ill. Mar. 1, 2022) .......................................................43

*Cho v. Hyundai Motor Co.*,
   636 F. Supp. 3d 1149 (C.D. Cal. 2022) ...........................................................45

*Chong v. KIND LLC*,
   585 F. Supp. 3d 1215 (N.D. Cal. 2022) ...........................................................33

*Chong v. Nestlé Waters N. Am, Inc.*,
   2020 WL 7690175 (C.D. Cal. Nov. 30, 2020), *aff'd*, 2021 WL 4938128 (9th
   Cir. Oct. 22, 2021) ...........................................................................................47

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)............................................................................................25

*City of Rockford v. Mallinckrodt ARD, Inc.*,
   360 F. Supp. 3d 730 (N.D. Ill. 2019) ...............................................................51

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)..........................................................................................20

v

*Clinger v. Edgewell Personal Care Brands, LLC*,
    2023 WL 2477499 (D. Conn. Mar. 13, 2023) ...............................................................18, 19

*Coffelt v. Kroger Co.*,
    2018 WL 6004543 (C.D. Cal. Aug. 17, 2018) ...............................................................14, 19

*Cohen v. DIRECTV, Inc.*,
    178 Cal. App. 4th 966 (2009) .............................................................................................47

*Collyer v. Catalina Snacks Inc.*,
    2024 WL 202976 (N.D. Cal. Jan. 18, 2024) .......................................................................34

*Cowan v. Costco Wholesale Corp.*,
    2017 WL 59080 (E.D.N.Y. Jan. 5, 2017) ......................................................................52, 53

*Critcher v. L'Oreal USA, Inc.*,
    959 F.3d 31 (2d Cir. 2020) ............................................................................................27, 28

*Davis v. Hain Celestial Grp., Inc.*,
    297 F. Supp. 3d 327 (E.D.N.Y. 2018) ................................................................................26

*Demaria v. Nissan N. Am., Inc.*,
    2016 WL 374145 (N.D. Ill. Feb. 1, 2016) ..........................................................................42

*DeSimone v. U.S. Claims Servs., Inc.*,
    2020 WL 1164794 (E.D. Pa. Mar. 11, 2020) .....................................................................49

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) ...........................................................................................7, 38

*Dodge v. Cnty. of Orange*,
    103 F. App'x 688 (2d Cir. 2004) ........................................................................................26

*Doss v. Gen. Mills, Inc.*,
    816 F. App'x 312 (11th Cir. 2020) .....................................................................................11

*Dougan v. Sikorsky Aircraft Corp.*,
    251 A.3d 583 (Conn. 2020) ................................................................................................57

*Drumheller v. Johnson & Johnson*,
    2021 WL 1853407 (E.D. Pa. May 10, 2021) ......................................................................50

*Duksa v. City of Middleton*,
    376 A.2d 1099 (Conn. 1977) ..............................................................................................42

*Ebner v. Fresh Inc.*,
    838 F.3d 958 (9th Cir. 2016) ..............................................................................................36

*Elkind v. Revlon Consumer Prods. Corp.*,
   2015 WL 2344134 (E.D.N.Y. May 14, 2015) .......................................................32

*Esquibel v. Colgate-Palmolive Co.*,
   2023 WL 7412169 (S.D.N.Y. Nov. 9, 2023) ..............................................12, 16, 19

*Estrada v. Johnson & Johnson*,
   2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) .........................................24, 25, 38

*Faculty v. New York Univ.*,
   11 F.4th 68 (2d Cir. 2021) ...................................................................................10

*Fanok v. Carver Boat Corp.*,
   576 F. Supp. 2d 404 (E.D.N.Y. 2008) .................................................................56

*Ferry v. Mead Johnson & Co.*,
   514 F. Supp. 3d 418 (D. Conn. 2021) ....................................................43, 52, 54

*Fineman v. Ferragamo USA, Inc.*,
   672 F. Supp. 3d 1302 (S.D. Fla. 2023) ..........................................................55, 56

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013) ................................................................................36

*Frank v. DaimlerChrysler Corp.*,
   741 N.Y.S.2d 9 (App. Div. 2002) ........................................................................48

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) .............................................................................................11

*Gaminde v. Lang Pharma Nutrition, Inc.*,
   2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) .....................................................14

*Garcia v. Volkswagen Grp. of Am., Inc.*,
   2022 WL 2542291 (E.D. Va. July 7, 2022) ..........................................................19

*Garrett-Alfred v. Facebook, Inc.*,
   540 F. Supp. 3d 1129 (M.D. Fla. 2021) ...............................................................42

*Glover v. Bausch & Lomb Inc.*,
   6 F.4th 229 (2d Cir. 2021) ......................................................................31, 32, 33

*Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.*,
   360 F. Supp. 3d 494 (N.D. Tex. 2019), *aff'd*, 954 F.3d 804 (5th Cir. 2020)..........................56

*Goldstein v. Walmart, Inc.*,
   637 F. Supp. 3d 95 (S.D.N.Y. 2022)....................................................................28

*Gordon v. Hain Celestial Grp., Inc.*,
   2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ...........................................................43

*Great Pac. Sec. v. Barclays Capital, Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ........................................................................46

*Guzman v. Polaris Indus., Inc.*,
   49 F.4th 1308 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v.*
   *Albright*, 143 S. Ct. 2612 (2023) .......................................................................47

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ...............................................................47

*Harris v. Pfizer Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022).............................................................. *passim*

*Harty v. Simon Prop. Grp., L.P.*,
   428 F. App'x 69 (2d Cir. 2011)..........................................................................25

*Henning v. Luxury Brand Partners, LLC*,
   2023 WL 3555998 (N.D. Cal. May 11, 2023) ...................................................4, 28

*Hernandez v. Wonderful Co.*,
   2023 WL 9022844 (S.D.N.Y. Dec. 29, 2023) ...........................................15, 16, 19

*Herrington v. Johnson & Johnson Consumer Cos.*,
   2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................................. *passim*

*Hicks v. L'Oréal U.S.A., Inc.*,
   2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023).....................................15, 16, 17, 18

*Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*,
   148 F. Supp. 3d 285 (S.D.N.Y. 2015)..................................................................10

*Holland v. Abbott Labs., Inc.*,
   626 F. Supp. 3d 1256 (M.D. Fla. 2022).........................................................53, 55

*Hope Med. Enter., Inc. v. Fagron Compounding Servs.*,
   2023 WL 4758454 (9th Cir. July 26, 2023)...........................................................35

*Housey v. Procter & Gamble Co.*,
   2022 WL 17844403 (2d Cir. Dec. 22, 2022) ........................................................39

*Housey v. Procter & Gamble Co.*,
   2022 WL 874731 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2022 WL 17844403 (2d
   Cir. Dec. 22, 2022)..........................................................................................20

*Huertas v. Bayer U.S., LLC,*
  2022 WL 3572818 (D.N.J. Aug. 19, 2022) ................................................22

*Huertas v. Bayer U.S., LLC,*
  2023 WL 3773139 (D.N.J. May 23, 2023) .........................................12, 16

*In re Apple Processor Litig.,*
  2023 WL 5950622 (9th Cir. Sept. 13. 2023) ....................................48, 50

*In re Boeing 737 MAX Pilots Litig.,*
  638 F. Supp. 3d 838 (N.D. Ill. 2022) .....................................................56

*In re Canon Cameras Litig.,*
  237 F.R.D. 357 (S.D.N.Y. 2006) ............................................................48

*In re Fruit Juice Prods. Mkt. Sales Prac. Litig.,*
  831 F. Supp. 2d 507 (D. Mass. 2011) ....................................................21

*In re Gerber Prods. Co. Heavy Metals Baby Food Litig.,*
  2022 WL 10197651 (E.D. Va. Oct. 17, 2022) .......................................21

*In re IBM Arbitration Agreement Litig.,*
  76 F.4th 74 (2d Cir. 2023) ......................................................................36

*In re Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.,*
  No. 0:21-md-03015, Dkt. 55-9 (S.D. Fla. Dec. 17, 2021) .....................23

*In re P&G Aerosol Prods. Mktg. and Sales Pract. Litig.,*
  No. 2:22-md-03025, Dkt. 23-1 (S.D. Ohio July 1, 2022) .......................23

*In re Plum Baby Food Litig.,*
  637 F. Supp. 3d 210 (D.N.J. 2022) ........................................................21

*In re Sling Media Slingbox Adver. Litig.,*
  202 F. Supp. 3d 352 (S.D.N.Y. 2016)..............................................40, 41

*In re Trader Joe's Tuna Litig.,*
  289 F. Supp. 3d 1074 (C.D. Cal. 2017) ............................................43, 44

*In re Zantac (Ranitidine) Prods. Liab. Litig.,*
  546 F. Supp. 3d 1152 (S.D. Fla. 2021) ............................................57, 58

*In re Zantac (Ranitidine) Prods. Liab. Litig.,*
  2023 WL 2817576 (S.D. Fla. Apr. 6, 2023) ..........................................29

*In re Zantac (Ranitidine) Prods. Liab. Litig.,*
  2023 WL 4765409 (S.D. Fla. July 26, 2023)....................................29, 30

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
 644 F. Supp. 3d 1075 (S.D. Fla. 2022) .............................................................6, 7

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
 644 F.3d 604 (8th Cir. 2011) ................................................................................11

*Indus. Union Dept., AFL-CIO v. Am. Petroleum Inst.*,
 448 U.S. 607 (1980)..................................................................................................5

*Jackmack v. Boston Scientific Corp.*,
 2021 WL 1020981 (M.D. Fla. Mar. 17, 2021) ...................................................54

*Jackson v. Anheuser-Busch InBev SA/NV, LLC*,
 2021 WL 3666312 (S.D. Fla. Aug. 18, 2021).................................................43, 44

*Janney v. Gen. Mills*,
 944 F. Supp. 2d 806 (N.D. Cal. 2013) ................................................................46

*Jessani v. Monini N. Am., Inc.*,
 744 F. App'x 18 (2d Cir. 2018) ...........................................................................36

*John v. Whole Foods Mkt. Grp., Inc.*,
 858 F.3d 732 (2d Cir. 2017)........................................................................ *passim*

*Jones v. Cuomo*,
 542 F. Supp. 3d 207 (S.D.N.Y. 2021)..............................................................4, 8

*Karlinski v. Costco Wholesale Corp.*,
 616 F. Supp. 3d 753 (N.D. Ill. 2022) ............................................................43, 44

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009) ........................................................................46, 47

*Kimca v. Sprout Foods, Inc.*,
 2022 WL 1213488 (D.N.J. Apr. 25, 2022) .....................................................21, 23

*Klaehn v. Cali Bamboo LLC*,
 2022 WL 1830685 (9th Cir. June 3, 2022) ..........................................................48

*Klausner v. Annie's Inc.*,
 581 F. Supp. 3d 538 (S.D.N.Y. 2022)............................................................53, 55

*Kommer v. Bayer Consumer Health*,
 252 F. Supp. 3d 304 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018)......................26

*Koronthaly v. L'Oreal USA, Inc.*,
 374 F. App'x 257 (3d Cir. 2010) .........................................................................23

*Kyszenia v. Ricoh USA, Inc.*,
   583 F. Supp. 3d 350 (E.D.N.Y. 2022) ....................................................42

*Lacewell v. Office of Comptroller of Currency*,
   999 F.3d 130 (2d Cir. 2021).................................................................20

*Ladore v. Sony Computer Entm't Am., LLC*,
   75 F. Supp. 3d 1065 (N.D. Cal. 2014) ...................................................43

*Lassen v. Nissan N. Am., Inc.*,
   211 F. Supp. 3d 1267 (C.D. Cal. 2016) ..................................................40

*Lerner v. Fleet Bank, N.A.*,
   459 F.3d 273 (2d Cir. 2006)............................................................41, 42

*Licul v. Volkswagen Grp. of Am., Inc.*,
   2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ...........................................51

*Loomis v. Slendertone Dist., Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019)..................................................55

*Loreto v. Procter & Gamble Co.*,
   515 F. App'x 576 (6th Cir. 2013) ..........................................................32

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................9, 11

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
   19 F.4th 58 (2d Cir. 2021) ...................................................................17

*Mandani v. Volkswagen Grp. of Am., Inc.*,
   2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ...........................................38

*Marcavage v. City of New York*,
   689 F.3d 98 (2d Cir. 2012)...................................................................25

*Marino v. Coach, Inc.*,
   264 F. Supp. 3d 558 (S.D.N.Y. 2017)...............................................25, 26

*McConologue v. Smith & Nephew, Inc.*,
   8 F. Supp. 3d 93 (D. Conn. 2014).........................................................30

*McDaniel v. Upsher-Smith Labs., Inc.*,
   893 F.3d 941 (6th Cir. 2018) ................................................................31

*McGee v. S-L Snacks Nat'l*,
   982 F.3d 700 (9th Cir. 2020) ................................................................24

*McGrain v. C.R. Bard, Inc.*,
   551 F. Supp. 3d 529 (E.D. Pa. 2021) ...............................................43, 44

*McMorris v. Carlos Lopez & Assocs., LLC*,
   995 F.3d 295 (2d Cir. 2021)................................................................20

*Melendez v. ONE Brands, LLC*,
   2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020) ........................................51

*Melton v. Century Arms, Inc.*,
   243 F. Supp. 3d 1290 (S.D. Fla. 2017) .................................................43

*Meyer v. PHH Mortg. Corp.*,
   2016 WL 5934691 (D.N.J. Oct. 11, 2016)..............................................50

*Michel v. Yale Univ.*,
   547 F. Supp. 3d 179 (D. Conn. 2021) ...................................................41

*MM Glob. Servs., Inc. v. Dow Chem. Co.*,
   283 F. Supp. 2d 689 (D. Conn. 2003) ...................................................49

*Moncibaiz v. Pfizer Inc.*,
   532 F. Supp. 3d 452 (S.D. Tex. 2021) ..................................................54

*N. Ins. Co. of New York v. Silverton Marine Corp.*,
   2010 WL 2574225 (N.D. Ill. June 23, 2010) .........................................53

*Napoli-Bosse v. Gen. Motors LLC*,
   2022 WL 3585769 (D. Conn. Aug. 22, 2022), *aff'd*, 2023 WL 7485796 (2d
   Cir. Nov. 13, 2023) ................................................................53, 55

*Nat'l Specialty Ins. Co. v. Marquis Yachts, LLC*,
   2022 WL 18278648 (S.D. Fla. Dec. 6, 2022) .........................................54

*Neptun Light, Inc. v. Edison Opto USA Corp.*,
   2020 WL 1042055 (N.D. Ill. Mar. 4, 2020)............................................55

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*,
   2020 WL 6867069 (C.D. Cal. Nov. 18, 2020)....................................33, 34

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*,
   48 F.4th 1040 (9th Cir. 2022) ................................................33, 34, 35

*Nexus Pharms., Inc. v. Leiters, Inc.*,
   2022 WL 4181716 (9th Cir. Sept. 13, 2022) ..........................................32

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)...........................................................25, 26

*Norman v. Bayer Corp.*,
   2016 WL 4007547 (D. Conn. July 26, 2016) ...................................................31, 32

*North Penn Towns, LP v. Concert Golf Partners, LLC*,
   554 F. Supp. 3d 665 (E.D. Pa. 2021) ...................................................................42

*Norwood v. Raytheon Co.*,
   414 F. Supp. 2d 659 (W.D. Tex. 2006).................................................................57

*Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*,
   2023 WL 7385819 (M.D. Fla. Nov. 8, 2023) .......................................................34

*Omega Eng'g, Inc. v. Eastman Kodak Co.*,
   30 F. Supp. 2d 226 (D. Conn. 1998).....................................................................52

*Onaka v. Shiseido Am. Corp.*,
   2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023) .......................................12, 15, 16, 18

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ...............................................................................49

*Palin v. New York Times Co.*,
   2020 WL 353455 (S.D.N.Y. Jan. 21, 2020) .........................................................25

*Pannetta v. Milford Chrysler Sales Inc.*,
   2015 WL 1296736 (E.D. Pa. Mar. 23, 2015).........................................................43

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019)..............................................................38, 48

*Patane v. Nestlé Waters N. Am., Inc.*,
   314 F. Supp. 3d 375 (D. Conn. 2018).........................................................31, 32, 34

*Patane v. Nestlé Waters N. Am., Inc.*,
   369 F. Supp. 3d 382 (D. Conn. 2019)...................................................................34

*Pavelka v. Charter Commc'ns, Inc.*,
   2021 WL 5566390 (D. Conn. Nov. 29, 2021) .......................................................50

*PDK Labs. Inc. v. Friedlander*,
   103 F.3d 1105 (2d Cir. 1997)...............................................................................32

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) .......................................................14

*Perez v. B. Braun Med., Inc.*,
   2018 WL 2316334 (S.D.N.Y. May 9, 2018) .........................................................48

*Phan v. Sargento Foods, Inc.*,
    2021 WL 2224260 (N.D. Cal. June 2, 2021) ...................................................14

*Pouliot v. Paul Arpin Van Lines, Inc.*,
    303 F. Supp. 2d 135 (D. Conn. 2004) .............................................................25, 50

*Purcel v. Advanced Bionics Corp.*,
    2010 WL 2679988 (N.D. Tex. June 30, 2010) ........................................................30

*Reid v. GMC Skin Care USA Inc.*,
    2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) ...........................................................32

*Renfro v. Champion Petfoods USA, Inc.*,
    25 F.4th 1293 (10th Cir. 2022) .......................................................................11

*Rice v. Electrolux Home Prods., Inc.*,
    2015 WL 4545520 (M.D. Pa. July 28, 2015) ........................................................56

*Rife v. Newell Brands, Inc.*,
    632 F. Supp. 3d 1276 (S.D. Fla. 2022) ..............................................................56

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Minn. 2009) ................................................................32

*Riva v. Pepsico, Inc.*,
    82 F. Supp. 3d 1045 (N.D. Cal. 2015) ...........................................................57, 58

*Rodriguez v. Just Brands USA, Inc.*,
    2021 WL 1985031 (C.D. Cal. May 18, 2021) .........................................................51

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004) .......................................................................43, 46

*Rooney v. Procter & Gamble Co.*,
    2023 WL 1419870 (E.D. La. Jan. 31, 2023) .........................................................13

*Rose v. Vanity Fair Brands, LP*,
    2013 WL 1752705 (N.D. Ill. Apr. 23, 2013) ........................................................54

*Saitsky v. DirecTV, Inc.*,
    2009 WL 10670629 (C.D. Cal. Sept. 22, 2009) .....................................................46

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ..............................................................42

*Schloegel v. Edgewell Personal Care Co.*,
    2022 WL 808694 (W.D. Mo. Mar. 16, 2022) .........................................................13

*Seidl v. Artsana USA, Inc.*,
    643 F. Supp. 3d 521 (E.D. Pa. 2022) ........................................................54, 56

*Shannon v. Boise Cascade Corp.*,
    805 N.E.2d 213 (Ill. 2004) ........................................................................49

*Simoneau v. Stryker Corp.*,
    2014 WL 1289426 (D. Conn. Mar. 31, 2014) ..........................................52

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
    2013 WL 5655480 (E.D. Pa. Oct. 17, 2013) ........................................57, 58

*Smith v. U.S. Bank, N.A.*,
    2022 WL 345655 (W.D. Tex. Feb. 4, 2022) ............................................43

*Solis v. Coty, Inc.*,
    2023 WL 2394640 (S.D. Cal. Mar. 7, 2023) ........................................24, 38

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ....................................................................48

*Speer v. Danjon Capital, Inc.*,
    2023 WL 2538126 (D. Conn. Mar. 16, 2023) ........................................20

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................9

*Stanley v. Direct Energy Servs., LLC*,
    466 F. Supp. 3d 415 (S.D.N.Y. 2020) ....................................................25, 51

*State Farm Fire & Cas. Co. v. Traditions of Am., L.P.*,
    2021 WL 8362166 (M.D. Pa. Dec. 28, 2021) ..........................................54

*Statler v. Dell, Inc.*,
    775 F. Supp. 2d 474 (E.D.N.Y. 2011) ....................................................48

*Stearns v. Select Comfort Retail Corp.*,
    2009 WL 1635931 (N.D. Cal. June 5, 2009) ..........................................55

*Stout v. Advanced Bionics, LLC*,
    2013 WL12133966 (W.D. Pa. Sept. 19, 2013) ......................................30

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................20

*T & M Solar and Air Conditioning, Inc. v. Lennox, Int'l Inc.*,
    83. F. Supp. 3d 855, 875 (N.D. Cal. 2015) ............................................52

*Timberlake v. Synthes Spine Co.*,
2009 WL 926990 (S.D. Tex. Mar. 31, 2009)........................................................42

*Town of Plainville v. Almost Home Animal Rescue and Shelter, Inc.*,
187 A.3d 1174 (Conn. App. Ct. 2018)...............................................................51

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021).........................................................................................9

*Tristani v. OptionSellers.com, Inc.*,
2021 WL 2099313 (E.D. Tex. Apr. 5, 2021)..................................................43, 45

*Truss v. Bayer Healthcare Pharms. Inc.*,
2022 WL 16951538 (S.D.N.Y. Nov. 15, 2022).....................................................28

*Ulbrich v. Groth*,
78 A.3d 76 (Conn. 2013) ..................................................................................43

*Wallace v. ConAgra Foods, Inc.*,
747 F.3d 1025 (8th Cir. 2014) ....................................................................11, 12

*Watkins v. MGA Entm't, Inc.*,
574 F. Supp. 3d 747 (N.D. Cal. 2021) ................................................................52

*Whitaker v. Herr Foods, Inc.*,
198 F. Supp. 3d 476 (E.D. Pa. 2016) ..................................................................45

*Wilson v. ColourPop Cosmetics*,
2023 WL 6787986 (N.D. Cal. Sept. 7, 2023) .......................................................34

*Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*,
2023 WL 6301651 (S.D. Tex. Sept. 27, 2023) .....................................................34

**Statutes**

21 U.S.C. § 331(a) .............................................................................................29

21 U.S.C. § 337(a) ...........................................................................31, 32, 33, 35

21 U.S.C. § 360k(a)(1).......................................................................................30

21 U.S.C. § 361(a) ........................................................................................29, 33

21 U.S.C. § 362(a) .............................................................................................33

21 U.S.C. § 379s(a) ...........................................................................................27

13 Pa. Cons. Stat. § 2313(a)(1)...........................................................................52

35 Pa. Cons. Stat. § 780-107(1) ................................................................................................33

35 Pa. Cons. Stat. § 780-108(1) ................................................................................................33

35 Pa. Cons. Stat. § 780-133 .....................................................................................................33

410 Ill. Comp. Stat. 620/18(a) ..................................................................................................33

410 Ill. Comp. Stat. 620/19(a) ..................................................................................................33

410 Ill. Comp. Stat. 620/21(a) ..................................................................................................33

810 Ill. Comp. Stat. § 5/2-313(1)(a) .........................................................................................52

Cal. Com. Code § 2313(1)(a) ....................................................................................................52

Cal. Health & Safety Code § 110105 ........................................................................................33

Cal. Health & Safety Code § 111670 ........................................................................................33

Cal. Health & Safety Code § 111730 ........................................................................................33

California Consumer Legal Remedies Act ...............................................................5, 34, 46, 47

California False Advertising Law ............................................................................5, 34, 46, 47

California Unfair Competition Law ...............................................................................5, 46, 47

Conn. Gen. Stat. § 21a-91 ...................................................................................................33, 35

Conn. Gen. Stat. § 21a-99 ...................................................................................................35, 46

Conn. Gen. Stat. § 21a-111(a) ...................................................................................................33

Conn. Gen. Stat. § 21a-112(a) ...................................................................................................33

Conn. Gen. Stat. § 21a-120 ........................................................................................................46

Conn. Gen. Stat. § 42-110g(a) ...............................................................................................5, 46

Conn. Gen. Stat. § 42a-2-313(1)(a) ...........................................................................................51

Conn. Gen. Stat. § 42a-2-313(2) ................................................................................................53

Conn. Gen. Stat. § 52-572m(b) ..................................................................................................56

Conn. Gen. Stat. § 52-572n(a) ...................................................................................................56

Connecticut Food, Drug, and Cosmetic Act ......................................................................35, 46

Federal Food, Drug, and Cosmetic Act ........................................................................ *passim*

Fla. Stat. § 499.002(b)............................................................................................................33

Fla. Stat. § 499.008(1)............................................................................................................33

Fla. Stat. § 499.009(1)............................................................................................................33

Fla. Stat. § 672.313(1)(a) ......................................................................................................52

Florida Deceptive and Unfair Trade Practices Act ................................................................5

Florida Drug and Cosmetic Act ............................................................................................34

Illinois Consumer Fraud and Deceptive Business Practices Act ....................................5, 49

N.Y. Educ. Law § 6802.13 ....................................................................................................33

N.Y. Educ. Law § 6818.1(a) ..................................................................................................33

N.Y. Educ. Law § 6818.2(a) ..................................................................................................33

N.Y. U.C.C. Law § 2-313(1)(a) ............................................................................................52

New Jersey Consumer Fraud Act ..........................................................................5, 45, 49, 50

New York General Business Law Sections 349/350 ...................................................... *passim*

Pennsylvania Unfair Trade Practices and Consumer Protection Law ..............................5, 49

Tex. Bus. & Com. Code § 2.313(a)(1).................................................................................52

Texas Deceptive Trade Practices Act .....................................................................................5

Texas Health & Safety Code § 431.141(a) ...........................................................................33

Texas Health & Safety Code § 431.142(1)(a) ......................................................................33

**Rules**

Fed. R. Civ. P. 8 ....................................................................................................................39

Fed. R. Civ. P. 8(a)(2)...........................................................................................................10

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(6)....................................................................................................13, 21

**Other Authorities**

21 C.F.R. § 111.3 ..................................................................................................28

21 C.F.R. § 210.3(b)(3) ........................................................................................28

21 C.F.R. § 212.1 ..................................................................................................28

21 C.F.R. § 700.3(e) ..............................................................................................28

21 C.F.R. § 701.3(l) ...............................................................................................28

21 C.F.R. § 740.1(a) ..............................................................................................30

7/6/21 FDA Inspection Report, https://www.fda.gov/media/163712/download ...........................6

12/5/22 FDA Letter to Valisure, https://www.fda.gov/media/163682/download .........................6

CDC, *Facts About Benzene*,
    https://emergency.cdc.gov/agent/benzene/basics/facts.asp ......................................5

Editorial Board, *The Zantac Scare and Junk Science*, WALL ST. J., Dec. 9, 2022 .......................7

FDA, *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)*
    (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-
    updates-and-press-announcements-ndma-zantac-ranitidine ....................................6

FDA, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to
    Potential Presence of Benzene*, https://www.fda.gov/safety/recalls-market-
    withdrawals-safety-alerts/unilever-issues-voluntary-us-recall-select-dry-
    shampoos-due-potential-presence-benzene ....................................................8

Mayo Clinic, Leukemia Diagnosis, https://www.mayoclinic.org/diseases-
    conditions/leukemia/diagnosis-treatment/drc-20374378 .....................................58

OEHHA, *Proposition 65 No Significant Risk Levels (NSRLs) and Maximum
    Allowable Dose Levels (MADLs)*, https://oehha.ca.gov/proposition-65/general-
    info/current-proposition-65-no-significant-risk-levels-nsrls-maximum ...........................5

Restatement (Second) of Conflict of Laws § 148(2) ....................................................50

U.S. Const. art. III ........................................................................ *passim*

*Valisure Citizen Petition on Benzene in Dry Shampoo Products* (Oct. 31, 2022),
    https://downloads.regulations.gov/FDA-2022-P-2707-0001/attachment_1.pdf........................4

## <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

Plaintiffs contend Unilever deceived them by selling aerosol dry shampoo products that allegedly contained trace amounts of benzene impurities. They base these claims largely on testing by a third-party laboratory that purportedly found trace amounts of benzene in certain batches of the products. But Plaintiffs do not contend the products *they* bought actually contained benzene or that they even came from these particular batches. Nor do they allege the products harmed them or failed to work as intended. Most plaintiffs do not even identify the products they bought. Instead, Plaintiffs contend the mere *possibility* that the products they bought might have contained benzene rendered the products completely "worthless" and they want their money back. As many other courts have found in similar "contaminated product" cases, these facts do not establish standing, much less state a claim for relief. The Court should dismiss the amended complaint.

*First*, Plaintiffs have not pleaded an injury-in-fact because they have not plausibly shown the products *they* bought contained benzene. As many courts have found, the mere possibility that Plaintiffs may have bought products containing benzene is not sufficient. Plaintiffs also have not shown the trace amounts of benzene at issue pose any health risk. There are no allegations the products failed to perform, and thus Plaintiffs have not shown they failed to receive the benefit of the bargain. Further, Plaintiffs lack standing to seek equitable relief.

*Second*, Plaintiffs' claim that Unilever failed to disclose information about benzene on the product labels is expressly preempted because it seeks to impose state-law labeling requirements that federal law does not. Plaintiffs' claims premised on alleged violations of the Federal Food, Drug, and Cosmetic Act are impliedly preempted because the FDCA does not provide a private right of action.

*Third*, Plaintiffs have not shown that Unilever made any affirmative misrepresentations or actionable omissions. Plaintiffs have not pleaded with particularity any deceptive statements they

relied on, that Unilever knew the products contained benzene at the time of Plaintiffs' purchases, or that Unilever had any fraudulent intent or a duty to disclose in this situation. The general statements on Unilever's various websites cannot reasonably be viewed as representations about whether the products contain trace impurities.

*Fourth*, the negligent misrepresentation claims fail for similar reasons and because they are barred by the economic-loss rule.

*Fifth*, Plaintiffs have not stated a claim for unjust enrichment because they have not pleaded the lack of an adequate legal remedy, the claim is duplicative of their legal claims, and they received the full benefits of the products without harm and thus are not entitled to restitution.

*Sixth*, Plaintiffs' claims for breach of express and implied warranty fail. Plaintiffs have identified no promises they relied on and Unilever breached. The products performed as promised and therefore Plaintiffs received the benefit of their bargain. Plaintiffs' subjective allegation that the products were unacceptable to them is not an economic injury. The implied warranty claims fail because Plaintiffs have not shown the products they bought were unfit for ordinary use.

*Seventh*, the strict liability claims fail as a matter of law because Plaintiffs do not allege any physical injury or property damage, and the claims are barred by the economic-loss rule.

*Eighth*, Plaintiffs' claims fail for additional state-specific reasons.

*Finally,* the Court should dismiss the medical-monitoring claims because Plaintiffs' home states either do not recognize this claim, or do not allow such a claim in the absence of present physical injury, which Plaintiffs have not alleged.

# FACTUAL BACKGROUND

### A.      Plaintiffs' Allegations

Plaintiffs Elizabeth Little, Cathy Armstrong, Clair Awad, Kelly Branch, Suzanne Fitzgerald, Mari Gunn, Sarah Hernandez, Stacy Vail, Christina VanVliet, Billie Barnette, and Robert Rullo bring this putative class action on the basis of testing conducted by a third-party laboratory, Valisure, LLC, that purportedly found elevated trace levels of benzene impurities in certain samples of Dove, Nexxus, Suave, TIGI, TRESemmé, and Living Proof aerosol dry shampoos. Am. Consol. Class Action Compl. ("ACC") ¶¶ 1, 2. Plaintiffs reside in Connecticut, California, Florida, Illinois, New York, Pennsylvania, and Texas. *Id.* ¶¶ 10-20. Plaintiffs allege they bought and used the above dry shampoo brands, but they do not identify the particular products they each bought (except for Barnette and Rullo), and they do not allege the products they bought actually contained benzene or that the products came from the same batches or lots Valisure tested and found to contain benzene.[1] Instead, Plaintiffs allege that benzene is a known carcinogen and that if Unilever had disclosed that the products *might* contain benzene, they would not have bought them or would have paid less for them. *E.g., id.* ¶¶ 1, 8, 22, 136-37. Plaintiffs contend the risk the products might contain benzene diminished their value and rendered them "worthless." *E.g., id.* ¶¶ 22, 190, 205, 214, 225, 238, 244, 256, 272, 286, 300, 313, 325, 336, 348, 366, 377, 390.

According to the ACC, less than 50% (17 of 36) of the collective samples of the above brands Valisure tested contained "substantial levels" of benzene, which Plaintiffs define as any amount above 2 parts per million ("ppm"). *Id.* ¶¶ 2, 96. This is the limit FDA informal guidance recommends for *drug* products. *Id.* However, the products at issue are *cosmetics*, not drugs. *Id.*

---

[1] The "brands" each include a number of different product lines and formulations. ACC at 2 n.1.

¶ 91. And unlike most drugs, which typically are ingested (*e.g.*, liquids, tablets, capsules), the dry shampoos are aerosol products that are sprayed onto a person's hair.[2] *See id.* ¶ 103. Because the products are aerosols and thus dispersed into the air, only a portion of the contents ever comes in contact with the body, thereby reducing exposure to any benzene that may be present in the can. FDA has not established or recommended any limit for cosmetics or dry shampoo products— although in October 2022, Valisure asked FDA to do so and FDA is evaluating that request.[3] Valisure's limited (and, as discussed below, suspect) testing of other dry shampoo products found "significant variability from batch to batch, even within a single brand."[4] Valisure conceded this "underscor[es] the importance of batch-level chemical analysis" (as opposed to testing a few products and assuming the results are representative of all batches).[5]

Plaintiffs bring claims for fraudulent misrepresentation and omission, negligent misrepresentation, breach of express and implied warranty, unjust enrichment, strict liability, and violation of the consumer fraud statutes of Connecticut, California, Florida, Illinois, New Jersey,

---

[2] "FDA's current guidance regarding benzene relates to drug products, and there is no indication that the same guidance applies to a different product category, cosmetics, with a different route of administration, aerosolization." *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *6 (N.D. Cal. May 11, 2023).

[3] *Valisure Citizen Petition on Benzene in Dry Shampoo Products*, at 2 (Oct. 31, 2022), https://downloads.regulations.gov/FDA-2022-P-2707-0001/attachment_1.pdf (last visited Mar. 11, 2024). *See Henning*, 2023 WL 3555998, at *6 (noting that FDA is evaluating Valisure's citizen petition regarding dry shampoos). The Court may consider the citizen petition because it a matter of public record available on a government website. *Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021); *Jones v. Cuomo*, 542 F. Supp. 3d 207, 211 n.1 (S.D.N.Y. 2021).

[4] 10/31/22 Valisure Citizen Petition, at 7.

[5] *Id.*

New York, Pennsylvania, and Texas.[6] ACC ¶¶ 173-406. Plaintiffs seek actual and punitive damages, restitution, disgorgement, attorneys' fees, injunctive and declaratory relief, medical monitoring, and certification of a nationwide class of persons who purchased any of the products during the limitations period, as well as subclasses of purchasers in each of the above states (except New Jersey). *Id.* ¶¶ 160-61, Prayer for Relief.

> **B.    Low levels of benzene are present everywhere.**

Benzene is "widely used in the United States" and is among the top chemicals in terms of production volume.[7] As a result of its pervasiveness, "[t]he entire population of the United States is exposed to small quantities of benzene[.]" *Indus. Union Dept., AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 615 (1980). Benzene is found in, among other things, crude oil, gasoline, and cigarette smoke, as well as glues, paints, and detergents. Outdoor air contains low levels of benzene from tobacco smoke, gas stations, automobile exhaust, and industrial emissions.[8] Although Plaintiffs allege (without any support) that there is "no safe level" of benzene, even California, which sets strict limits on chemicals that are known to cause cancer pursuant to Proposition 65, has developed "no significant risk levels" for benzene such that consumer products below these levels are exempt from Proposition 65 disclosure requirements.[9]

---

[6] Connecticut Unfair Trade Practices Act ("CUTPA"); California False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"); Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); New Jersey Consumer Fraud Act ("NJCFA"); New York General Business Law (sections 349/350) ("N.Y. GBL"); Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); Texas Deceptive Trade Practices Act ("TDTPA").

[7] CDC, *Facts About Benzene*, https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited Mar. 11, 2024) (cited in ACC ¶ 85 n.52).

[8] *Id.*

[9] *See* OEHHA, *Proposition 65 No Significant Risk Levels (NSRLs) and Maximum Allowable Dose Levels (MADLs)*, *available at* https://oehha.ca.gov/proposition-65/general-info/current-proposition-65-no-significant-risk-levels-nsrls-maximum (last visited Mar. 11, 2024).

### C.   Plaintiffs' claims are based on test results from a third-party laboratory that FDA and the courts have admonished.

Plaintiffs' allegations are primarily grounded in the Valisure test results. Valisure is not an FDA-registered lab and its testing methods have come under fire and been invalidated. In July 2021 and again in December 2022, FDA informed Valisure that FDA's inspection of its facilities had identified methodological deficiencies in its testing methods, including in its method for detecting residual solvents—the subject at issue here.[10] Valisure responded that its testing is "only for informational and marketing purpose and not for any regulatory purpose" and "is not subject to the cGMP [current good manufacturing practices] standards set forth by FDA."[11] Indeed, Valisure informed FDA that its services "*are not intended for and not appropriate for any regulatory purpose*."[12] Thus, Plaintiffs are alleging that Unilever failed to comply with regulatory standards based on testing that Valisure has admitted is "not appropriate" for regulatory purposes.

FDA's inspection of Valisure followed its earlier criticism of Valisure's unvalidated method for testing the drug Zantac. FDA publicly criticized Valisure's testing method because it produced artificially high levels of the chemical compound the testing was intended to detect.[13] Valisure had filed a citizen petition with FDA charging that Zantac was carcinogenic, which led to a multi-district litigation. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 644 F. Supp. 3d 1075, 1091-93 (S.D. Fla. 2022). Although Valisure's testing prompted the litigation, the plaintiffs disclaimed any reliance on Valisure's testing because it was demonstrably unreliable. *Id.* at 1091-

---

[10] *See* 12/5/22 FDA Letter to Valisure, https://www.fda.gov/media/163682/download (last visited Mar. 11, 2024); 7/6/21 FDA Inspection Report, https://www.fda.gov/media/163712/download (last visited Mar. 11, 2024).

[11] 12/5/22 FDA Letter to Valisure, at 7 https://www.fda.gov/media/163682/download.

[12] *Id.* (emphasis added).

[13] FDA, *FDA Updates and Press Announcements on NDMA in Zantac (ranitidine)* (Oct. 2, 2019), https://www.fda.gov/drugs/drug-safety-and-availability/fda-updates-and-press-announcements-ndma-zantac-ranitidine (last visited Mar. 11, 2024). FDA refers to Valisure as "a third-party laboratory."

93, 1174-75. The judge overseeing the litigation excluded the plaintiffs' general causation experts and granted summary judgment for the defendants. *Id.* at 1286. The court noted in its order that Valisure, in order to find very high levels of a potential carcinogen, used testing conditions entirely dissimilar to the human body (i.e., extremely high temperatures and levels of salt), which actually "created the very substance for which it was testing." *Id.* at 1092; *see also Bailey v. Rite Aid Corp.*, 2020 WL 6789435, at *2 (N.D. Cal. Nov. 18, 2020) (finding that Valisure's study of another drug "may not have been independent, given the possible relationship between the authors of the study and [plaintiff's] counsel" and that this "bears on its weight, veracity, and credibility"); Editorial Board, *The Zantac Scare and Junk Science*, WALL ST. J., Dec. 9, 2022 ("Valisure's role in the Zantac and other consumer lawsuits deserves more scrutiny. … The Valisure methods and plaintiff attorney suits look like a litigation scam[.]").

### D.   Analysis of Unilever's products by an FDA-compliant laboratory using a validated methodology shows the number of affected products was much smaller.

On or about August 18, 2022, Impact Analytical, an FDA-compliant independent contract laboratory that FDA itself recently retained to screen aerosol products for benzene, completed its report of a months-long study at Unilever's request to validate a method to quantify the level of benzene in dry shampoo aerosol products. *See* ACC ¶¶ 98-99. Using this validated method, Impact Analytical then developed protocols and conducted studies throughout September 2022 of samples from nearly three dozen lots of Unilever brand dry shampoo products, including three of the same lots tested by Valisure. *See* **Exhibit A**.[14] The benzene content in the vast majority of the samples

---

[14] **Exhibit A** contains selected pages from the Impact Analytical report. The full report, which contains confidential commercial information and proprietary business information, has been provided to Plaintiffs. The Court may consider the Impact Analytical report because it is incorporated by reference in the ACC (¶¶ 98-100). *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

(25 of 34 or 73.5%) was less than 2 ppm. Ex. A at 2. As for the three lots that Valisure and Impact Analytical both tested, the Impact Analytical results were significantly lower:

| Brand | Lot | Product | Valisure Result (PPM) | Impact Analytical Result (PPM) |
|-------|-----|---------|-----------------------|--------------------------------|
| Dove | 05201KK74 | Dove Care Between Washes Fresh Coconut 5 oz. | 13.4 | 1.6 |
| Dove | 06171KK48 | Dove Care Between Washes Volume & Fullness 5 oz. | 6.26 | 0.8 |
| Nexxus | 07300KK05 | Nexxus Refreshing Mist with Pearl Extract 5 oz. | 3.17/1.4[15] | 0.5 |

ACC ¶ 97 (table); Ex. A at 2. Impact Analytical completed a preliminary report of its test results on October 5, 2022. Ex. A at 3-7.

E.    **Unilever recalls selected products and offers refunds.**

On October 18, 2022, after assessing Impact Analytical's data, Unilever voluntarily recalled select lots of Dove, Nexxus, Suave, TIGI (Rockaholic and Bed Head), and TRESemmé dry shampoos due to potentially elevated trace levels of benzene in some of the lots.[16] ACC ¶ 115. Unilever announced that an internal investigation determined that the propellant in the aerosol products was the source of the benzene and that the company had worked with its propellant

---

[15] Valisure tested two samples from this lot.

[16] FDA, *Unilever Issues Voluntary U.S. Recall of Select Dry Shampoos Due to Potential Presence of Benzene*, https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/unilever-issues-voluntary-us-recall-select-dry-shampoos-due-potential-presence-benzene (last visited Mar. 11, 2024) (cited in ACC ¶ 3 n.4). The Court also may take judicial notice of this announcement because it is posted on FDA's website. *Cangemi*, 13 F.4th at 124 n.4; *Jones*, 542 F. Supp. 3d at 211 n.1.

suppliers to resolve the matter.[17] Contrary to Plaintiffs' allegations, Unilever's recall is not an acknowledgement that even the recalled products contained unsafe levels of benzene—or *any* benzene at all. Unilever recalled the products out of an abundance of caution and stated that an independent evaluation indicated that daily exposure to benzene at the levels detected in testing would not be expected to cause adverse health consequences.[18] Unilever's recall announcement, which was also published on FDA's website, provided a website consumers could visit to receive refunds.[19] Unilever has issued refund checks to consumers totaling more than $780,000, along with $118,000 in free product coupons.

## **LEGAL STANDARD**

### I.    **Standing**

To establish standing, Plaintiffs must show that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To demonstrate injury-in-fact, Plaintiffs must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). To be "particularized," an injury "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339. An injury is "concrete" if it is "real" and not "abstract," i.e., "it must actually exist." *Id.* at 340. Moreover, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm—at least unless the exposure to the risk of future harm itself causes a *separate* concrete harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021).

---

[17] *See* note 16, *supra* (cited in ACC ¶ 3 n.4).
[18] *Id.*
[19] *Id.*

"Article III standing cannot be acquired through the back door of a class action. Rather, 'the named class plaintiffs must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015) (quoting *Central States SE & SW Areas Health & Welfare Fund v. Merck–Medco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005) (cleaned up)).

## II.      Failure to State a Claim

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Mere legal conclusions are not "facts." *Id.* at 678-79; *Twombly*, 550 U.S. at 555. Nor is it enough for a plaintiff to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## <u>ARGUMENT</u>

## I.      Plaintiffs have not shown they have standing to bring these claims.

Plaintiffs have failed to "allege facts that affirmatively and plausibly suggest that [they] [have] standing to sue." *Faculty v. New York Univ.*, 11 F.4th 68, 76 (2d Cir. 2021). "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [] allege

facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he lacks standing under Article III. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (cleaned up). Plaintiffs have not shown their alleged injuries are concrete and particularized, rather than conjectural and hypothetical, and therefore have not alleged an injury-in-fact. Plaintiffs also lack standing to seek medical monitoring or other injunctive relief.

> **A.   Plaintiffs have not plausibly alleged an injury-in-fact because they have not shown they bought products containing benzene.**

Plaintiffs fail to plead a concrete and particularized injury because they have not alleged facts showing that the products they bought contained benzene. The ACC alleges, equivocally, that the products Plaintiffs bought "contained, or risked containing" benzene. *See, e.g.,* ACC ¶¶ 22, 136, 238, 244, 286, 313, 336, 377. To the extent Plaintiffs' alleged economic injury is based merely on the possibility that the products they bought *might* have contained benzene, the ACC fails to plead an injury-in-fact.

> 1.   <u>The general rule for standing is that Plaintiffs must allege they actually bought a contaminated product.</u>

The general rule among circuit courts is that plaintiffs must allege the products they bought actually contained the alleged defect. Plaintiffs' contention "that they purchased [products] that w[ere] at risk of contamination—unlike arguing that they purchased [products] that w[ere] contaminated—is insufficient for standing because an alleged injury cannot be 'too speculative for Article III purposes.'" *Renfro v. Champion Petfoods USA, Inc.*, 25 F.4th 1293, 1305 (10th Cir. 2022) (quoting *Lujan*, 504 U.S. at 564 n.2). "[I]t is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014) (citing *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (cleaned up)); *Doss v. Gen. Mills, Inc.*, 816 F. App'x 312, 314 (11th

Cir. 2020) (affirming dismissal for lack of standing when plaintiff failed to allege that the boxes of Cheerios *she* purchased "contained <u>any</u> glyphosate, much less a level of glyphosate that is so harmful the Cheerios are 'presumptively unsafe' and therefore worthless"; alleged injury was merely "conjectural or hypothetical"); *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-61 (9th Cir. 2009) (holding plaintiffs lacked standing to assert claim that risk of hearing loss diminished the value of iPods because the injury was "hypothetical" and plaintiffs did "not claim that they, or anyone else, have suffered or [were] substantially certain to suffer hearing loss from using an iPod").

"Without any particularized reason to think [Plaintiffs' own products] actually exhibited the alleged [] defect[,] it remains entirely possible, maybe probable, that the [products] they personally purchased and consumed" were not defective. *Wallace*, 747 F.3d at 1030. Thus, "it is pure speculation to say that the particular [products] sold to [Plaintiffs] were tainted[,] while it is quite plausible [Unilever] sold [Plaintiffs] *exactly what was promised*[.]" *Id.* at 1031.

District courts, including those in this circuit, have followed this approach to Article III standing in cases alleging product contamination, including benzene cases. *See Esquibel v. Colgate-Palmolive Co.*, 2023 WL 7412169, at *3 (S.D.N.Y. Nov. 9, 2023) ("The mere risk that the Product was contaminated with an injurious substance … does not establish an economic injury.") (citing *Wallace*, 747 F.3d at 1030); *Onaka v. Shiseido Am. Corp.*, 2023 WL 2663877, at *4 (S.D.N.Y. Mar. 28, 2023) (rejecting plaintiffs' argument that they were not required to demonstrate that they actually purchased products containing PFAS because "under [p]laintiffs' theory of economic injury, they were injured because they overpaid for misbranded and/or inadequately labeled Products and the Products were misbranded because they contained PFAS"); *Huertas v. Bayer U.S., LLC*, 2023 WL 3773139, at *10 (D.N.J. May 23, 2023) ("Tests performed

on other batches of similar products cannot translate to the assumption that all of the Products at issue here contained benzene … Plaintiffs are unable to establish a plausible inference that every Product at issue, including those purchased by Plaintiffs, also contained benzene and excessive levels of such."); *Schloegel v. Edgewell Personal Care Co.*, 2022 WL 808694, at *2 (W.D. Mo. Mar. 16, 2022) (holding that plaintiff who failed to allege she actually bought a sunscreen product that was "adulterated with benzene" lacked standing); *Bojko v. Pierre Fabre USA, Inc.*, 2023 WL 4204663, at *3 (N.D. Ill. June 27, 2023) (dry shampoo purchasers lacked standing to the extent their claims were "based merely on the *risk* that the products they purchased contained benzene" because "if Plaintiffs received benzene-free Products, there was no defect or risk of harm in the products they purchased, and therefore no overpayment or injury"); *cf. Bodle v. Johnson & Johnson Consumer Inc.*, 2022 WL 18495043, at *2 (N.D. Cal. Feb. 24, 2022) (dismissing under Rule 12(b)(6) because allegations that the defendant "sold [plaintiff] products that *may* contain dangerous levels of benzene" were "insufficient to establish a plausible claim that she purchased a contaminated product"); *Rooney v. Procter & Gamble Co.*, 2023 WL 1419870, at *4 (E.D. La. Jan. 31, 2023) ("That two batches of the kind of antiperspirant product Rooney used allegedly

contained benzene does not render plausible plaintiffs' assertion that Rooney herself was exposed to benzene.").[20]

        2.    <u>Absent direct allegations that the plaintiff bought an affected product, the Second Circuit has found standing only when testing showed that all or nearly all of the products sold during the time of the plaintiff's purchases contained the alleged defect.</u>

The Second Circuit has found standing in a case without allegations showing the plaintiff bought products with the alleged defect. *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732 (2d Cir. 2017). However, the court held there that the plaintiff plausibly alleged he bought a mislabeled product based on an extensive government investigation that revealed *all or nearly all* of the products sold during the same period were mislabeled. *John* does not stand for the proposition that a plaintiff can establish injury-in-fact based solely on the *risk* that he may have bought an affected product, rather than *actually buying* an affected product.

In *John*, the Second Circuit found that the plaintiff plausibly alleged an injury-in-fact when a government agency tested 80 pre-packaged food products at numerous Whole Foods stores in New York City over a several-month period and found **100%** of them had mislabeled weights, **nearly 90%** of them failed to meet federal standards for allowable weight deviations, and the plaintiff alleged he bought pre-packaged products from Whole Foods stores in New York City

---

[20] *See also Coffelt v. Kroger Co.*, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) ("Plaintiff offers no authority for the proposition that he has standing or injury simply because a product was recalled and *may* have been contaminated."); *Phan v. Sargento Foods, Inc.*, 2021 WL 2224260, at *4 (N.D. Cal. June 2, 2021) ("Plaintiff has expressly alleged that only *some* of Sargento's Products – not all or most Products – contain antibiotics" [and] Plaintiff has not alleged that Plaintiff actually purchased one of these Products containing antibiotics."); *Pels v. Keurig Dr. Pepper, Inc*., 2019 WL 5813422, at *5 (N.D. Cal. Nov. 7, 2019) ("[P]laintiff has failed to plead a particularized injury by failing to plead the water *he* purchased contained violative arsenic levels."); *cf. Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019) (holding plaintiff lacked standing because "it is speculation to allege that because two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of Omega-3 Krill Oil, the bottle that [plaintiff] purchased must as well.").

once or twice per month during the time period of the investigation. *Id.* at 734, 736. According to the court of appeals, the "critical" aspect of the plaintiff's claim of standing was that nearly 90% of the pre-packaged products tested were mislabeled, and the government's conclusion that the mislabeling was "systematic" and "routine." *Id.* at 736.[21]

Several district courts in this circuit have found a lack of standing when the plaintiffs failed to plead facts showing that all or substantially all of the products sold during the time of their purchases were contaminated. For example, in *Hicks v. L'Oréal U.S.A., Inc.*, 2023 WL 6386847 (S.D.N.Y. Sept. 30, 2023), notwithstanding independent testing that found several mascara products contained a harmful chemical in amounts beyond EPA-recommended levels, plaintiffs failed to provide "detailed allegations" showing "systematic" and "widespread prevalence" of contamination "on par with the allegations in *John*," including whether the chemical "was found in all the *L'Oréal* products tested or just a subset," or "whether all products within the same product line tested positive." *Id.* at *8-9. Similarly, in *Hernandez v. Wonderful Co.*, 2023 WL 9022844 (S.D.N.Y. Dec. 29, 2023), although the plaintiff alleged she bought a contaminated juice product multiple times in New York City during the same month that other units of the product were found to contain excessive contaminant levels, the plaintiff failed to plead facts "sufficient to plausibly show that all or substantially all" of the marketed units were contaminated, including the number of bottles she bought and where she bought them, and how many bottles were tested, and in what manner they were tested. *Id.* at *6. *See also Onaka*, 2023 WL 2663877, at *4-5 (plaintiffs failed

---

[21] In contrast, in *Akridge v. Whole Foods Mkt. Grp., Inc.*, 2022 WL 955945, at *2 (S.D.N.Y. Mar. 30, 2022), a plaintiff who sued Whole Foods after FDA issued a warning letter for the company's failure to declare the presence of allergens in certain foods failed to plausibly plead an injury-in-fact when he did not allege that he experienced an allergic reaction or that he bought any of the specific products identified in FDA's warning letter, and instead alleged only that he bought products "of the type" identified as mislabeled during the time period at issue.

to show the alleged contamination was sufficiently "widespread" or a temporal connection between plaintiffs' purchases and the product testing); *Esquibel*, 2023 WL 7412169, at *2-3 (plaintiffs did not show the bottles they bought were contaminated and "sparse factual allegations" about product testing did not allow court to infer the presence of the harmful chemical was "anything more than 'a sheer possibility'") (quoting *Iqbal*, 556 U.S. at 678).

               3.     <u>Plaintiffs have not shown they bought products that contained benzene or shown that all or nearly all products sold during the time of their purchases contained benzene.</u>

Plaintiffs have not identified any products they bought that actually contained benzene. And like the plaintiffs in *Hicks*, *Hernandez*, *Onaka*, and *Esquibel*—and unlike the plaintiff in *John*—Plaintiffs have not plausibly shown through other means that they bought affected products. First, Plaintiffs again fail to allege sufficient facts regarding their own purchases. *See Huertas*, 2023 WL 3773139, at *9 (observing that plaintiffs "do not even pinpoint when most of the Plaintiffs purchased the product, instead giving a multi-year, ballpark timeline, and fail to include relevant lot numbers for many of the Plaintiffs' Products"). The ACC's bare allegations consist of just one sentence for each plaintiff. *See* ACC ¶¶ 10-20. For example, Clair Awad alleges that "[b]etween 2017 and 2022, [she] purchased Unilever Dry Shampoo Products including Dove from stores in and around North Bellmore, NY, including Walmart." *Id.* ¶ 12. Like Awad, all but two plaintiffs fail to allege which products they bought and instead identify only the brands. Similarly, all but two plaintiffs fail to identify any particular date they bought the products and allege only that they bought products over a range of years. Only one plaintiff alleges purchases of the

particular product lines Valisure tested and found to contain benzene.[22] *Compare* ACC ¶¶ 10-20 *with* ACC ¶ 97 (table). And no plaintiff alleges how many times they bought the products.

Second, the ACC pleads insufficient information about Valisure's testing. For example, the ACC does not allege when the tested products were bought, where they were bought, how they were selected, or how they were tested. It states only that the products were tested "[i]n January through May 2022." ACC ¶ 95. Although Plaintiffs collectively allege they bought various Unilever products in seven different states over a period of 15 years, there is no allegation the products Valisure tested were bought in these same states,[23] from the same retailers as Plaintiffs, or during the same time period. In short, there is nothing "meaningfully linking" the tested products to the products Plaintiffs actually bought. *Hicks*, 2023 WL 6386847, at *9. Plaintiffs "must plead enough facts to make it plausible that they did indeed suffer the sort of injury that would entitle them to relief." *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021).

Unlike in *John*, the testing here does not establish that the incidence of benzene impurities was so widespread that it pervaded the various product lines, or any one of them, much less that it occurred during any particular time period Plaintiffs have shown they were buying those same products. According to Plaintiffs, samples from 17 of 36 lots Valisure tested were above 2 ppm. ACC ¶ 96. Impact Analytical's testing, on which Plaintiffs also now rely (*id.* ¶¶ 99(a)-(i)), showed that just 9 of 34 samples tested above 2 ppm. Ex. A at 2. Together, only 26 of 70 samples or just

---

[22] Robert Rullo alleges he bought Bedhead Oh Bee Hive Volumizing Dry Shampoo ("Oh Bee Hive"). ACC ¶ 20. However, Rullo does not allege the date of his purchase (only that he bought it "in 2021"), how many times he bought Oh Bee Hive, or that his can of Oh Bee Hive contained benzene or came from a lot that Valisure tested and found to contain benzene. *See id.* ¶¶ 20, 97. He also does not tie any purchase he made temporally to Valisure's testing of this particular product, which occurred on some unknown date in the first half of 2022. *See id.* ¶ 95. Accordingly, Rullo has not plausibly alleged facts showing he used a product that contained benzene.
[23] Valisure is located in New Haven, Connecticut.

37%—tested by *any* laboratory—contained elevated benzene levels.[24] Plaintiffs do not allege the products they bought came from *any* of these 26 lots. *See* ACC ¶¶ 10-20. Plaintiffs' allegations are insufficient to show the issue was "widespread" and "systematic," affecting all or nearly all products sold, as in *John*; they show only a *possibility* that Plaintiffs bought products with elevated trace benzene levels. And on the facts alleged, that possibility is well below 50 percent.

Plaintiffs may refer the Court to a recent decision holding that under *John*, certain plaintiffs had standing in a similar contamination case. *See Clinger v. Edgewell Personal Care Brands, LLC*, 2023 WL 2477499 (D. Conn. Mar. 13, 2023). But *Clinger* misapplied *John*. *Clinger* found an injury-in-fact without regard to the statistical likelihood that the plaintiffs had actually bought contaminated products, instead looking only at whether the products that tested positive were the same products the plaintiffs bought, and whether the testing occurred near the time of plaintiffs' purchases. *Id.* at *4. In *John*, however, the Second Circuit found it "critical" that nearly 90% of the products failed to satisfy federal labeling standards. 858 F.3d at 736. Without allegations that all or nearly all of the tested products were contaminated, and regarding the frequency of the plaintiffs' purchases, the *Clinger* court lacked well-pleaded facts from which to plausibly infer that the plaintiffs bought a contaminated product.

*Clinger* also differs from other district courts' interpretations of *John*. *See Onaka*, 2023 WL 2663877, at *5 (finding that the "critical" part of the standing claim in *John* was that the plaintiff was a "frequent shopper" who bought the products "once or twice a month," and that "systematic overcharging occurred nearly 90% of the time"); *Hicks*, 2023 WL 6386847, at *8 ("[c]rucially" in *John*, "eighty-nine percent of tested packages from Whole Foods were

---

[24] When limited to testing performed using a *validated* methodology, only 26% of the samples (9 of 34) exceeded 2 ppm.

mislabeled" and the plaintiff "regularly purchased Whole Foods packages of cheese and cupcakes throughout the relevant period"); *Hernandez*, 2023 WL 9022844, at *6 (finding it plausible that the *John* plaintiff bought a mislabeled product because "testing revealed that 89% of all packages were mis-labeled, and he purchased those types of pre-packaged products at least once or twice a month for years"); *Esquibel*, 2023 WL 7412169, at *3 (describing *John* as finding "a sufficiently likely injury" when plaintiff's claim was supported by "a test of 80 different Whole Foods products that found that all 80 products had packaging with misstated weights").

In any event, *Clinger* would be of no help to most plaintiffs here. In *Clinger*, the plaintiffs with standing each alleged they used the same product that testing showed contained benzene. 2023 WL 2477499, at *4. In contrast, most plaintiffs here allege only the *brands* they bought, not the specific product lines. Even under *Clinger*, they would lack standing. *See id.* at *7 ("It would be speculative—rather than plausible—to conclude that benzene was present in Banana Boat product lines for which there are no positive test results for the presence of benzene.").

Plaintiffs allege Unilever's recall of selected lots was an acknowledgment the products contained unsafe benzene levels. *See, e.g.*, ACC ¶¶ 3, 118. As discussed above, it was not. Nor does the fact of the recall "support a plausible inference that the [products] [Plaintiffs] used contained benzene." *Cascio v. Johnson & Johnson*, 2024 WL 693489, at *2 (N.D. Ga. Feb. 20, 2024) ("a recall of a product is not evidence of a defect"); *see Coffelt v. Kroger Co.*, 2018 WL 6004543, at *11 (C.D. Cal. Aug. 17, 2018) ("Plaintiff offers no authority for the proposition that he has standing or injury simply because a product was recalled and *may* have been contaminated. In fact, cases reviewed by this Court suggest otherwise."); *Garcia v. Volkswagen Grp. of Am., Inc.*, 2022 WL 2542291, at *9 (E.D. Va. July 7, 2022) ("[E]ven when a specific defect is alleged in a vehicle or other product, a recall notice is not evidence that demonstrates an individual plaintiff's

vehicle or product possesses that defect."); *Burbank v. BMW of N. Am., LLC*, 2022 WL 833608, at *9 (D.N.J. Mar. 21, 2022) (explaining that "[a] recall will often be overinclusive" and "the mere existence of a recall does not prove that any individual's vehicle actually contained a nonconformity").

The mere *possibility* that Plaintiffs bought a product containing benzene and therefore *might* have been exposed to *potentially* harmful amounts of the substance is simply too attenuated to constitute a particularized and concrete injury.

### B.   Plaintiffs have not alleged an injury-in-fact because they fail to plausibly show the products pose any health risk.

Even if the Court finds that one or more plaintiffs have plausibly alleged they bought products containing benzene, they have not plausibly shown the products they bought "exposed [them] to dangerous levels of benzene" and thereby diminished the products' value. *E.g.*, ACC ¶¶ 128, 129, 132, 136. An injury-in-fact exists only when the alleged health threat is "certainly impending, or there is a substantial risk that the harm will occur." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). "[T]he Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury are insufficient[.]" *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-10 (2013)); *Lacewell v. Office of Comptroller of Currency*, 999 F.3d 130, 141 (2d Cir. 2021); *Speer v. Danjon Capital, Inc.*, 2023 WL 2538126, at *4 (D. Conn. Mar. 16, 2023).

Courts have rejected claims of economic injury when the plaintiffs alleged consumption of products containing potentially harmful substances (including benzene), but failed to allege facts showing the levels present were substantially likely to cause physical harm. *See Housey v. Procter & Gamble Co.*, 2022 WL 874731, at *9 (S.D.N.Y. Mar. 24, 2022), *aff'd*, 2022 WL 17844403 (2d

Cir. Dec. 22, 2022) (A plaintiff who fails "to plausibly allege that the [product] is harmful … has failed to allege that she did not receive the full value of her purchase price.") (dismissing under Rule 12(b)(6)); *Bowen v. Energizer Holdings, Inc.*, 2023 WL 1786731, at *6 (C.D. Cal. Jan. 5, 2023) ("Without allegations that the level of benzene in Plaintiff's purchased sunscreen is likely to cause physical harm, Plaintiff's injury remains too speculative."); *Boysen v. Walgreen Co.*, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012) ("Plaintiff has plead that arsenic and lead are harmful toxins, and that the products contain those toxins, but he does not expressly allege that the levels of lead and arsenic contained in defendant's juices are likely to cause physical harm."); *Herrington v. Johnson & Johnson Consumer Cos.*, 2010 WL 3448531, at *4 (N.D. Cal. Sept. 1, 2010) ("Plaintiffs do not plead a distinct risk of harm from a defect in Defendants' products that would make [] an economic injury cognizable"; rather, "the threat of which Plaintiffs complain is too speculative and uncertain to confer Article III standing"); *In re Fruit Juice Prods. Mkt. Sales Prac. Litig.*, 831 F. Supp. 2d 507, 512 (D. Mass. 2011) ("Because Plaintiffs are unable to show that *any* actual harm resulted from consumption of the fruit juice products, their allegation of 'economic' injury lacks substance.").

Three such cases involved allegations that baby food products contained excessive amounts of heavy metals and thereby posed health risks to children. *See, e.g.*, *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488 (D.N.J. Apr. 25, 2022); *In re Gerber Prods. Co. Heavy Metals Baby Food Litig.*, 2022 WL 10197651 (E.D. Va. Oct. 17, 2022); *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210 (D.N.J. 2022). Some of the allegations were based on limits for heavy metals established by federal agencies for drinking water and bottled water, but there were no facts alleged showing these limits were appropriate for baby food. The plaintiffs alleged the products were worth less than they paid for them. The basis for the alleged diminished value was the risk of future harm as

there was no allegation the products failed to perform their intended purpose. Because the complaints did not plausibly allege the levels of heavy metals in the baby food were unsafe and posed a substantial threat of harm, the plaintiffs failed to allege any actual economic injury.

The same is true here. Plaintiffs have not alleged any facts showing that the 2-ppm standard for drug products applies to dry shampoo products. Beyond that, Plaintiffs have not alleged facts showing that the products they bought and used placed them at a "substantially increased risk of future harm," much less a substantial probability of harm. Plaintiffs allege the products they used *may* contain benzene and that *long-term* exposure to *high* levels of benzene can cause cancer. ACC ¶¶ 83-87. But Plaintiffs have not alleged the levels of benzene to which they allegedly were exposed, how often they were exposed, or how long they were exposed.

Plaintiffs' bare assertion that there is "no safe level" of benzene exposure is not plausible. Benzene is found in gasoline, cigarette smoke, automobile exhaust, glues, paints, and detergents, just to name some common examples people encounter daily. *See* note 7, *supra.* Moreover, FDA has determined that 2 ppm of benzene is an acceptable safety standard for humans (in the context of drug products). *See Bowen*, 2023 WL 1786731, at *5 ("[T]he FDA's use [in communications to manufacturers] of 'unacceptable levels of benzene,' 'allowable limits,' and 'at or above 2 ppm' belie the existence of Plaintiff's suggested zero standard."); *Huertas v. Bayer U.S., LLC*, 2022 WL 3572818, at *6 (D.N.J. Aug. 19, 2022) (allegation based on article suggesting "'[t]here is probably no safe level of exposure to benzene' … does not demarcate the requirements that the FDA sets forth concerning levels of carcinogenic contaminants and amounts to probability and speculation."); *Herrington*, 2010 WL 3448531, at *3 (allegation that "scientists believe there is no safe level of exposure to a carcinogen" was insufficient to allege injury when plaintiffs failed to "plead that the amounts of the substances in Defendants' products have caused harm or create a

credible or substantial risk of harm"). Plaintiffs' suggestion that FDA might restrict benzene content for dry shampoos to less than 2 ppm is sheer speculation, unsupported by FDA.[25]

Absent factual allegations that the particular products Plaintiffs bought exceeded some government safety threshold for benzene for dry shampoos, or exceeded a level shown to cause a substantial—not just theoretical—increased risk of harm, Plaintiffs have "asserted only a subjective allegation that the trace amounts of [benzene] in the [products] are unacceptable to [them], not an injury-in-fact sufficient to confer Article III standing." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010); *Kimca*, 2022 WL 1213488, at *8 (Plaintiffs "allege (1) that the Baby Food Products contain heavy metals and (2) that elevated levels of heavy metals can be unsafe and dangerous. However, they do not connect these two allegations by establishing that the levels of heavy metals in the Baby Food Products are unsafe."); *Bowen*, 2023 WL 1786731, at *8 ("Plaintiff … fails to allege a level of benzene that exceeds acceptable levels.").[26]

---

[25] Plaintiffs have not identified any class of products for which FDA has established a zero limit for benzene.

[26] Although FDA's recommended 2-ppm limit for drug products does not apply to dry shampoos, the test results in the ACC for all batches of Living Proof products were well below that level. Indeed, all batches were below 1 ppm. ACC ¶ 97. Plaintiffs' counsel cannot plausibly contend that products containing <1 ppm of benzene are unsafe as that position is inconsistent with the position they have taken in other benzene litigation. In settling another class action involving alleged benzene contamination of Procter & Gamble aerosol products, Interim Lead Counsel for Plaintiffs Steven Bloch, along with Bryan Aylstock (also counsel of record here), obtained a commitment from P&G to limit the benzene content in various products, including dry shampoo, to under 1 ppm. *In re P&G Aerosol Prods. Mktg. and Sales Pract. Litig.*, No. 2:22-md-03025, Dkt. 23-1, at 16, 31, 34 (S.D. Ohio July 1, 2022). Another attorney of record here, Jason Richards of the Aylstock firm, entered into a similar class settlement with Johnson & Johnson that limited benzene content in those products to 1 ppm. *In re Johnson & Johnson Sunscreen Mktg., Sales Pract. and Prods. Liab. Litig.*, No. 0:21-md-03015, Dkt. 55-9, at 12, 40 (S.D. Fla. Dec. 17, 2021). These attorneys had a fiduciary obligation to the consumers in those classes and therefore could not have agreed to a 1-ppm limit if considered unsafe. Moreover, by submitting the settlements for approval, they implicitly represented to two federal courts that this provides an acceptable level of safety for consumers. Accordingly, Plaintiffs have not plausibly alleged an injury-in-fact as to Living Proof products for this additional reason.

**C.    Plaintiffs have not shown they failed to receive the benefit of the bargain.**

Plaintiffs allege they "bargained" for products that were "safe" and "did not contain dangerous levels of carcinogens such as benzene" and that they "were deprived of the benefit of the bargain[.]" ACC ¶ 137. But "[a] claim for benefit-of-the-bargain damages must be based on the bargain that was actually struck[.]" *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 60 (2d Cir. 1984). To allege damages under the benefit-of-the-bargain theory, a plaintiff "must do more than allege that she did not receive the benefit she *thought* she was obtaining"; she "must show that she did not receive a benefit for which she actually *bargained*." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (cleaned up).

Plaintiffs "fail[] to identify any specific statements about safety made by [Unilever] that [they] found material to [their] decision to purchase the [products]." *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *4 (E.D. Cal. Mar. 27, 2015). The ACC identifies no such statements on the product labels; it only recites some general statements about safety from some Unilever websites unrelated to any specific products. As discussed in section IV.A below, those statements are not actionable and, in any event, no plaintiff plausibly alleges she read and relied on any particular statement when buying the products. In the end, Plaintiffs allege only that they "believed" the products were "safe." ACC ¶¶ 8, 134. Plaintiffs therefore contend that the products they "received lacked a 'safety' benefit for which [they] never bargained in the first instance." *Solis v. Coty, Inc.*, 2023 WL 2394640, at *7 (S.D. Cal. Mar. 7, 2023); *Estrada*, 2015 WL 1440466, at *4 (absent reliance on a specific statement, plaintiff's "belief" that the product was "safe" was insufficient).

Plaintiffs' claims under this theory also fail because they received all of the intended benefits of the bargain. Plaintiffs bargained for dry shampoo products that absorb excess oils and

refresh hair on days between washes. They allege they bought the products more than once, suggesting they "received such benefits" and "believed it was worth the price." *Estrada*, 2015 WL 1440466, at \*4. Plaintiffs used the products without suffering harm and they have not shown any likelihood they will be harmed from using the products.

### D.   Plaintiffs lack standing to seek equitable relief.

Plaintiffs cannot pursue equitable relief because they have alleged no facts showing that the legal remedy they seek (money damages) would be inadequate. *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 431 n.5 (S.D.N.Y. 2020) ("[W]here there is an adequate remedy at law, such as NYGBL § 349, a court will not permit a claim in equity for the same conduct.") (cleaned up) (dismissing unjust enrichment claim on a motion to dismiss); *Palin v. New York Times Co.*, 2020 WL 353455, at \*2 (S.D.N.Y. Jan. 21, 2020) ("Equitable relief requires a showing that there is no adequate remedy at law.") (citation omitted) (dismissing disgorgement claim on the pleadings); *Pouliot v. Paul Arpin Van Lines, Inc.*, 303 F. Supp. 2d 135, 140 (D. Conn. 2004) (dismissing equitable claims at the pleading stage when available legal remedies were adequate).

Nor do Plaintiffs allege facts showing they have standing to seek injunctive relief in particular, which requires plausible allegations of a "real or immediate threat" of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Although past injury may establish standing to seek money damages, it does not confer standing to seek injunctive relief "unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 565 (S.D.N.Y. 2017) (finding that "[a] plaintiff seeking injunctive relief cannot rely on past injury," but "must allege a likelihood of future harm" (citing *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011))). The same standard applies to claims for prospective declaratory relief. *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012). Moreover, "the named

plaintiffs in [a class] action must themselves have standing to seek injunctive relief." *Dodge v. Cnty. of Orange*, 103 F. App'x 688, 690 (2d Cir. 2004).

Plaintiffs allege they would not have bought the products or would have paid less had they known of the risk they may contain benzene. *See, e.g.*, ACC ¶¶ 8, 21-22. But Plaintiffs now know about the alleged risk of benzene and so could not be harmed by the alleged fraud or failure to disclose in the future. *See, e.g.*, *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147-48 (2d Cir. 2020) (finding past purchasers were not likely to experience future harm because, having once been deceived, if they choose to buy the products again, "they will be doing so with exactly the level of information that they claim they were owed from the beginning"); *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 309 (S.D.N.Y. 2017), *aff'd*, 710 F. App'x 43 (2d Cir. 2018) ("[B]y stating that he would not have bought the Inserts had he 'known the truth' about the allegedly deceptive marketing, Plaintiff essentially concedes that he will not buy the Inserts, or be misled by Defendants' marketing, again in the future."); *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338-39 (E.D.N.Y. 2018) (finding lack of standing for injunctive relief for the same reason); *Marino*, 264 F. Supp. 3d at 565 (same).

Finally, Plaintiffs do not allege any reason to think the products will be contaminated with benzene in the future. Unilever voluntarily recalled the products nationwide in October 2022. The company announced that it "worked with its propellant suppliers to address this issue" and Plaintiffs have alleged no facts suggesting otherwise.[27] Accordingly, Plaintiffs have not shown they (or anyone else) are "likely to be harmed again in the future in a similar way" for this additional reason. *Nicosia*, 834 F.3d at 239. Because Plaintiffs lack standing to seek injunctive or declaratory relief for themselves, they also cannot pursue such relief on behalf of a class. *Id.*

---

[27] *See* note 16, *supra*.

## II.      Plaintiffs' labeling claims are expressly preempted.

Plaintiffs' state-law claims premised on the failure to disclose information about benzene on the product labels are expressly preempted because they seek to impose requirements that are in addition to or different from the applicable federal requirements for these products. The FDCA expressly "preempts not only those state laws that are in conflict with it (*i.e.*, any law that is 'different from' the FDCA), but also *any* state law that provides for labeling requirements that are not *exactly the same* as those set forth in the FDCA and its regulations (*i.e.*, any law that is 'in addition to' the FDCA)." *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 35-36 (2d Cir. 2020) (citing 21 U.S.C. § 379s(a)) (affirming dismissal of claim that cosmetic labels omitted information not required by the FDCA); *Bimont v. Unilever U.S., Inc.*, 2015 WL 5256988, at *2-8 (S.D.N.Y. Sept. 9, 2015) (labeling claims involving deodorants expressly preempted); *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 374-77 (S.D.N.Y. 2014) (labeling claims expressly preempted under parallel provision applicable to OTC drugs).

### A.      Plaintiffs' claims based on failure to include benzene on the products' ingredient list are expressly preempted.

Plaintiffs' state-law claims that benzene should have been included on the products' ingredient list are preempted because they would impose a labeling requirement different from or in addition to those required by federal law. Plaintiffs allege Unilever misled them by failing to disclose benzene. *See, e.g.*, ACC ¶¶ 1, 8, 63, 75, 78, 79, 103, 132, 134. But benzene was not an *intended* ingredient, it was a contaminant. For reasons that should be obvious, there is no requirement that unknown contaminants be disclosed in advance. An "ingredient" is "any single

chemical entity or mixture used as a component[28] in the manufacture of a cosmetic product." 21 C.F.R. § 700.3(e). Plaintiffs themselves concede Unilever did not use benzene as a component in the manufacture of the products, and refer to it as a contaminant. *See, e.g.*, ACC ¶¶ 3, 6, 28, 35, 38, 39, 48, 53, 57, 94, 95, 99, 110, 115, 121, 123, 390. Even "incidental ingredients" that "have no technical or functional effect in the cosmetic" need not be disclosed. 21 C.F.R. § 701.3(l). Because federal law did not require the declaration of benzene on the ingredient list, Plaintiffs' state-law claims seeking to impose liability for failure to do so are expressly preempted. *See Critcher*, 959 F.3d at 35-36; *Herrington*, 2010 WL 3448531, at *9 (rejecting claim that children's bath products should have identified contaminant on the label).

Two other district courts have found preempted claims for failure to list benzene on the ingredient list of dry shampoo products. *Bojko*, 2023 WL 4204663, at *4-5 ("Plaintiffs allege that benzene is a contaminant, not an ingredient."); *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *5-6 (N.D. Cal. May 11, 2023) ("[B]enzene is not an ingredient, as, being an impurity, benzene is not 'a component in the manufacture of a cosmetic product'") (citing 21 C.F.R. § 700.3(e)); *see also Truss v. Bayer Healthcare Pharms. Inc.*, 2022 WL 16951538, at *4-5 (S.D.N.Y. Nov. 15, 2022) (holding claim that manufacturer should have included degradation byproduct in ingredient list was preempted because FDCA did not require its disclosure); *Goldstein v. Walmart, Inc.*, 637 F. Supp. 3d 95, 103-13 (S.D.N.Y. 2022) (holding claim that cough suppressant label was misleading because it failed to disclose that active ingredient may cause drowsiness was expressly preempted because FDA did not require that disclosure).

---

[28] Although "component" is not defined in this CFR section, FDA elsewhere explains that the term refers only to ingredients "intended for use." *See* 21 C.F.R. § 111.3 ("any substance intended for use in the manufacture of a dietary supplement"); 21 C.F.R. § 210.3(b)(3) ("any ingredient intended for use in the manufacture of a drug product"); 21 C.F.R. § 212.1 ("any ingredient intended for use in the production of a PET [positron emission tomography] drug").

**B.      Plaintiffs' claims based on failure to warn of the risks of benzene are expressly preempted for similar reasons.**

Plaintiffs' claims based on a failure to include a warning about benzene on the label likewise are expressly preempted. Plaintiffs allege—without any factual support—that Unilever was aware of "dangerous" and "unsafe" benzene levels and failed to warn consumers. *See e.g.,* ACC ¶¶ 1, 22, 76, 78, 132, 133, 134, 153, 154, 156, 182, 398, 402, 403. These claims are expressly preempted because the FDCA would not permit, much less require, such a warning.

A product containing "dangerous" or "unsafe" levels of benzene (as Plaintiffs allege) would be classified as "adulterated" under federal law. 21 U.S.C. § 361(a) ("A cosmetic shall be deemed to be adulterated … [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to users"). Indeed, Plaintiffs allege the products are adulterated under federal law. ACC ¶¶ 124, 126. The FDCA expressly prohibits the sale of any adulterated cosmetic. *See id.* ¶ 126; 21 U.S.C. § 331(a).

Nothing in the FDCA permits manufacturers to sell adulterated products as long as they include a warning about the adulteration. As another federal district court aptly observed, warnings do not cure an adulteration problem. *See In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2023 WL 4765409, at *12 (S.D. Fla. July 26, 2023) ("When a product is adulterated because it contains an impurity, the Court can understand how a defendant may be able to cure the adulteration problem by removing the impurity; but the Court cannot understand how a defendant could cure the problem under the FDCA—the contamination—by changing the product's label."); *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 2023 WL 2817576, at *11 n.13 (S.D. Fla. Apr. 6, 2023) (questioning how disclosing the impurity on the label "would return the [adulterated product] to unadulterated status").

In cases involving medical devices, which are also regulated by FDA, courts have found claims for failure to warn that a device is adulterated are expressly preempted because there is no federal requirement to provide such a warning. *McConologue v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 107-109 (D. Conn. 2014) (citing *Purcel v. Advanced Bionics Corp.*, 2010 WL 2679988, at *6 (N.D. Tex. June 30, 2010) ("Plaintiffs' fraud by nondisclosure claim asserts that Bionics owed a duty to the Plaintiffs to disclose that the devices were adulterated. Plaintiffs cite no federal requirement obligating Bionics to warn them that the devices were adulterated. These claims of fraud by nondisclosure and negligence by failure to warn impose a requirement in addition to those approved by the FDA—the duty to warn consumers if devices are adulterated—and are therefore preempted by [21 U.S.C.] § 360k(a).")); *Stout v. Advanced Bionics, LLC*, 2013 WL12133966, at *9 (W.D. Pa. Sept. 19, 2013) (same).[29]

Plaintiffs may argue (as they did previously) that the FDCA required a warning about benzene pursuant to 21 C.F.R. § 740.1(a), which states that "[t]he label of a cosmetic product shall bear a warning statement whenever necessary or appropriate to prevent a health hazard that may be associated with the product." 21 C.F.R. § 740.1(a). For the reasons discussed, this regulation does not apply to adulterated products. The warning required by this regulation is one that would allow the consumer to prevent the "health hazard" and thus safely use the product. For example, aerosol products contain warnings not to use the product near heat or flame because they are flammable. However, if the product contains a contaminant, as Plaintiffs allege here, no warning can cure the problem. *See In re Zantac*, 2023 WL 4765409, at *12.

---

[29] The express preemption provision applicable to medical devices is substantially similar to that applicable to cosmetics. It preempts any state-law requirement "which is different from, or in addition to, any [federal] requirement applicable … to the device[.]" 21 U.S.C. § 360k(a)(1).

To the extent Plaintiffs' state-law claims seek to hold Unilever liable for failing to provide a warning about benzene, they seek to impose a requirement "different from or in addition to" the FDCA. Accordingly, the failure-to-warn claims are expressly preempted.

### III.   Plaintiffs' claims based on the sale of allegedly adulterated or misbranded products are impliedly preempted.

Plaintiffs' claims are impliedly preempted to the extent they seek to impose liability on Unilever on the ground that the products are "adulterated" or "misbranded" under the FDCA. *See* ACC ¶¶ 119-126. Any such claims fail as a matter of law because the FDCA does not provide a private right of action. Rather, it "provides that 'all … proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.'" *Glover v. Bausch & Lomb Inc.*, 6 F.4th 229, 237 (2d Cir. 2021) (citing 21 U.S.C. § 337(a)).

"Although § 337(a) does not expressly preempt state law, it has long been understood to have an implied preemptive effect" that "forecloses state law causes of action that are predicated on a violation of the FDCA[.]" *Patane v. Nestlé Waters N. Am., Inc.*, 314 F. Supp. 3d 375, 385-86 (D. Conn. 2018) (dismissing claims brought under state consumer protection statutes (citing *Buckman Co. v. Plaintiffs' Legal. Comm.*, 531 U.S. 341 (2001)); *Norman v. Bayer Corp.*, 2016 WL 4007547, at *2 (D. Conn. July 26, 2016) ("The Supreme Court has … held that a state law claim is impliedly preempted under the FDCA if the conclusion that the state law has been violated is based solely on a violation of the FDCA." (citing *Buckman*, 531 U.S. at 353)).

Following *Buckman*, "[t]o avoid implied preemption … claims must be based not on the FDCA, but on 'traditional state tort law which … predated the federal enactments in question[].'" *Glover*, 6 F.4th at 237 (citing 531 U.S. at 352-53); *id.* at 239 (state-law claim "may not exist 'solely by virtue of the FDCA'") (citing 531 U.S. at 353); *see also McDaniel v. Upsher-Smith Labs., Inc.*, 893 F.3d 941, 944 (6th Cir. 2018); *Patane*, 314 F. Supp. 3d at 385 n.9. In other words, "the conduct

on which the claim is premised must be the type of conduct that would … give rise to liability under state law *even if the FDCA had never been enacted*." *Id.* at 386 (citing *Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 579 (6th Cir. 2013) (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Minn. 2009) (emphasis added)); *accord Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1214-15 (W.D. Okla. 2013), *aff'd*, 784 F.3d 1335 (10th Cir. 2015) (Gorsuch, J.).

In the same way, "a private litigant cannot bring a state-law claim against a defendant when the state-law claim is in substance (even if not in form) a claim for violating the FDCA[.]" *Riley*, 625 F. Supp. 2d at 777; *see Nexus Pharms., Inc. v. Leiters, Inc.*, 2022 WL 4181716, at *1 (9th Cir. Sept. 13, 2022). That is, a claim is impliedly preempted if the plaintiff is "suing *because* the conduct violates the FDCA[.]" *Glover*, 6 F.4th at 237 (emphasis added); *Norman*, 2016 WL 4007547, at *2; *see Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 683 (S.D.N.Y. 2021) (claims based on violations of FDA food labeling standards were preempted by § 337(a) (citing *PDK Labs. Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)); *Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *10 (N.D.N.Y. Jan. 15, 2016) (dismissing mislabeling and misbranding claims); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *9 (E.D.N.Y. May 14, 2015) (same). As another court in this district found, "[i]t would not mean much for Congress to foreclose private enforcement of the FDCA if this meant that any plaintiff could end-run this restriction by suing to enforce the FDCA under the guise of a state law claim for relief." *Patane*, 314 F. Supp. 3d at 385.

Although Plaintiffs bring claims under the guise of various state-law theories, their claims premised on the sale of allegedly adulterated and misbranded products are not based on pre-existing, traditional state tort law; rather, they depend on alleged FDCA violations and are, "in substance," claims for violating the FDCA.

Neither can Plaintiffs avoid preemption simply because they also assert that the products are adulterated and misbranded under the food, drug, and cosmetics acts in their home states. *See* ACC ¶ 127 (listing state statutes). These state acts are not independent, but rather are based on the FDCA.[30] The FDCA impliedly preempts a state-law claim that "originates from … federal law." *Buckman*, 531 U.S. at 347-48; *Chong v. KIND LLC*, 585 F. Supp. 3d 1215, 1219 (N.D. Cal. 2022) ("Plaintiffs here are not pursuing pre-existing, traditional, state tort law claims, rather they rely on California's Sherman Law, which post-dates and is entirely dependent upon the FDCA, in that it expressly adopts the FDCA and regulations as state law."). "The FDCA provides that '***all*** … ***proceedings*** for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.'" *Glover*, 6 F.4th at 237 (citing § 337(a) (emphasis added)).

Because Plaintiffs purport to rely on state statutes that incorporate or mirror the FDCA, their claims impermissibly seek to do an end-run around Congress's express prohibition on private FDCA enforcement. The Ninth Circuit's recent decision in *Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040 (9th Cir. 2022) is instructive. There, a drug manufacturer sued a compounding pharmacy for violating the unfair competition statutes of Connecticut, California, Florida, Pennsylvania, and Arizona because it failed to obtain FDA approval to sell drugs that allegedly were copies of the plaintiff's FDA-approved drugs.[31] *Id.* at

---

[30] *See* Conn. Gen. Stat. § 21a-91; Fla. Stat. § 499.002(b); 410 Ill. Comp. Stat. 620/21(a); Cal. Health & Safety Code § 110105; N.Y. Educ. Law § 6802.13; 35 Pa. Cons. Stat. § 780-133. *Compare* 21 U.S.C. §§ 361(a) and 362(a) *with* Conn. Gen. Stat. §§ 21a-111(a) and 21a-112(a), Fla. Stat. §§ 499.008(1) and 499.009(1), 410 Ill. Comp. Stat. 620/18(a) and 620/19(a), Cal. Health & Safety Code §§ 111670 and 111730, N.Y. Educ. Law §§ 6818.1(a) and 6818.2(a), 35 Pa. Cons. Stat. §§ 780-107(1) and 780-108(1), Texas Health & Safety Code §§ 431.141(a) and 431.142(1)(a).

[31] The district court opinion explains that the claims were brought under CUTPA, California's UCL, FDUTPA, and PUTPCPL—all of which are at issue here. *Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 2020 WL 6867069, at *1 (C.D. Cal. Nov. 18, 2020).

1042-43. Both the FDCA and parallel state drug statutes require FDA approval before drugs can be sold.[32] Congress generally exempts compounding pharmacies from the drug approval process, but not if the drugs are "essentially a copy" of an approved drug. *Id.* at 1043.

The Ninth Circuit affirmed the district court's finding that the claims were impliedly preempted. As in *Buckman*, the plaintiff's claims were "based on state laws that incorporated federal law, rather than on traditional tort law," and, as a result, "a necessary element of [the plaintiff's] claim [wa]s the alleged violation of the FDCA." *Id.* at 1047-48; *id.* at 1050 ("The purported state law violation is of a law that says in substance 'comply with the FDCA,' not a traditional common law tort.").[33] Plaintiffs' claims are impliedly preempted for the same reasons.[34]

To the extent Plaintiffs' claims are based on allegations that the products failed to comply with FDA guidance limiting benzene content to 2 ppm in pharmaceuticals (*see* ACC ¶¶ 2, 91, 96),

---

[32] 2020 WL 6867069, at *1.

[33] Other recent decisions are in accord. *See Collyer v. Catalina Snacks Inc.*, 2024 WL 202976, at *6 (N.D. Cal. Jan. 18, 2024) (claims that cereal labels violated state statute that incorporates the FDCA were impliedly preempted because the FDCA "preempt[s] state-law claims that ultimately are dependent on the existence of violations of federal law"); *Bubak v. GOLO, LLC*, 2024 WL 86315, at *1, 4 (E.D. Cal. Jan. 8, 2024) (statutory fraud and unfair competition claims against distributor who allegedly misrepresented dietary supplement were impliedly preempted due to FDCA's bar on private enforcement despite being based on violation of state law that "parallels the FDCA"): *Wilson v. ColourPop Cosmetics*, 2023 WL 6787986, at *7-8 (N.D. Cal. Sept. 7, 2023) (UCL, FAL, CLRA, warranty, fraud, and unjust-enrichment claims alleging that cosmetic eyeshadow products contained harmful ingredients not approved by FDA were preempted); *Novo Nordisk, Inc. v. Brooksville Pharms. Inc.*, 2023 WL 7385819, at *2-3 (M.D. Fla. Nov. 8, 2023) (FDUTPA claim based on violation of Florida Drug and Cosmetic Act was preempted because Act relies on FDCA and therefore claim existed only because FDCA exists); *Zyla Life Sciences, LLC v. Wells Pharma of Houston, LLC*, 2023 WL 6301651, at *2-5 (S.D. Tex. Sept. 27, 2023) (CUTPA, UCL, and FDUTPA claims based on violations of state statutes that parallel FDCA requirements were preempted by FDCA's exclusive enforcement provision).

[34] Unilever acknowledges that *Patane v. Nestlé Waters N. Am., Inc.*, 369 F. Supp. 3d 382 (D. Conn. 2019) ("*Patane II*") reached a different result, but respectfully suggests it was wrongly decided. For the above reasons, *Patane II* was exactly the "end-run" around private FDCA enforcement that *Patane I* cautioned against. 314 F. Supp. 3d at 385. Moreover, the court relied on two decisions from California that may no longer be good law after *Nexus*. 369 F. Supp. 3d at 390.

those claims are preempted for the same reasons. Moreover, such claims fail because these products are *not* pharmaceuticals and therefore the FDA guidance does not apply to them.

In *Nexus*, the claims also were preempted because they would require litigation of whether the defendant's drugs were "essentially a copy" of the plaintiff's drug when FDA had not made that determination. *Id.* at 1048-49. "The plain text of the FDCA leaves that determination in the first instance to the FDA's balancing of risks and concerns in its enforcement process." *Id.* at 1050. "Proceedings to enforce or restrain violations of the FDCA … must be by and in the name of the United States, not a private party."[35] *Id.* at 1049; *Hope Med. Enter., Inc. v. Fagron Compounding Servs.*, 2023 WL 4758454, at *1 (9th Cir. July 26, 2023) ("Because [the plaintiff] seeks to enforce its interpretation of the FDCA's rules … the FDCA's prohibition on private enforcement and the doctrine of implied preemption bar the suit.") (cleaned up).

The same is true here. To prevail, Plaintiffs would have to prove that Unilever sold adulterated and/or misbranded products, "which would amount to litigation of the alleged underlying FDCA violation even though the FDA has not itself concluded that there was a violation [of the adulteration or misbranding statutes]." *Nexus*, 48 F.4th at 1049. This "would, in effect, permit [Plaintiffs] to assume enforcement power which the statute does not allow and require the finder of fact to make a decision that the FDA itself did not make." *Id.* 21 U.S.C. § 337(a) bars any such claim for private enforcement, regardless of how it is framed.

## IV.    Plaintiffs have not plausibly alleged any deceptive statements or omissions.

Plaintiffs' claims that Unilever affirmatively misrepresented the products and failed to disclose the presence of benzene are subject to the particularity requirements of Rule 9(b), which

---

[35] The Connecticut Food, Drug, and Cosmetic Act is not only based on the FDCA (*see* Conn. Gen. Stat. § 21a-91), but it contains the identical language prohibiting private enforcement as the federal FDCA. *Id.* § 21a-99 ("All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the state of Connecticut.").

means the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *In re IBM Arbitration Agreement Litig.*, 76 F.4th 74, 87 (2d Cir. 2023). Plaintiffs have not met these requirements.

Plaintiffs have not identified the specific statements they each consider fraudulent. They point to no misrepresentations on the labels. To the extent Plaintiffs contend that any website statements were fraudulent, that contention fails for the reasons below. Moreover, Plaintiffs have not alleged *when* those statements were posted on Unilever's various websites, whether any plaintiff read any of the statements, or if so, which statement the plaintiff read and *where* and *when* they read it. These facts are essential to any fraud-based claim. Plaintiffs' conclusory allegation that Unilever "actively and knowingly concealed" the risk of benzene exposure likewise is insufficient to state a claim for fraud.

Plaintiffs also must "plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by Unilever's statements. *Jessani v. Monini N. Am., Inc.*, 744 F. App'x 18, 19 (2d Cir. 2018) (citing *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (cleaned up)); *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020). When determining whether a reasonable consumer would have been misled by a statement, "context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Id.* at 741. As discussed below, Plaintiffs have not plausibly alleged any false or misleading statements or omissions, or that Unilever had any fraudulent intent.

**A.      The only statements Plaintiffs identify with particularity are puffery on which a reasonable consumer could not rely.**

Plaintiffs allege that Unilever falsely represented on its product labeling, advertisements, and websites that the dry shampoo products at issue were "safe and appropriate for human use" and "did not contain unsafe levels of carcinogens." *See, e.g.*, ACC ¶¶ 176-77, 209, 212, 232, 255. Initially, the ACC does not identify *any* statement that appeared on the label of *any* of the products, much less a label statement that refers to the safety of the products or carcinogens. The ACC also fails to identify any "advertisements." Although the ACC contains several statements taken from various Unilever websites, these are general statements that are not linked in any way to the Unilever dry shampoo products at issue, nor do they reference benzene or imply that the products are free from trace impurities:

- "Product safety is our top priority. … People trust us to provide them with products that are safe for them, their families, and the environment." ACC ¶ 59;

- "[W]e ensure our products comply with applicable laws. In several areas we set our standards higher than those required by law." ACC ¶ 60:

- "We ensure that our products are safe for consumers and workers and have a positive impact on the environment. … We … ensure that our products and processes are safe and sustainable by design. … [N]ew Unilever products and processes are always designed to ensure that they are safe for our consumers to use[.]" ACC ¶ 61;

- "We rigorously assess all Suave products to ensure all ingredients, manufacturing and labeling comply with applicable laws and regulations . . . Suave hair products are made of 'select natural ingredients'—'so you can trust we've got the good stuff.'" ACC ¶ 64;

- "We care about our customers and the environment, so our products are as safe as they are caring. We want to give our customers the best experience using our products, so our ingredients always comply with regulations and meet our safety and environmental standards (which often go beyond regulatory requirements)." ACC ¶ 65;

37

- "Every single product is rigorously developed and tested …." ACC ¶ 67.[36]

These statements "do not describe any particular product," but rather are "aspirational company mission statements." *Brown v. Coty, Inc.*, 2023 WL 2691581, at *4 (S.D.N.Y. Mar. 29, 2023). Moreover, "[a]s many cases have found before, general 'safety' claims are nonactionable puffery." *Mandani v. Volkswagen Grp. of Am., Inc.*, 2019 WL 652867, at *4 (N.D. Cal. Feb. 15, 2019). The statements generally convey that safety is Unilever's top priority, that its products are designed to be safe, that the ingredients used meet safety standards, and that the products are rigorously tested. Courts routinely hold that such general statements are not actionable. *See, e.g.*, *Solis*, 2023 WL 2394640, at *7) (dismissing similar claims because they were based on statements that were "far too generalized to reasonably be construed as representations about the Product's PFAS content"); *Estrada*, 2015 WL 1440466, at *4 (finding that "general safety statements on … Defendants' websites … lack[ed] sufficient specificity to substantiate an injury").

Plaintiffs' claims fail for the same reasons. Absent a statement indicating that the products are free of all contaminants, reasonable consumers would not expect them to be completely devoid of trace amounts of a substance like benzene that is ubiquitous in the environment and which was not intentionally added as an ingredient. *See Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020) (affirming dismissal of false advertising claims involving an alleged contaminant because a reasonable consumer "would not make assumptions regarding the presence or absence of trace amounts" of a contaminant when there are no words like "pure" or "100% natural" that "indicate the absolute absence of contaminants"); *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247-48 (S.D.N.Y. 2019) (dismissing deceptive advertising and other claims because "a reasonable consumer would not be so absolutist as to require that 'natural'

---

[36] The webpages are also incorporated by reference in the ACC. *See* ACC ¶¶ 59-61, 64-65, 67 & nn. 22-24, 31-32, 36; *DiFolco*, 622 F.3d at 111.

means there is no glyphosate [a widely-used herbicide], even an accidental and innocuous amount, in the Products").

Even if these statements were of a type that could be actionable, Plaintiffs have not shown any of the statements is untrue. The ACC does not allege facts showing that the amount of benzene in the products is harmful. Although the ACC alleges that benzene is a known carcinogen, it does not contain facts plausibly showing that *the trace amount in the products* poses a health risk. The Second Circuit recently affirmed dismissal in another false advertising case for the same reason. *Housey v. Procter & Gamble Co.*, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (finding that even if the scientific articles referenced in the complaint supported an inference that charcoal is harmful to tooth enamel, the complaint failed to plausibly allege that the defendant's toothpaste "contains sufficient charcoal content so as to render the toothpaste harmful" and noting that the referenced articles "do not suggest that the Crest toothpaste or any similar charcoal toothpaste has actually caused harm to any consumers").

### B. Plaintiffs have not plausibly alleged that Unilever knew the facts it allegedly omitted at the time of sale.

Plaintiffs' claims based on a failure to disclose the presence of benzene in the product labels or advertising also fail (even if not preempted, as discussed above). To begin, the ACC does not allege that any plaintiff read a specific label or advertisement before buying the products. Indeed, for most plaintiffs the ACC fails even to identify which products they bought. Plaintiffs' conclusory allegation that they *collectively* "read, were exposed to, and relied on Unilever's representations and warranties and … labels" (ACC ¶ 134) without alleging what statements *each* plaintiff read is insufficient to satisfy Rule 8, much less Rule 9(b). Plaintiffs have therefore failed to plead any sort of nondisclosure claim based on a statement that was allegedly true but misleading because of facts omitted from it.

Further, Plaintiffs' allegations based on nondisclosure and concealment fail to state a claim because Plaintiffs have not plausibly alleged that Unilever had knowledge of the presence of benzene in Unilever's dry shampoo products *at the time of Plaintiffs' purchases*. A manufacturer cannot be held liable for failing to disclose facts it does not know. *See, e.g.*, *In re Sling Media Slingbox Adver. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) ("[P]laintiffs pursuing an omission-based claim must plausibly allege that the … defendants *had knowledge* of the material information and failed to disclose or actively concealed such information.") (cleaned up); *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1287 (C.D. Cal. 2016) ("To establish their consumer fraud claims, Plaintiffs must show that the manufacturers *knew* their [products] were defective before selling them, and concealed or violated a duty to disclose the defect in order to induce Plaintiffs to purchase those [products].").

The ACC alleges that Unilever learned "on or about September 30, 2021" that propellant supplied by Aeropres used in the manufacture of *other* Unilever products was contaminated with benzene. ACC ¶ 39. It further alleges that propellant used in Unilever's dry shampoo products came from the same Aeropres facility that supplied the contaminated propellant used in the other products. *Id.* "These allegations, however, at most show only that [Unilever knew] that its [dry shampoo products] w[ere] <u>at risk</u> of contamination by [September 30, 2021]. They do not show that [Unilever] knew or believed that the [dry shampoo products] w[ere] actually contaminated" at that time. *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022) (dismissing claims that Pfizer failed to disclose that smoking cessation drug Chantix was contaminated with a potentially carcinogenic chemical). Plaintiffs do not allege that Unilever had *actual* knowledge of contamination of its dry shampoo products until Valisure provided its test results in *July 2022*. *See* ACC ¶ 114. There is no allegation that any plaintiff bought the products *after* July 2022.

Accordingly, Plaintiffs have not plausibly alleged a claim for nondisclosure. *Sling Media*, 202 F. Supp. 3d at 359-60 ("Because this Court is left speculating as to whether Sling Media had knowledge of the information Plaintiffs allege it failed to disclose at the time Plaintiffs made their purchases, Plaintiffs have failed to adequately plead that they were victims of a deceptive or misleading act or practice.").

As with claims of affirmative misrepresentation, Plaintiffs must also allege that any omissions were "likely to mislead a reasonable consumer." *Harris*, 586 F. Supp. 3d at 244. Plaintiffs have not plausibly shown why reasonable consumers would expect the product labels to identify benzene when it was an impurity, not an ingredient, and there is no FDA requirement to disclose the presence of impurities or incidental ingredients. *See* section II.A, *supra*.

Plaintiffs also have failed to show that disclosure of this information would be material to reasonable consumers. *Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 193 (D. Conn. 2021) (omission must be "material," i.e., "likely to affect consumer decisions or conduct"). As discussed above, Plaintiffs have not alleged facts showing that the level of benzene in the products caused them harm or that it posed any health risk. *See Herrington*, 2010 WL 3448531, at *8 (non-disclosure of presence of contaminants in cosmetics was not actionable when plaintiffs failed to show the levels were harmful).

### C.   Plaintiffs have not plausibly alleged that Unilever had any fraudulent intent or duty to disclose.

In the Second Circuit, "plaintiffs in fraud cases must allege facts that give rise to a strong inference of fraudulent intent." *Bell v. Univ. of Hartford*, 577 F. Supp. 3d 6, 25 (D. Conn. 2021) (cleaned up); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (same). This inference can arise "by alleging facts to show that defendant[] had both motive and opportunity to commit fraud," or "by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91. Plaintiffs have alleged no such facts, only the conclusory assertion that Unilever "intentionally, knowingly, and recklessly made … misrepresentations to induce Plaintiffs … to purchase" the products. ACC ¶ 211. This is not only conclusory, it contradicts Plaintiffs' allegations that the benzene contamination was inadvertently caused by the propellant supplied by defendant Aeropres, and that Unilever did not learn of benzene contamination in the dry shampoo products until July 2022 (and shown by a *validated* testing methodology in August 2022). *See* ACC ¶¶ 32-55, 99, 114. Accordingly, Plaintiffs' intentional misrepresentation and omission claims fail on this additional ground.

Plaintiffs' fraud-by-omission claims fail additionally because Plaintiffs have not alleged facts showing Unilever had a duty to disclose the risk of benzene. "Mere nondisclosure … does not ordinarily amount to fraud. … It will arise from such a source only under exceptional circumstances." *Asnat Realty, LLC v. United Illuminating Co.*, 253 A.3d 56, 67 (Conn. App. Ct. 2021). A duty to disclose generally exists when there is a special relationship between the parties giving rise to a duty to speak or one party makes a partial representation but also suppresses some material facts. *Id.*; *Duksa v. City of Middleton*, 376 A.2d 1099, 1101 (Conn. 1977).[37] Plaintiffs do not allege the existence of any relationship between themselves and Unilever, much less a special relationship that would impose a duty to disclose. Nor do they "identify a partial statement by [Unilever] that was rendered false or misleading by any omission." *Harris*, 586 F. Supp. 3d at 241. Plaintiffs have not alleged facts establishing that Unilever was even *aware* that some of the

---

[37] *See Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 369 (E.D.N.Y. 2022) (New York); *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *9 (N.D. Ill. Feb. 1, 2016) (Illinois); *Timberlake v. Synthes Spine Co.*, 2009 WL 926990, at *3 (S.D. Tex. Mar. 31, 2009) (Texas); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (California); *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021) (Florida); *North Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 701-02 (E.D. Pa. 2021) (Pennsylvania).

products contained benzene at the time Plaintiffs bought them, much less that Unilever took active steps to conceal that information.

## V. Plaintiffs' claims for negligent misrepresentation fail for additional reasons.

Plaintiffs' negligent misrepresentation claims are all barred by the economic-loss rule in their home states, which bars tort claims when the plaintiff has suffered only economic losses (not personal injury). *See, e.g.*, *Ulbrich v. Groth*, 78 A.3d 76, 96-98 (Conn. 2013) (holding economic-loss doctrine bars negligent misrepresentation claim premised on same facts as warranty claim).[38]

Plaintiffs also have failed to state a claim for negligent misrepresentation. To do that, Plaintiffs must allege, among other things, that Unilever made a false representation it should have known was false, and that Plaintiffs reasonably or justifiably relied on the representation and were damaged as a result. *Bell*, 577 F. Supp. 3d at 29.[39] Moreover, this claim is subject to the heightened pleading requirements of Rule 9(b) because it is "couched in fraud-like terms[.]" *Ferry v. Mead Johnson & Co.*, 514 F. Supp. 3d 418, 446 (D. Conn. 2021); *see Rombach v. Chang*, 355 F.3d 164,

---

[38] *See also Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *7-8 (N.D. Ill. Mar. 1, 2022) (dismissing claim that Kellogg negligently misrepresented ingredients in Pop-Tarts because claim "is rooted in disappointed … commercial expectations"); *Gordon v. Hain Celestial Grp., Inc.*, 2017 WL 213815, at *6-7 (S.D.N.Y. Jan. 18, 2017) (barring deceptive marketing claim for economic loss in the absence of alleged personal injury or property damage); *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075-76 (N.D. Cal. 2014) (same); *Melton v. Century Arms, Inc.*, 243 F. Supp. 3d 1290, 1300-02 (S.D. Fla. 2017) (barring deceptive marketing claims premised on same allegations as a warranty claim); *Pannetta v. Milford Chrysler Sales Inc.*, 2015 WL 1296736, at *7 (E.D. Pa. Mar. 23, 2015) (dismissing claim involving alleged false statements by auto seller); *Smith v. U.S. Bank, N.A.*, 2022 WL 345655, at *2 (W.D. Tex. Feb. 4, 2022) (barring negligent misrepresentation claim for economic loss "associated with the [contractual] relationship").

[39] *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (New York); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1091 (C.D. Cal. 2017) (California); *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 766 (N.D. Ill. 2022) (Illinois); *Tristani v. OptionSellers.com, Inc.*, 2021 WL 2099313, at *5 (E.D. Tex. Apr. 5, 2021) (Texas); *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, 2021 WL 3666312, at *16 (S.D. Fla. Aug. 18, 2021) (Florida); *McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 544 n.14 (E.D. Pa. 2021) (Pennsylvania).

171-72 (2d Cir. 2004) (claims sound in fraud and are subject to Rule 9(b) when "the wording and imputations of the complaint are classically associated with fraud").[40] As discussed above, Plaintiffs have not even plausibly alleged, much less with particularity, that Unilever made any false statements or that they read and relied on any such statements.

These claims also fail for state-specific reasons. For example, under California, Illinois, Florida, and Pennsylvania law, negligent misrepresentation claims require intent to induce reliance. *In re Trader Joe's*, 289 F. Supp. 3d at 1091; *Karlinski*, 616 F. Supp. 3d at 766; *Jackson*, 2021 WL 3666312, at *16; *McGrain*, 551 F. Supp. 3d at 544 n.14. Plaintiffs have not plausibly pleaded intent (or even knowledge). Under New York and Illinois law, Plaintiffs must also allege Unilever had a duty to communicate accurate information. *Anschutz*, 690 F.3d at 114; *Karlinski*, 616 F. Supp. 3d at 766. New York law "strictly limits" negligent misrepresentation claims to situations when the parties are in privity or have a similar special relationship. *Anschutz*, 690 F.3d at 114. In Illinois, a party has a duty to communicate accurate information only when necessary "to avoid negligently conveying false information that results in physical injury to a person or harm to property," or "to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions." *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 854 (N.D. Ill. 2021). Texas law similarly limits these claims to situations when the defendant has supplied false information to guide others

---

[40] The ACC repeatedly refers to "Unilever's false, misleading, and deceptive misrepresentations" and "intentional" and "knowing" misrepresentations and omissions. *See, e.g.*, ACC ¶¶ 22, 27, 132, 133, 135, 153, 154. Plaintiffs also allege in the negligent misrepresentation claim that Unilever "intended" them to rely on the alleged misrepresentations, ACC ¶ 236, and they have incorporated the allegations of the fraudulent misrepresentation and fraud by omission claims (third and fourth claims for relief) into their negligent misrepresentation claim (*see* ACC ¶ 228).

in their businesses. *Tristani*, 2021 WL 2099313, at *5. Plaintiffs do not allege facts supporting any of these requirements as to Unilever, which is in the business of selling products—not information.

## VI.   The fraud by omission claims of Plaintiffs Armstrong, Branch, Fitzgerald, Hernandez, Vail, Barnette, and Rullo are barred by the economic-loss rule.

Courts in California, Florida, Pennsylvania, and Texas apply the economic-loss rule to bar fraudulent omission claims that seek damages solely for economic loss. *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1161-62 (C.D. Cal. 2022) ("[T]he economic loss rule applies to fraudulent omission claims under California law."); *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103-04 (S.D. Fla. 2019) (dismissing fraudulent concealment claim under Florida law); *Cesar v. Champion Petfoods USA Inc.*, 429 F. Supp. 3d 55, 64-65 (W.D. Pa. 2019) (dismissing fraudulent omission claim in suit alleging misrepresentation of dog food ingredients); *Burnley v. America's Servicing Co.*, 2018 WL 4103226, at *2 (S.D. Tex. June 14, 2018) (dismissing fraud by nondisclosure claim under Texas law). Accordingly, the fraud by omission claims of these seven plaintiffs fail on this additional ground.

## VII.   The economic-loss rule bars Plaintiff Rullo's fraudulent misrepresentation claim.

As with fraudulent omission claims, Pennsylvania's "economic loss doctrine bars 'fraudulent misrepresentation claim[s] intrinsic to the contract or warranty claim.'" *Cesar*, 429 F. Supp. 3d at 64 (quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490 (E.D. Pa. 2016)). Rullo's "fraudulent misrepresentation claim is intrinsic to [his] … warranty claim because it relates to the quality and characteristics of the products purchased from" Unilever. *Id.* at 65 (quoting *Whitaker*, 198 F. Supp. 3d at 491). As a result, the claim is barred by the economic-loss rule.

## VIII.   Plaintiffs fail to state a claim under the various state consumer fraud statutes for additional reasons.

Plaintiffs bring claims under the consumer fraud statutes of their home states, as well as collectively under the NJCFA. These claims fail for reasons in addition to those above.

### A.      Plaintiff Little's claim under CUTPA fails for additional reasons.

The CUTPA claim is barred to the extent it seeks to enforce alleged violations of the Connecticut Food, Drug, and Cosmetic Act ("the Act"). The Act contains language identical to the FDCA prohibiting private enforcement. Conn. Gen. Stat. § 21a-99 ("All such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the state of Connecticut."). The Act also contains a provision stating it is to be construed in a manner "uniform with the federal act." *Id.* § 21a-120. Because the United States Supreme Court has construed the federal FDCA as prohibiting private attempts to enforce the statute (*see* section III, *supra*), this Court should apply the identical state provision in a "uniform" manner and bar private enforcement of the Act—which the plain language of the Act requires in any event.

### B.      Plaintiffs Armstrong and Hernandez fail to state a claim under California's CLRA, FAL, and UCL for additional reasons.

The CLRA, FAL, and UCL claims are all grounded in fraud and so must be pleaded with particularity.[41] *See Rombach,* 355 F.3d at 171-72 (holding that any claim sounding in fraud in subject to Rule 9(b); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (similar holding). "In a deceptive advertising case, Rule 9(b) requires that the plaintiff(s) identify specific advertisements and promotional materials; allege when the plaintiff(s) were exposed to the materials; and explain how such materials were false or misleading." *Janney v. Gen. Mills*, 944 F. Supp. 2d 806, 818 (N.D. Cal. 2013). Plaintiffs must also plead facts showing a duty to disclose (for omissions), *Saitsky v. DirecTV, Inc.*, 2009 WL 10670629, at *14-15 (C.D. Cal. Sept. 22, 2009), and actual reliance on the alleged misrepresentations and omissions, *Great Pac. Sec. v. Barclays*

---

[41] Although Plaintiffs refer to "unlawful" and "unfair" acts in their UCL cause of action, as discussed below, those allegations are based on "false or misleading claims." ACC ¶ 295.

*Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 973 (2009). As discussed above, Plaintiffs have failed to do so.

To the extent Plaintiffs allege Unilever has violated the UCL by committing an "unlawful" or "unfair" business practice, those claims fall short for the same reason. Plaintiffs allege that Unilever's labeling and advertising was "unlawful" only because it violated various statutes that (according to Plaintiffs) prohibit "false or misleading claims." ACC ¶ 295 (CLRA, FAL, FDCA, and California's Sherman Law). Plaintiffs allege a "unified course of fraudulent conduct" and therefore the entire complaint must be pleaded with particularity. *Kearns*, 567 F.3d at 1125, 1127. As discussed, Plaintiffs have not done that.

Any "unfair" practices claim under the UCL suffers the same fate. Plaintiffs allege that Unilever's conduct was "immoral, unethical, unscrupulous, or substantially injurious to consumers" and "violates public policy" by violating the CLRA and FAL—which again, prohibit false or misleading statements. ACC ¶¶ 296-97. But Plaintiffs have not alleged any false or misleading statements and the complaint "does not suggest any other reason [Unilever's labeling and advertising] would be immoral, unethical, or otherwise satisfy the requirements for a UCL unfair prong claim[.]" *Chong v. Nestlé Waters N. Am, Inc.*, 2020 WL 7690175, at *9 (C.D. Cal. Nov. 30, 2020), *aff'd*, 2021 WL 4938128 (9th Cir. Oct. 22, 2021). "[W]here the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D. Cal. 2017).

Plaintiffs' claims under the FAL and UCL also fail because they are equitable claims and Plaintiffs have not shown the lack of an adequate legal remedy. *See Guzman v. Polaris Indus.*,

*Inc.*, 49 F.4th 1308, 1312-13 (9th Cir. 2022), *cert. denied sub nom. Polaris Indus. Inc. v. Albright*, 143 S. Ct. 2612 (2023); *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020); *In re Apple Processor Litig.*, 2023 WL 5950622, at *2 (9th Cir. Sept. 13. 2023) ("Plaintiffs were obliged to allege that they had no adequate legal remedy"); *Klaehn v. Cali Bamboo LLC*, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022).

### C. Plaintiffs Awad and VanVliet fail to state a claim under N.Y. GBL §§ 349 and 350 for additional reasons.

To state a claim under N.Y. GBL § 349 or § 350, Plaintiffs must allege that Unilever "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [they] suffered injury as a result of the allegedly deceptive act or practice." *Parks*, 377 F. Supp. 3d at 246 (citations omitted). Plaintiffs' claims of injury fail additionally because under New York law, "[w]here, as here, a product performs satisfactorily and never exhibits the alleged defect, no cause of action lies." *Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9, 11-17 (App. Div. 2002) (affirming dismissal of GBL claims alleging that defective backrests in vehicles were at risk of collapsing in rear-end collision, thus reducing the value of the vehicles, because plaintiffs did not allege that any seat had failed or that they sold a vehicle at a financial loss because of the defect); *Statler v. Dell, Inc.*, 775 F. Supp. 2d 474, 478-79, 485 (E.D.N.Y. 2011) (dismissing GBL claims alleging safety defect in computer because plaintiff did not allege that defect manifested or allege any personal injury); *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334, at *6 (S.D.N.Y. May 9, 2018) (dismissing GBL claims based on defective IVC filter because "[t]he complaint [did] not allege that [the plaintiff's] IVC filter [was] not effective at performing its intended function or [was] not performing the way defendants stated it would before she purchased it"). *See also In re Canon Cameras Litig.*, 237 F.R.D. 357, 360 (S.D.N.Y. 2006) (finding that a plaintiff whose digital camera did not manifest the alleged defects "cannot be said to have received less than what he

bargained for when he made the purchase" and "proof of malfunction" is a "prerequisite" to a claim under GBL § 349). Plaintiffs have not alleged that the products they purchased failed to work as intended, that those products contained elevated levels of benzene (or any benzene), or that they were harmed from using the products.

### D.   Plaintiff Gunn fails to state a claim under the ICFA for additional reasons.

Under the ICFA, Gunn must allege that she was personally deceived by any alleged misrepresentation. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006); *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 217 (Ill. 2004) ("[D]eceptive advertising cannot be the proximate cause of damages under the [ICFA] unless it actually deceives the plaintiff."). Gunn has not identified (with particularity) any statement that deceived her.

### E.   Plaintiff Rullo fails to state a claim under Pennsylvania's UTPCPL for additional reasons.

An omission is actionable under the UTPCPL only when there is a duty to disclose. *DeSimone v. U.S. Claims Servs., Inc.*, 2020 WL 1164794, at *3 (E.D. Pa. Mar. 11, 2020). In Pennsylvania, a duty to speak exists only when there is a fiduciary or other confidential relationship—which is not alleged here, nor does it exist. *Id.*

### F.   Plaintiffs fail to state a claim under the NJCFA for additional reasons.

Plaintiffs' NJCFA claim fails at the threshold because no plaintiff resides in New Jersey. It is true that Unilever's headquarters are in New Jersey, but Plaintiffs allege that the relevant company conduct occurred at Unilever's Trumbull, Connecticut campus. *See* ACC ¶ 25. The ACC contains no allegations that any relevant events took place in New Jersey. Even so, Connecticut follows the "most significant relationship" test when determining which state's law applies to a claim. *MM Glob. Servs., Inc. v. Dow Chem. Co.*, 283 F. Supp. 2d 689, 699 (D. Conn. 2003). This Court has held that for unfair trade practices claims, "the state of the plaintiff's residence, where

the injury took place, has a more significant relationship to the occurrence and the parties than the state where the defendant corporation is headquartered." *Pavelka v. Charter Commc'ns, Inc.*, 2021 WL 5566390, at \*8 (D. Conn. Nov. 29, 2021) (Shea, J.) (cleaned up); *see Aviamax Aviation, Ltd. v. Bombardier Aerospace Corp.*, 2010 WL 1882316, at \*3 (D. Conn. May 10, 2010) (applying Restatement (Second) of Conflict of Laws § 148(2) to fraud and misrepresentation claims, which also favors plaintiff's state of residence).

Even if the Court allowed the claim, it fails. The NJCFA claim relies on the same deficient allegations of affirmative misrepresentations and omissions.

The omission-based claim also fails because Unilever had no duty to disclose the presence of benzene under New Jersey law. In New Jersey, a duty to disclose exists only when there is a fiduciary relationship between the parties, one party expressly reposes trust in the other, or the transaction is so "intrinsically fiduciary" that trust and confidence is required. *Meyer v. PHH Mortg. Corp.*, 2016 WL 5934691, at \*6 (D.N.J. Oct. 11, 2016). That is not the case here.

## IX.     Plaintiffs have not stated a claim for unjust enrichment for additional reasons.

For the reasons already discussed, Plaintiffs have not shown they are entitled to restitution. The lack of any deception aside, Plaintiffs bargained for dry shampoo products that would refresh their hair between washes and that is exactly what they got.[42] However, Plaintiffs' equitable claims for unjust enrichment also fail for other reasons. First, Plaintiffs have not plausibly alleged they lack an adequate legal remedy.[43] *See In re Apple*, 2023 WL 5950622, at \*2 (affirming dismissal of unjust enrichment claim); *Pouliot*, 303 F. Supp. 2d at 140 (dismissing equitable claims at the

---

[42] *See, e.g.*, *Drumheller v. Johnson & Johnson*, 2021 WL 1853407, at \*17 (E.D. Pa. May 10, 2021) (finding that "courts in [the Third] Circuit applying Pennsylvania law dismiss unjust enrichment claims where the plaintiff received and used the product at issue"); *Herrington*, 2010 WL 3448531, at \*13.

[43] The ACC contains only a conclusory allegation. *See* ACC ¶ 246.

pleading stage); *Town of Plainville v. Almost Home Animal Rescue and Shelter, Inc.*, 187 A.3d 1174, 1183 (Conn. App. Ct. 2018) ("As with other claims for equitable relief, … an action seeking to recover on a theory of unjust enrichment is unavailable if there is an adequate remedy at law.") (affirming dismissal when complaint included an adequate legal remedy); *Stanley*, 466 F. Supp. 3d at 431 n.5 ("[W]here there is an adequate remedy at law, such as NYGBL § 349, a court will not permit a claim in equity for the same conduct.") (cleaned up) (dismissing unjust enrichment claim on a motion to dismiss); *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 771 (N.D. Ill. 2019) (dismissing unjust enrichment claim when plaintiff failed to plead that the other causes of action in the complaint were not viable).

Second, an unjust enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Harris*, 586 F. Supp. 3d at 246. Plaintiffs' claim is duplicative because it is based on the "same allegations" as their warranty and tort claims. *Melendez v. ONE Brands, LLC*, 2020 WL 1283793, at *8 (E.D.N.Y. Mar. 16, 2020); *Rodriguez v. Just Brands USA, Inc.*, 2021 WL 1985031, at *8 (C.D. Cal. May 18, 2021) ("legal and equitable claims based on the same factual predicates are not true alternative theories of relief but rather are duplicative"); *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (same); *see* ACC ¶¶ 240-45 (relying on the same factual allegations as the legal claims).

## X.     Plaintiffs' claims for breach of express warranty fail.

### A.     Plaintiffs have not stated a claim for breach of express warranty.

An express warranty is "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" Conn. Gen. Stat. § 42a-

2-313(1)(a).[44] Plaintiffs allege that Unilever expressly warranted on its website, in advertisements, and product labeling that the products were "safe and appropriate for human use." ACC ¶¶ 176-77. Plaintiffs do not identify the statements they contend were express warranties. This alone is fatal. *Simoneau v. Stryker Corp.*, 2014 WL 1289426, at *14 (D. Conn. Mar. 31, 2014) ("[A] breach of express warranty claim without any reference to the underlying representation lacks plausibility."). To the extent Plaintiffs are referring to the various statements on Unilever websites, those statements are not actionable as explained in section IV.A. Those statements also cannot reasonably be read as a guarantee applicable to Unilever's products, or promises made to induce the purchase of specific products. *See T & M Solar and Air Conditioning, Inc. v. Lennox, Int'l Inc.*, 83. F. Supp. 3d 855, 875 (N.D. Cal. 2015) (finding that plaintiff must allege a "specific and unequivocal" written statement about the product that constitutes an "explicit guarantee"); *Cowan v. Costco Wholesale Corp.*, 2017 WL 59080, at *5 (E.D.N.Y. Jan. 5, 2017) (A statement "must be definite enough so that its natural tendency is to induce the buyer to purchase.") (cleaned up).

Each of those statements—to the extent they even address safety—is, at best, "the sort of general statement about product safety that has been found insufficient to give rise to an actionable express warranty." *Watkins v. MGA Entm't, Inc.*, 574 F. Supp. 3d 747, 756 (N.D. Cal. 2021) ("[V]ague statements regarding reliability, dependability, and safety are not actionable express warranties."); *Ferry*, 514 F. Supp. 3d at 445 (holding general safety representation "does not create an express warranty in the absence of a guarantee that the particular product is free from all harmful side effects"); *see also Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 247 (D.

---

[44] *See* N.Y. U.C.C. Law § 2-313(1)(a); Cal. Com. Code § 2313(1)(a); 810 Ill. Comp. Stat. § 5/2-313(1)(a); Tex. Bus. & Com. Code § 2.313(a)(1); Fla. Stat. § 672.313(1)(a); 13 Pa. Cons. Stat. § 2313(a)(1).

Conn. 1998) ("[A]n affirmation merely of the value of goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.") (quoting Conn. Gen. Stat. § 42a-2-313(2)).

Even if the Court were to construe these statements as express warranties, no plaintiff has identified a particular statement that she saw and relied on when buying the products. *See Cowan*, 2017 WL 59080, at *5 (dismissing express warranty claim when plaintiff failed to allege "how [her] purchase of the Product was based on seeing th[e] representation").

Plaintiffs also have alleged no facts plausibly showing that Unilever breached any warranty: Plaintiffs have not plausibly shown the specific products *they* purchased contained elevated benzene levels, or any benzene for that matter.

Finally, as discussed in section I.C, Plaintiffs have not shown they failed to receive the benefit of the bargain. Accordingly, Plaintiffs have not alleged any damages.

**B.    The express warranty claims of Plaintiffs Little, Awad, VanVliet, Gunn, and Barnette are barred by lack of privity.**

Under the laws of Connecticut, New York, Illinois, and Florida, a plaintiff must establish privity of contract before she can recover economic damages for breach of express warranty. *Napoli-Bosse v. Gen. Motors LLC*, 2022 WL 3585769, at *8 n.5 (D. Conn. Aug. 22, 2022) (Shea, J.), *aff'd*, 2023 WL 7485796, at *2 (2d Cir. Nov. 13, 2023); *Klausner v. Annie's Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022); *N. Ins. Co. of New York v. Silverton Marine Corp.*, 2010 WL 2574225, at *2 (N.D. Ill. June 23, 2010); *Holland v. Abbott Labs., Inc.*, 626 F. Supp. 3d 1256, 1263 (M.D. Fla. 2022). Plaintiffs Little, Awad, VanVliet, Gunn, and Barnette allege they bought the products from various retail stores, not directly from Unilever. ACC ¶¶ 10, 12, 15, 18, 19. Their express warranty claims fail for this additional reason.

**C.      Plaintiffs Barnette's and Rullo's express warranty claims fail for lack
of pre-suit notice.**

The express warranty claims of Plaintiffs Barnette and Rullo also fail because they did not

provide the pre-suit notice required under Florida and Pennsylvania law. *Jackmack v. Boston*

*Scientific Corp.*, 2021 WL 1020981, at *3 (M.D. Fla. Mar. 17, 2021); *Seidl v. Artsana USA, Inc.*,

643 F. Supp. 3d 521, 533-34 (E.D. Pa. 2022).[45]

**XI.   Plaintiffs have not stated a claim for breach of implied warranty.**

Plaintiffs have not alleged the breach of any implied warranty and the implied warranty

claims of many plaintiffs fail for additional reasons.

**A.      Plaintiffs have not alleged the breach of any implied warranty.**

Plaintiffs allege that the products breached the implied warranty of merchantability because

they were not "reasonably fit" for their intended use, and "did not conform to Unilever's

affirmations of fact and promises" because they were "accompanied by the risk of exposure to

benzene and to developing benzene-caused cancers, which does not conform to the packaging."

ACC ¶ 199. As discussed previously, Plaintiffs do not identify any statement on the labels the

products failed to comply with, thus any claim based on such statements fails. Plaintiffs'

allegations based on fitness and quality also miss the mark.

The implied warranty of merchantability requires only that the goods sold be "fit for the

ordinary purposes for which such goods are used." *Ferry*, 514 F. Supp. 3d at 445.[46] Plaintiffs do

---

[45] Although the ACC states in paragraph 189 that "certain Plaintiffs" sent Unilever a pre-suit letter, Barnette and Rullo were not among them, nor do they allege otherwise.

[46] *See Budhani*, 527 F. Supp. 3d at 685 (New York); *Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014) (California); *Rose v. Vanity Fair Brands, LP*, 2013 WL 1752705, at *2 (N.D. Ill. Apr. 23, 2013) (Illinois); *Moncibaiz v. Pfizer Inc.*, 532 F. Supp. 3d 452, 462 (S.D. Tex. 2021) (Texas); *Nat'l Specialty Ins. Co. v. Marquis Yachts, LLC*, 2022 WL 18278648, at *5 (S.D. Fla. Dec. 6, 2022) (Florida); *State Farm Fire & Cas. Co. v. Traditions of Am., L.P.*, 2021 WL 8362166, at *9 (M.D. Pa. Dec. 28, 2021) (Pennsylvania).

not allege the products failed to perform the function of a dry shampoo, i.e., refreshing their hair between washes. Instead, Plaintiffs contend the products were not safe to use. But the warranty of merchantability is satisfied so long as the goods are at least "minimally safe when used in the customary, usual, and reasonably foreseeable manner." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 434 (2d Cir. 2013); *see Stearns v. Select Comfort Retail Corp.*, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009) (finding the implied warranty "provides for a minimal level of quality"); *Fineman v. Ferragamo USA, Inc.*, 672 F. Supp. 3d 1302, 1308 (S.D. Fla. 2023) (same). Again, Plaintiffs do not plausibly allege facts showing the specific products *they* bought contained benzene, much less harmful amounts. The products fulfilled their purpose and Plaintiffs used the products without being harmed. *See Harris*, 586 F. Supp. 3d at 245 (dismissing implied warranty claim when plaintiffs did "not allege that Chantix failed to fulfill its purpose of helping its users to quit smoking" or "that the contamination harmed [them]").

### B. The implied warranty claims of Plaintiffs Little, Armstrong, Awad, Gunn, Hernandez, VanVliet, and Barnette are barred by lack of privity.

The implied warranty claims of Plaintiffs Little, Armstrong, Awad, Gunn, Hernandez, VanVliet, and Barnette also fail for lack of privity, which is required under the laws of Connecticut, California, New York, Illinois, and Florida. *See Napoli-Bosse*, 2022 WL 3585769, at *8 n.5; *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019); *Klausner*, 581 F. Supp. 3d at 550; *Neptun Light, Inc. v. Edison Opto USA Corp.*, 2020 WL 1042055, at *2 (N.D. Ill. Mar. 4, 2020); *Holland*, 626 F. Supp. 3d at 1262-63. These seven plaintiffs allege they bought the products from retail stores, not directly from Unilever. ACC ¶¶ 10-12, 15-16, 18-19. As a result, their implied warranty claims fail on this additional ground.

### C.      Plaintiffs Barnette's and Rullo's implied warranty claims fail for lack of pre-suit notice.

The implied warranty claims of Plaintiffs Barnette and Rullo fail additionally for lack of pre-suit notice as required under Florida and Pennsylvania law. *Fineman*, 672 F. Supp. 3d at 1306-07; *Seidl*, 643 F. Supp. 3d at 534.

## XII.   Plaintiffs' strict liability claims fail as a matter of law.

The ACC includes claims for strict liability, which also fail. Plaintiffs allege that the products "contain cancer-causing benzene which renders them unsafe for consumer use and likely to cause grave bodily harm including cancer and are therefore unsafe and worth less than if they did not contain benzene." ACC ¶ 396. As a threshold matter, Plaintiffs have not shown the products they bought contained benzene. Moreover, under the laws of all states at issue, a strict liability claim requires physical injury or property damage.[47] Plaintiffs allege neither; their claims are solely for economic loss—that the products were worth less than they paid. *See, e.g.*, ACC ¶ 8 (alleging that Plaintiffs would not have bought the products or would have paid less had they known of the risk of benzene); *id.* ¶ 141 (alleging only an "increased risk" of harm, but not actual physical injury). The economic loss rule in all the relevant states prohibits tort claims under these facts. As a result, the strict liability claims fail as a matter of law.

---

[47] *BellSouth Telecommc'ns, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 610 (2d Cir. 1996) (citing Conn. Gen. Stat. §§ 52-572m(b) and 52-572n(a)); *Fanok v. Carver Boat Corp.*, 576 F. Supp. 2d 404, 412 (E.D.N.Y. 2008); *Cable v. Microsoft Corp.*, 2009 WL 10696302, at *2 (E.D. Cal. Aug. 7, 2009); *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 858-59 (N.D. Ill. 2022); *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1306-09 (S.D. Fla. 2022); *Golden Spread Coop., Inc. v. Emerson Process Mgmt. Power & Water Solutions, Inc.*, 360 F. Supp. 3d 494, 519 (N.D. Tex. 2019), *aff'd*, 954 F.3d 804 (5th Cir. 2020); *Rice v. Electrolux Home Prods., Inc.*, 2015 WL 4545520, at *3-4 (M.D. Pa. July 28, 2015).

**XIII.   The Court should dismiss Plaintiffs' medical-monitoring claims.**

Plaintiffs' medical-monitoring claims should be dismissed because Plaintiffs' home states either do not recognize such claims or, if they do, Plaintiffs have not alleged facts showing entitlement to such relief. As an initial matter, Connecticut has not recognized medical monitoring as a remedy "in the absence of the present manifestation of physical harm." *Dougan v. Sikorsky Aircraft Corp.*, 251 A.3d 583, 589 (Conn. 2020). New York law does not allow medical monitoring claims absent factual allegations demonstrating some present physical injury. *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 491, 501 (2d Cir. 2020) (medical monitoring costs not available under New York law absent either "a clinically demonstrable presence of toxins" or "some physical manifestation of toxin contamination"). Illinois law similarly requires allegations of actual bodily harm. *Berry v. City of Chicago*, 181 N.E.3d 679, 689 (Ill. 2020). And Texas has not recognized medical-monitoring claims. *Norwood v. Raytheon Co.*, 414 F. Supp. 2d 659 (W.D. Tex. 2006) (predicting that Texas Supreme Court would not allow medical-monitoring claims).

As for the California, Florida, and Pennsylvania plaintiffs, they have not alleged sufficient facts. Plaintiffs allege in conclusory fashion that they are at "significantly increased risk of contracting Benzene-caused Cancers" due to "lengthy duration of exposure to benzene from [Unilever's] Products[.]" ACC ¶ 141. However, Plaintiffs have not shown the products they bought actually contained benzene. Moreover, they have not alleged any facts regarding their use of the products, much less a threshold level of exposure that places them at risk of developing cancer, or that any plaintiff's exposure exceeded that threshold.[48] *In re Zantac (Ranitidine) Prods. Liab.*

---

[48] Plaintiffs must show that the levels of benzene to which they were allegedly exposed exceeded normal background levels and placed them at a significantly increased risk. *In re Zantac*, 546 F. Supp. 3d at 1169; *Slemmer*, 2013 WL 5655480, at *2; *see Riva*, 82 F. Supp. 3d at 1057, 1060. But as noted, benzene is "widely used in the United States" in crude oil, gasoline, and cigarette smoke, as well as glues, paints, furniture wax, and detergents. *See* note 7, *supra*.

*Litig.*, 546 F. Supp. 3d 1152, 1168-79 (S.D. Fla. 2021) (dismissing medical-monitoring claim at pleading stage because, among other things, "the mere risk that ranitidine products might have contained NDMA is insufficient"); *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1053-62 (N.D. Cal. 2015) (must demonstrate significance and extent of exposure); *see Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 5655480, at *2 (E.D. Pa. Oct. 17, 2013) (requiring plaintiff to plead "specific facts" supporting the elements of the claim).[49]

Plaintiffs also have not shown why special monitoring "different from that normally recommended in the absence of exposure" is "reasonably necessary." *In re Zantac*, 546 F. Supp. 3d at 1169; *Slemmer*, 2013 WL 5655480, at *2; *see Riva*, 82 F. Supp. 3d at 1055 (Under California law, plaintiffs must show that "specific monitoring beyond that which an individual should pursue as a matter of general good sense and foresight" is necessary.). Plaintiffs allege that "Benzene-Caused Cancers are typically found via blood tests … to determine whether an individual has abnormal levels of red or white blood cells or platelets[.]" ACC ¶¶ 147-48. Blood tests to determine red and white blood cell and platelet counts are recommended as part of routine annual physical exams.[50] Accordingly, Plaintiffs have not shown the necessity of additional monitoring.

## <u>CONCLUSION</u>

For all these reasons, the Court should dismiss Plaintiffs' Amended Consolidated Class Action Complaint for lack of standing or failure to state a claim.

---

[49] The elements of a medical-monitoring claim in Florida and Pennsylvania are the same. *In re Zantac*, 546 F. Supp. 3d at 1169; *Slemmer*, 2013 WL 5655480, at *2.

[50] The Mayo Clinic website cited in the ACC (¶ 147 n.80) explains that doctors may find leukemia in a "routine blood test." Mayo Clinic, Leukemia Diagnosis, https://www.mayoclinic.org/diseases-conditions/leukemia/diagnosis-treatment/drc-20374378 (last visited Mar. 12, 2024). The ACC also references bone marrow tests (citing this website), but the website explains that a bone marrow biopsy is a diagnostic tool used when blood tests are abnormal or the person has signs or symptoms suggesting leukemia. *Id.* In other words, it is not a routine test performed on healthy people.

DEFENDANT,
UNILEVER UNITED STATES, INC.

By: /s/ Robert R. Simpson
     Robert Reginald Simpson (ct15653)
     Lauren R. Greenspoon (ct04846)
     SHOOK, HARDY & BACON L.L.P.
     185 Asylum Street
     City Place 1, Suite 3701
     Hartford, CT 06103
     Tel. No.: (860) 515-8901
     Fax No.: (860) 515-8911
     RSimpson@shb.com
     LGreenspoon@shb.com

     James P. Muehlberger (*pro hac vice*)
     SHOOK, HARDY & BACON L.L.P.
     2555 Grand Boulevard
     Kansas City, MO 64108
     Tel. No.: (816) 559-2372
     Fax No.: (816) 421-5547
     JMuehlberger@shb.com

     Its Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 13, 2024, a copy of the foregoing document was served via the Court's electronic filing system and electronic mail upon all counsel of record.

*/s/ Robert R. Simpson*
Robert R. Simpson
