UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELIZABETH LITTLE, CATHY ARMSTRONG, CLAIR AWAD, KELLY BRANCH, SUZANNE FITZGERALD, MARI GUNN, SARAH HERNANDEZ, STACY VAIL, CHRISTINA VANVLIET, BILLIE BARNETTE, and ROBERT RULLO, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs,* | |
| *v.* | |
| UNILEVER UNITED STATES, INC., AEROPRES CORPORATION, and VOYANT BEAUTY, LLC, | Case No. 3:22-cv-01189-MPS |
| *Defendants.* | |
| VOYANT BEAUTY, LLC, | |
| *Defendant/First Third-Party Plaintiff,* | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, AND APPROVAL OF NOTICE PLAN** |
| *v.* | |
| DIVERSIFIED CPC INTERNATIONAL, INC., | |
| *First Third-Party Defendant.* | |
| AEROPRES CORPORATION, | |
| *Defendant/Second-Third Party Plaintiff,* | |
| *v.* | |
| BP ENERGY COMPANY and AUX SABLE LIQUID PRODUCTS LP, | |
| *Second-Third Party Defendants.* | |

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

BACKGROUND .......................................................................................................3

    A.  Plaintiffs' Claims ..........................................................................................3

    B. Procedural Background ..................................................................................4

    C. Settlement Negotiations.................................................................................6

    D. The Terms of the Settlement .........................................................................7

ARGUMENT .............................................................................................................9

    I. THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET ..............................................................................................10

        A.  All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement ........11

          1. The Class is Sufficiently Numerous that Joinder is Impracticable ..............................12

          2. There Are Common Questions of Law and Fact ........................................................12

          3. Plaintiffs' Claims Are Typical of the Class ................................................................14

          4. Plaintiffs Will Fairly and Adequately Protect the Interests of the Class. ...................15

          5. The Class Is Sufficiently Ascertainable ....................................................................17

        B. All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement...........18

          1. Common Issues Predominate on Each Element of Plaintiffs' Claims.........................18

          2. A Class Action is Superior to Other Methods of Adjudication ..................................20

    II. THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL UNDER FED. R. CIV. P. 23(e)(2) ....................................................21

        A. The Settlement Is Procedurally Fair Under Rule 23(e)(2)(A)-(B)..................................22

        B. The Settlement Is Substantively Fair under Rule 23(e)(2)(C)-(D). ...............................23

          1. The Proposed Settlement Provides Adequate Relief under Rule 23(e)(2)(C). ............25

              a. The Costs, Risks, and Delay of Trial and Appeal ..............................................25

b. The Effectiveness of Any Proposed Method of Distributing Relief To The Class ......................................................................................................... 26

c. The Terms of Any Proposed Award of Attorney's Fees .................................... 27

d. Any Agreement Required to be Identified Under Rule 23(e)(3) ...................... 27

2. The Proposal Treats Class Members Equitably Relative To Each Other under Rule 23(e)(2)(D). ......................................................................................................... 28

3. Additional Factors to Consider .................................................................................. 28

a.    Range of Reasonableness ......................................................................................... 28

b.    Stage of the Proceedings ......................................................................................... 29

III. THE PROPOSED NOTICE PLAN COMPLIES WITH FED. R. CIV. P. 23(c). ............. 30

IV. THE PROPOSED SCHEDULE OF SETTLEMENT EVENTS IS FAIR ....................... 32

CONCLUSION ........................................................................................................................ 33

# TABLE OF AUTHORITIES

**CASES**

*In re Am. Int'l Grp. Sec. Litig.*,
    689 F.3d 229 (2d Cir. 2012)............................................................................10, 8

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)..............................11, 18

*Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..............................................................................15

*Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc., Case*,
    2023 No. 1:22-cv-00291-BMC (E.D.N.Y. Jan. 10, 2023)...................................2, 29, 31

*Barnes et al. v. Unilever United States Inc., Case*,
    No. 1:21-cv-06191 (N.D. Ill. Mar. 7, 2024) ..................................................2, 29, 30, 31

*Barnette v. Unilever United States, Inc., Case*,
    No. 3:22-cv-01236 (M.D. Fla.) ..........................................................................4

*Berryman v. Avantus, LLC*,
    No. 3:21-CV-1651-VAB, 2024 WL 2108824 (D. Conn. May 10, 2024)...........25, 29, 30

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010)........................................................................20

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)...............................................................21

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
    2020 WL 1329354 (S.D.N.Y. Mar. 23, 2020 2020) ......................................10

*City of Detroit v. Grinnell Corporation*,
    495 F.2d 448 (2d Cir. 1974)...................................................................24, 25, 28, 29

*Earl et al. v. Unilever United States, Inc., Case*,
    No. 1:23-cv-00360 (N.D. Ill.) ...........................................................................4

*Edwards v. N. Am. Power & Gas, LLC*,
    No. 3:14-CV-01714-VAB, 2018 WL 1582509 (D. Conn. Mar. 30, 2018) ...................10

*Edwards v. N. Am. Power & Gas, LLC*,
    No. 3:14-CV-01714, 2018 WL 3715273 (D. Conn. Aug. 3, 2018)........16, 17, 18, 20, 21

*Elkind v. Revlon Consumer Prods. Corp.*,
   2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017)......................................................14, 17, 18

*Esposito v. Nations Recovery Ctr., Inc.*,
   No. 3:18-CV-2089, 2020 WL 3489417 (D. Conn. June 26, 2020) ........................12, 15

*Evans et al. v. Church & Dwight Co. Inc.*,
   Case No. 1:22-cv-06301-VMK (N.D. Ill. Oct. 16, 2023)....................................2, 29, 31

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
   62 F.4th 704 (2d Cir. 2023) ........................................................................................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)...........................................................................................14

*Floyd v. City of New York*,
   283 F.R.D. 153 (S.D.N.Y. 2012) .................................................................................15

*In re Frontier Commc'ns Corp.*,
   2022 WL 4080324 (D. Conn. May 20, 2022)....................................................16, 25, 25

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ...........................................................................25, 30

*Glover v. Connecticut Gen. Life Ins. Co.*,
   No. 3:16-CV-00827, 2024 WL 4036721 (D. Conn. Sept. 4, 2024)...............................11

*Goldstein v. Henkel Corporation et al., Case*,
   2023 No. 3:22-cv-00164-AWT (D. Conn. Dec. 13, 2023)..................................2, 29, 31

*Hart v. BHH, LLC*,
   2017 WL 2912519 (S.D.N.Y. July 7, 2017 2017) ........................................................13

*Hasemann v. Gerber Prods. Co.*,
   331 F.R.D. 239 (E.D.N.Y. 2019) ............................................................................18, 19

*Henning v. Luxury Brand Partners, LLC*,
   Case No. 2024 No. 3:22-cv-07011-TLT (N.D. Cal. April 23, 2024) ..................2, 29, 31

*In re IMAX Sec. Litig.*,
   2012 WL 2359653 (S.D.N.Y. June 20, 2012 2012) ....................................................10

*Johnson v. Kendall*,
   No. 3:21-CV-1214, 2023 WL 6227678 (D. Conn. Sept. 26, 2023 2023)..................9, 12

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)....................................................................12

*Kennedy v. Whitley*,
    No. 3:16-cv-02010, 2021 WL 4533198 (D. Conn. Apr. 26, 2021) .................9

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015)...............................................................26

*Ligon, et al., v. City of New York, et al.*,
    2012 WL 5871237 (S.D.N.Y. 2012)..........................................................15

*Loudenslager v. Unilever United States, Inc.*,
    Case No. 3:22-cv-01020 (M.D. La.) ...........................................................4

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)....................................................................10

*Martinez v. Avantus, LLC*,
    No. 3:20-CV-01772, 2023 WL 112807 (D. Conn. Jan. 5, 2023) ..................11

*McReynolds v. Richards-Cantave*,
    588 F.3d 790 (2d Cir. 2009)....................................................................22

*Menkes v. Stolt-Nielsen S.A.*,
    270 F.R.D. 80 (D. Conn. 2010)...................................................9, 22, 23, 24

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015).........................................................28

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) .............................................................20

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)..................................................................18

*In re Nasdaq Mkt.-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...............................................................22

*In re Nassau Cty. Strip Search Cases*,
    461 F.3d 219 (2d Cir. 2006)....................................................................19

*NFL Concussion Litig.*,
    307 F.R.D. 351(E.D. Pa. 2015).................................................................19

*Nichols v. Noom, Inc.*,
    2022 WL 2705354 (S.D.N.Y. July 12, 2022) ...............................................................21

*O'Connor v. AR Res., Inc.*,
    2010 WL 1279023 (D. Conn. Mar. 30, 2010) ...............................................................22

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*,
    772 F.3d 111 (2d Cir. 2014)..........................................................................................12

*Patellos v. Hello Products, LLC*,
    2022 WL 2159566 (S.D.N.Y. June 15, 2022 2022) ................................................26, 28

*In re Petrobras Sec. Litig.*,
    317 F. Supp. 3d 858 (S.D.N.Y. 2018)..........................................................................19

*In re Petrobras Sec. Litg.*,
    862 F.3d 250 (2d Cir. 2017).........................................................................................17

*Philemon v. Aries Cap. Partners, Inc.*,
    2019 WL 13224983 (E.D.N.Y. July 1, 2019 2019) .....................................................28

*Pollard v. Remington Arms Co., LLC*,
    320 F.R.D. 198 (W.D. Mo. 2017) ................................................................................12

*Raymond v. Rowland*,
    220 F.R.D. 173 (D. Conn. 2004)..................................................................................12

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
    237 F.R.D. 26 (E.D.N.Y. 2006) ..................................................................................23

*Rincon-Marin v. Credit Control, LLC*,
    No. 3:17-CV-07, 2018 WL 1035808 (D. Conn. Feb. 23, 2018)..............................16, 18

*Rivera v. Fair Chevrolet Geo P'ship*,
    165 F.R.D. 361 (D. Conn. 2006)..................................................................................12

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015).........................................................................................18

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993).........................................................................................15

*Rullo v. Unilever United States, Inc.*,
    Case No. 2:22-cv-06422 (D.N.J.) ..................................................................................4

*In re Scotts EZ Seed Litig.,*
    304 F.R.D. 397 (S.D.N.Y. 2015) ................................................................................20

*Shallin v. Payless Shoesource, Inc.,*
    No. 3:14-CV-00335-RNC, 2015 WL 13636424 (D. Conn. June 10, 2015) .................27

*Simerlein v. Toyota Motor Corp.,*
    2019 WL 2417404 (D. Conn. June 10, 2019)................................................................22

*Simerlein v. Toyota Motor Corp.,*
    No. 3:17-CV-1091, 2019 WL 1435055 (D. Conn. Jan. 14, 2019) .........................14, 17

*Simmons et al. v. Unilever United States, Inc.,*
    Case No. 3:22-cv-23376 (N.D. Fla.).............................................................................4

*Sims v. Unilever United States, Inc., Case,*
    No. 1:22-cv-06140 (N.D. Ill.) ......................................................................................4

*Spann v. J.C. Penney Corp.,*
    314 F.R.D. 312 (C.D. Cal. 2016) .................................................................................21

*In re Sturm, Ruger, & Co., Inc. Sec. Litig.,*
    2012 WL 3589610 (D. Conn. Aug. 20, 2012) ..............................................................10

*In re Synchrony Fin. Sec. Litig.,*
    No. 3:18-CV-1818-VAB, 2023 WL 4992933(D. Conn. Aug. 4, 2023) ........................23

*In re Traffic Executive Association–Eastern Railroads,*
    627 F.2d 631 (2d Cir. 1980)........................................................................................22

*Tsereteli v. Residential Asset Securitization Tr. 2006-A8,*
    283 F.R.D. 199 (S.D.N.Y. 2012) ................................................................................14

*Wal-mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)....................................................................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
    396 F.3d 96 (2d Cir. 2005)......................................................................10, 10, 22, 30

*Williams v. Gen. Nutrition Centers, Inc.,*
    No. 3:14-CV-1429-VLB, 2018 WL 11193531 (D. Conn. Sept. 21, 2018) ...................14

**STATUTES**

Title 28 U.S.C. § 1715 ...........................................................................................................32

**FEDERAL RULES**

Fed. R. Civ. P. 23 ................................................................................................................24, 31

Fed. R. Civ. P. 23(a) ...............................................................................10, 11, 13, 14, 15, 18

Fed. R. Civ. P. 23(b) ............................................................................................18, 20, 30

Fed. R. Civ. P. 23(c) ............................................................................................30, 32

Fed. R. Civ. P. 23(e) ...............................................................................9, 21, 22, 23, 24

## INTRODUCTION

Plaintiffs Elizabeth Little, Cathy Armstrong, Clair Awad, Kelly Branch, Suzanne Fitzgerald, Mari Gunn, Sarah Hernandez, Stacy Vail, Christina VanVliet, Billie Barnette, and Robert Rullo ("Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Preliminary Approval of the Class Settlement, Preliminary Certification of the Settlement Class, and Approval of the Notice Plan (the "Motion").[1]

After two and a half years of hard-fought litigation, Plaintiffs have reached a settlement with Defendants Unilever United States, Inc. ("Unilever"), Voyant Beauty, LLC ("Voyant"), and Aeropres Corporation ("Aeropres" and, together with Unilever and Voyant, "Defendants"), whereby Defendants have agreed to pay into a non-reversionary Settlement Fund a total collective payment of $3,625,000.00 in exchange for dismissal of the litigation with prejudice and certain releases. The settlement will resolve all the claims of the proposed class defined below (the "Class" or "Settlement Class") against Defendants. The Settlement is the result of arm's length negotiations by counsel experienced in consumer class actions and provides substantial, immediate relief to the Class.

In reaching this agreement, Interim Lead Class Counsel relied on their substantial experience litigating consumer class actions and carefully considered the discovery taken to date, the procedural posture of the case, the relevant case law, their consultation with experts, as well as the risks of litigation and the Settlement Classes' potential recovery. The Settlement Agreement secures immediate monetary relief for the Class and represents an outstanding outcome, considering the risks of proceeding to trial. The Settlement is consistent with the range of relief

---

[1] Unless otherwise indicated, capitalized terms shall have the same meaning set forth in the Settlement Agreement, submitted as Ex. 1 to the *Declaration of Steven L. Bloch in Support of Plaintiff's Motion for Preliminary Approval* (the "Bloch Decl."). Citations to the Settlement Agreement are denoted as "Decl. Ex. 1 at __," and all Settlement Agreement Exhibits are referred to as "Set. Agmt. Ex __."

provided by other settlements involving alleged benzene contamination in consumer products that have received court approval – and, indeed, exceeds the recoveries in those actions. *See, e.g.*, *Barnes v. Unilever United States, Inc.,* Case No. 1:21-cv-06191-MFK-MDW (D. Ill. Mar. 7, 2024) (in case of alleged benzene contamination of Unilever-branded aerosolized antiperspirant products, settlement fund of $2 million); *Goldstein v. Henkel Corporation et al.,* Case No. 3:22-cv-00164-AWT (D. Conn. Dec. 13, 2023) (in case of alleged benzene contamination of aerosolized antiperspirant spray products, settlement fund of $1.95 million); *Evans v. Church & Dwight Co.,* Case No. 1:22-cv-06301-VMK, ECF No. 75 (N.D. Ill. Oct. 16, 2023) (cash settlement fund of $2.5 million in alleged benzene contaminated aerosolized dry shampoo products case); *Henning v. Luxury Brand Partners, LLC,* Case No. 3:22-cv-07011-TLT (N.D. Cal. April 23, 2024) (settlement fund of $850,000 in alleged benzene contamination dry shampoo product case); *Bangoura v. Beiersdorf, Inc. and Bayer Healthcare, Inc.,* Case No. 1:22-cv-00291-BMC (E.D.N.Y. Jan. 10, 2023) (settlement fund of $2.3 million in alleged benzene-contaminated aerosolized sunscreen products case).

Accordingly, Plaintiffs request that the Court enter an Order: (i) granting preliminary approval of the Settlement Agreement, (ii) preliminarily certifying the Settlement Class, (iii) preliminarily approving the Notice Plan, (iv) appointing Silver Golub & Teitell LLP as Lead Class Counsel and Sauder Schelkopf LLC and Squitieri & Fearon LLP as the Executive Committee, (v) appointing the Named Plaintiffs as Class Representatives, (vi) approving the form and manner of notice to the Class, and (vii) appointing Angeion Group ("Angeion") as Settlement Administrator.

## BACKGROUND

### A. Plaintiffs' Claims

Plaintiffs are purchasers and users of dry shampoo products under the Unilever brands "Suave," "TIGI," "TRESemmé," "Dove," and "Nexxus" (the "DSPs" or the "Products"). Amended Consolidated Class Action Complaint ("ACC") ¶¶ 10-20. Unilever sells the DSPs nationwide, and Voyant is the contract manufacturer of the DSPs, sourcing components for the products, including aerosolized propellants, from suppliers such as Aeropres. *Id.* ¶¶ 25-27, 44, 46. As Plaintiffs alleged in the ACC, between January and May of 2022, independent laboratory Valisure, LLC ("Valisure") conducted testing of 36 unique batches of the DSPs between and found that certain of the DSPs contained benzene, including 47% that tested above the FDA's limit for benzene for drug products (*Id.* ¶¶ 2, 96-97). Unilever thereafter conducted its own testing of the DSPs, and on October 18, 2022, recalled certain lots of the DSPs, including a number of the lots Valisure tested. ACC ¶¶ 3 n.4, 115.

Plaintiffs and the proposed Classes alleged that they regularly and consistently purchased and used the DSPs without knowing or having reason to know that the products contained benzene (ACC ¶¶ 12, 13, 16, 17, 19, 20, 97; ECF No. 139 at 5-6; ECF No. 139 Ex. A); that had Plaintiffs known that the DSPs contained, or risked containing, benzene, they would not have purchased the DSPs at all, or would have paid less for them (e.g., ACC ¶¶ 8, 21, 132, 136, 205, 214, 225, 237, 238, 244, 256, 270, 286, 300, 313, 323, 336, 348, 366, 377); and that Plaintiffs and the proposed Classes were deprived of the benefit of their bargain when they received DSPs that contained, or risked containing, benzene (e.g., ACC ¶¶ 137, 190). Accordingly, Plaintiffs asserted claims individually and on behalf of the Class seeking to recover damages for Defendants' alleged

deceptive, misleading, and unlawful manufacture, marketing, advertisement, sale, and distribution of the DSPs.

Defendants have defended the claims on several grounds, including, in part, that (a) Plaintiffs lacked Article III standing; (b) Plaintiffs' claims were preempted; (c) Defendants did not make any express warranties nor did Plaintiffs rely on any warranty; (d) Plaintiffs failed to allege Defendants had knowledge that the Covered Products contained benzene; (e) Plaintiffs failed to allege any actionable misrepresentation or omissions; and (f) Defendants' conduct was not misleading, deceptive, or unfair under any consumer protection act. Defendants disputed, and continue to dispute, Plaintiffs' allegations.

### B. Procedural Background

Plaintiffs Elizabeth Little, Cathy Armstrong, Clair Awad, Kelly Branch, Suzanne Fitzgerald, Mari Gunn, Sarah Herandez, Stacy Vail, and Christina VanVliet (the "Little Plaintiffs") filed their complaint on September 21, 2022. ECF No. 1. Seven other "copycat" cases were thereafter filed in various states.[2] As a result, on February 3, 2024, the Court stayed the Little Plaintiffs' action while the later-filed cases were transferred to the District of Connecticut. *See* ECF No. 17. All cases were transferred and consolidated with the Little Plaintiffs' action by June 8, 2023. *See* Decl. Ex. 1 at §§ 1.7-1.9, 1.12-1.15.

Following transfer of the cases, motions for appointment as class counsel were filed. The Court appointed Steven L. Bloch and Ian W. Sloss of Silver Golub & Teitell LLP as Interim Lead

---

[2] Those cases include: *Rullo v. Unilever United States, Inc.,* Case No. 2:22-cv-06422 (D.N.J.) (filed Nov. 4, 2022); *Sims v. Unilever United States, Inc.,* Case No. 1:22-cv-06140 (N.D. Ill.) (filed Nov. 4, 2022); *Barnette v. Unilever United States, Inc.,* Case No. 3:22-cv-01236 (M.D. Fla.) (filed Nov. 9, 2022); *Simmons et al. v. Unilever United States, Inc.,* Case No. 3:22-cv-23376 (N.D. Fla.) (filed Nov. 17, 2022); *Loudenslager v. Unilever United States, Inc.,* Case No. 3:22-cv-01020 (M.D. La.) (filed Dec. 14, 2022); *Earl et al. v. Unilever United States, Inc.,* Case No. 1:23-cv-00360 (N.D. Ill.) (filed Jan. 30, 2023). *See* Decl. Ex. 1 at §§ 1.4-1.15; *see also* ECF No. 28.

Class Counsel and appointed Joseph G. Sauder of Sauder Schelkopf LLC and Stephen Fearon of Squitieri & Fearon LLP as members of the Executive Committee. *See* ECF No. 60.

On August 27, 2023, Plaintiffs (the Little Plaintiffs together with Plaintiffs Barnette and Rullo) filed their Consolidated Amended Complaint ("CAC"). ECF No. 64. Unilever moved to stay in deference to the primary jurisdiction of the FDA on October 10, 2023, which the Court denied on February 6, 2024. ECF No. 106. Unilever also moved to dismiss the CAC, which was denied as moot when Plaintiffs filed the ACC on January 29, 2024. ECF Nos. 101, 107. The ACC added claims against Voyant and Aeropres. Unilever moved to dismiss the ACC on March 13, 2024 (ECF Nos. 125, 126), and Voyant and Aeropres filed their respective motions to dismiss on March 27, 2024 (ECF Nos. 129-134). Plaintiffs opposed defendants' motions on April 26, 2024 (ECF Nos. 139-141) and filed a motion for limited jurisdictional discovery regarding Voyant's and Aeropres' contention in their motions to dismiss (ECF No. 142), and Defendants filed their replies on May 30, 2024 (ECF Nos. 156-158).[3]

Throughout this action, the Parties have engaged in discovery, including exchanging discovery requests and responses, producing documents and data – including but not limited sales data for the Covered Products, Defendants' internal testing data, Defendants' internal investigation reports, and Covered Product specifications – and prosecuting subpoenas. Bloch Decl. at ¶¶ 6-8.

---

[3] Third-party complaints were also filed, on May 30, 2024, by Voyant against another supplier of propellant utilized in the manufacture of the DSPs, Diversified CPC International, Inc. ("Diversified"), and, on July 15, 2024, by Aeropres against BP Energy Company ("BP") and Aux Sable Liquid Products LP ("Aux"), suppliers of feedstock utilized in the production of the propellant it supplied for the DSPs. The third-party complaints remain stayed.

### C.  Settlement Negotiations

Protracted, arms-length negotiations have occurred between and among Plaintiffs and Defendants over the course of this action. Plaintiffs and Unilever first attempted settlement negotiations through an initial mediation session before the Hon. Beverly Hodgson (Ret.) on October 30, 2023 (Bloch Decl. at ¶ 7). While the Parties exchanged detailed mediation statements and discovery, they did not reach an agreement. Plaintiffs continued to prosecute the case, expanding their case to include claims against defendants Voyant and Aeropres based on information learned in discovery, and completing briefing on Defendants' respective motions to dismiss. After more than a year of discovery, Plaintiffs and Defendants held a second mediation on February 6, 2025, again before the Hon. Beverly Hodgson (Ret.). Although no settlement was reached on February 6, the Parties continued to engage in hard-fought negotiations over the following weeks. *See* Bloch Decl. at ¶ 9.

The Parties ultimately reached an agreement in principle and notified the Court of the same on February 20, 2025. ECF No. 192. The Parties then negotiated and finalized the settlement terms, executing the final Settlement Agreement. *See* Bloch Decl. ¶ 9; Decl. Ex. 1. In exchange for dismissal of the case with prejudice and the release of claims relating to same conduct, Defendants have agreed to pay a total of $3,625,000.00. Bloch Decl. ¶ 9; Decl. Ex. 1 at § 3.1, § 7.

The Parties' settlement negotiations – and ultimate agreement – were informed by their exchanges and analysis of documents and data in discovery, consultation with experts, the extensive briefing on Defendants' various motions to dismiss,[4] and the potential recovery by the

---

[4] No decision was issued by the Court on Defendants' respective motions to dismiss at the time, which were denied without prejudice by the Court upon the parties' filing of the Notice of Settlement. ECF No. 192.

Settlement Class in the action – all balanced against the risks in this litigation. Bloch Decl. at ¶¶ 8-10.

Indeed, Defendants have vigorously disputed Plaintiffs' allegations, including that Plaintiffs lack Article III standing, that Defendants did not make any express warranties and Plaintiffs did not rely on any warranties, that Plaintiffs failed to allege any actionable misrepresentation or omissions, and that Defendants' conduct was not misleading, deceptive, or unfair under any consumer protection act. Because the Court had not issued decisions on the merits of Defendants' respective motions to dismiss, Plaintiffs faced the risk of potential adverse decisions on these motions, along with the risks of continuing to prosecute this action through trial, including, *inter alia*, proving the scope and extent of the benzene contamination in the Unilever DSPs and the harm to Plaintiffs and the Settlement Class.

### D. The Terms of the Settlement

As set forth in the Settlement Agreement and supporting documents, the parties have agreed to the certification of a nationwide class for the purposes of settlement, defined as follows:

> all natural persons who, between January 1, 2014 and December 31, 2022, purchased in the United States any Covered Product for personal, family or household use, and not resale.

See Decl. Ex. 1 at § 2.35. A "Covered Product" means any "Unilever dry shampoo products sold under the Suave, TIGI, TRESemmé, Dove, and Nexxus brands" during the Class Period. *See id.* at § 2.12.

Following preliminary approval of the settlement, Defendants will collectively contribute $3,625,000.00 in cash (the "Settlement Amount") into the Settlement Fund. *See id.* at § 3.1. The Settlement Amount shall be used to pay (i) Valid Claim Forms for cash benefits submitted by Settlement Class Members; (ii) the notice and other administrative costs actually incurred by the

Claims Administrator; (iii) Attorneys' Fees and Costs, as may be ordered by the Court; and (iv) any Service Awards to the Class Representatives, as may be ordered by the Court. *See id.*

The Settlement Fund is non-reversionary, meaning that all monies from the Settlement Fund net of notice and administrative costs, Attorneys' Fees and Costs, and any Service Awards ("Available Settlement Funds") shall be distributed to Settlement Class Members who submit valid claims. No settlement funds will revert to Defendants.

Settlement Class Members who submit a Valid Claim Form with Proof of Purchase shall receive the full purchase price for each Covered Product listed on the Proof of Purchase. *See id.* at § 3.4.1. Settlement Class Members who submit a Valid Claim without Proof of Purchase attesting under penalty of perjury that they purchased one or more Covered Products during the Class Period shall receive $3.00 for each Covered Product purchased for up to four (4) Covered Products per household. *See id.* at § 3.4.2. If a Settlement Class Member submitted a claim in connection with Unilever's recall (announced after this action was filed), the amount of that Settlement Class Member's payment shall be reduced by the amount each Settlement Class Member received from the recall (provided that the payment shall not be reduced below $0.00). *See id.* at § 3.4.3. Each Settlement Class Members' payment shall be increased or decreased on a *pro rata* basis such that the total amount paid to all Settlement Class Members equals the Available Settlement Funds. *See id.* at § 3.4.4.

Prior to the scheduled hearing on Final Approval and in accordance with the Courts' regular notice requirements, Plaintiffs' Counsel may apply to the Court for an award from Defendants of their Attorneys' Fees in a total amount not to exceed one-third of the Settlement Fund ($1,208,333), plus reimbursement of Costs in an amount not to exceed $115,000. *See id.* at § 5. Plaintiffs, as the Class Representatives, may additionally apply to the Court for a Service

Award of up to five hundred dollars ($500.00) each as compensation for (a) the time and effort undertaken in and risks of pursuing this Action, including the risk of liability for the Parties' costs of suit, and (b) the general release set forth in Section 7.1. *Id.* at § 5.2. Defendants shall be responsible for paying their own attorneys' fees and expenses.

## ARGUMENT

Federal Rule of Civil Procedure 23(e) governs preliminary approval of class action settlements. If the parties can show that the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for the purposes of judgment on the proposal," Fed. R. Civ. P. 23(e)(1)(B), then preliminary approval is appropriate. "Preliminary approval of a class action settlement, in contrast to final approval, is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes v. Stolt-Nielsen S.A.,* 270 F.R.D. 80, 101 (D. Conn. 2010) (cleaned up). "As such, it is appropriate where it is the result of serious, informed, and non-collusive negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies [] and where the settlement appears to fall within the range of possible approval." *Id.*

In the Second Circuit, there is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted); *Kennedy v. Whitley,* No. 3:16-cv-02010, 2021 WL 4533198, at *3 (D. Conn. Apr. 26, 2021) (same); *see also* NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Thus, with respect to class action settlements, "'Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility' in applying it." *Johnson v. Kendall,* No. 3:21-CV-1214 (CSH), 2023 WL 6227678, at *2 (D. Conn. Sept. 26,

2023) (quoting *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997)); *see also In re Chicago Bridge & Iron Co. N.V. Sec. Litig.,* 2020 WL 1329354, at *2 (S.D.N.Y. Mar. 23, 2020) ("The Second Circuit has directed district courts to interpret Rule 23 liberally, to maximize the benefits to both private parties and to the public provided by class actions."). *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116-17 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy." (Citation and quotation omitted.)).

As set forth below, the proposed Class satisfies Rules 23(a) and 23(b)(3), and the proposed Settlement Agreement meets the requirements of Rule 23(e)(2). Accordingly, the Court should grant preliminary approval and order that notice of the settlement be provided to the Settlement Class.

## I. THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS HAVE BEEN MET.

"[B]efore reaching the merits of the proposed settlement," the court "must first ensure that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b)." *Edwards v. N. Am. Power & Gas, LLC,* No. 3:14-CV-01714 (VAB), 2018 WL 1582509, at *4 (D. Conn. Mar. 30, 2018). "Certification of a settlement class has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Sturm, Ruger, & Co., Inc. Sec. Litig.,* 2012 WL 3589610, at *9 (D. Conn. Aug. 20, 2012) (quoting *In re IMAX Sec. Litig.,* 2012 WL 2359653, at *6 (S.D.N.Y. June 20, 2012)). The requirements of Rule 23 are the same to certify a settlement class as they are to certify a class for litigation, but the standard is not, because courts "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *In re Am. Int'l Grp. Sec. Litig.,* 689 F.3d 229, 239 (2d Cir. 2012)

(quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 117 S. Ct. 2231, 2250, 138 L. Ed. 2d 689 (1997)).

As previously discussed, Plaintiffs and Defendants have agreed, subject to the Court's approval, to the certification of the following proposed nationwide Class for the purposes of settlement:

> all natural persons who, between January 1, 2014 and December 31, 2022, purchased in the United States any Covered Product for personal, family or household use, and not resale.

*See* Decl. Ex. 1 at § 2.35.

For the reasons set forth below, the proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(3) and thus should be certified for the purposes of settlement.

### A. All Requirements of Rule 23(a) Are Satisfied for the Purposes of the Settlement.

Fed. R. Civ. P. 23(a) requires: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." "These prerequisites are referred to as 'numerosity, commonality, typicality, and adequacy of representation.'" *Glover v. Connecticut Gen. Life Ins. Co.,* No. 3:16-CV-00827 (MPS), 2024 WL 4036721, at *5 (D. Conn. Sept. 4, 2024) (quoting *Martinez v. Avantus, LLC*, No. 3:20-CV-01772 (JCH), 2023 WL 112807, at *4 (D. Conn. Jan. 5, 2023)). Additionally, courts in this Circuit recognize that there is "an implied requirement that the class be ascertainable." *Id.* at *5. Here, numerosity, commonality, typicality, adequacy of representation, and ascertainability are all present.

### 1.    The Class is Sufficiently Numerous that Joinder is Impracticable.

In this Circuit, "[n]umerosity is presumed for classes larger than forty members." *Johnson v. Kendall,* No. 3:21-CV-1214 (CSH), 2023 WL 6227678, at *4 (D. Conn. Sept. 26, 2023); *Esposito v. Nations Recovery Ctr., Inc.,* No. 3:18-CV-2089 (VLB), 2020 WL 3489417, at *2 (D. Conn. June 26, 2020) (same); *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.,* 772 F.3d 111, 120 (2d Cir. 2014) (same).

Here, the proposed Class includes purchasers of Covered Products from a pool of approximately 10 million units of DSPs potentially subject to the alleged benzene contamination, Bloch Decl. ¶ 20, sold in retail and drugstores in store and online nationwide. The Settlement Class thus likely consists of tens of thousands of members (if not hundreds of thousands). Joinder of so many class members is simply impractical. *See, e.g., Pollard v. Remington Arms Co., LLC,* 320 F.R.D. 198, 206 (W.D. Mo. 2017), *aff'd,* 896 F.3d 900 (8th Cir. 2018) (noting that although exact "number of class members is uncertain . . . because a class member could own more than one [product] . . . it is apparent there are millions of potential class members"). Accordingly, the Settlement Class readily satisfies numerosity.

### 2.    There Are Common Questions of Law and Fact.

Commonality "simply requires that there be issues whose resolution will affect all or a significant number of the putative class members." *Johnson v. Nextel Commc'ns Inc.,* 780 F.3d 128, 137 (2d Cir. 2015). Thus, where the claims "arise out of 'the same practice or course of conduct' and are based on the same legal theory, they meet the class action commonality requirement." *Esposito,* 2020 WL 3489417, at *2 (citing *Rivera v. Fair Chevrolet Geo P'ship,* 165 F.R.D. 361, 363 (D. Conn. 2006). "The test for commonality is not demanding and is met so long as there is at least one issue common to the class." *Raymond v. Rowland,* 220 F.R.D. 173,

179 (D. Conn. 2004) (internal quotation marks and citations omitted); *see also Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do.").

Here, Plaintiffs' claims present many common issues of law and fact that affect the Class uniformly, including, *inter alia*:

- Whether the DSPs contained, or risked containing, benzene;

- Whether Defendants knew of should have known that the DSPs contained, or risked containing, benzene;

- Whether Defendants had a duty to disclose, and wrongfully failed to disclose, that the DSPs, including components thereof, contained, or risked containing, benzene;

- Whether Defendants misrepresented material facts and/or failed to disclose materials facts in connection with the manufacturing, packaging, labeling, marketing, distribution, and sale of the DSPs;

- Whether Defendants' representations and omissions on the labeling of the DSPs were likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- Whether Defendants had knowledge that their representations, concealment and/or omissions were false, deceptive, and/or misleading;

- Whether Defendants had inadequate testing and safety standards, and had a duty to disclose, and wrongfully failed to disclose same;

- Whether Unilever breached its express and/or implied warranties;

- Whether Unilever made negligent and/or fraudulent misrepresentations and/or omissions, and/or fraudulently concealed facts;

- Whether Plaintiffs and the members of the Class and Subclasses are entitled to relief.

Resolution of these common questions would require evaluation of the questions' merits under an objective standard, and Defendants' conduct with respect to all Covered Products is the same. *See, e.g., Hart v. BHH, LLC,* 2017 WL 2912519, at *6 (S.D.N.Y. July 7, 2017)

13

(commonality met where "the putative class members relied on the same alleged misrepresentations of fact regarding the efficacy of the [product], and suffered the same economic harm."); *Elkind v. Revlon Consumer Prods. Corp.,* No. CV 14-2484 (JS) (AKT), 2017 WL 9480894, at *9 (E.D.N.Y. Mar. 9, 2017) ("any member of the proposed class would have the same central claim: that the advertisements were misleading or deceptive"), *report and recommendation adopted,* No. 14-CV-2484(JS)(AKT), 2017 WL 1169552 (E.D.N.Y. Mar. 29, 2017).[5] Accordingly, commonality is present.

### 3.    Plaintiffs' Claims Are Typical of the Class.

Rule 23(a)(3) requires that the class representatives' claims be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Similar to commonality, the typicality requirement under Rule 23(a)(3) is "not demanding." *Tsereteli v. Residential Asset Securitization Tr.* 2006-A8, 283 F.R.D. 199, 208 (S.D.N.Y. 2012) (cleaned up). It requires only that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir. 2009) (cleaned up). "When the same unlawful conduct was directed at both the named plaintiff and the class to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Williams v. Gen. Nutrition Centers, Inc.,* No. 3:14-CV-1429-VLB, 2018 WL 11193531, at *3 (D. Conn. Sept. 21, 2018).

Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other Settlement Class Members. Plaintiffs, like all members of the Settlement Class, purchased the

---

[5] Although the ACC includes state-specific consumer protection claims, and Plaintiffs are all located in different states, that does not defeat commonality. *See Simerlein v. Toyota Motor Corp.,* No. 3:17-CV-1091 (VAB), 2019 WL 1435055, at *11 (D. Conn. Jan. 14, 2019) ("While a number of different state statues are implicated in this class action, there are common questions of fact that are capable of class-wide resolution, regardless of the individual state a proposed Class Member is located in.").

Covered Products during the Class Period that contained or risked containing benzene, a known carcinogen, without knowing or intending to do so. Plaintiffs and members of the Settlement Class suffered the same harm and injuries as a result of Defendants' alleged conduct – overpayment for the DSPs that would not have purchased or would have paid less for (ACC ¶¶ 8, 21, 132, 136). The alleged injuries to Plaintiffs and members of the Settlement Class are attributable to the same alleged course of conduct by Defendants, and liability for this conduct is predicated on the same legal theories. *Robidoux v. Celani,* 987 F.2d 931, 936-37 (2d Cir. 1993).

Plaintiffs' and Class Members' claims arise from the same nucleus of facts and are based on the same alleged contamination and legal theories. Thus, Lead Plaintiffs "have the incentive to prove all elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions." *Ligon, et al., v. City of New York, et al.,* 2012 WL 5871237 (S.D.N.Y.) (citing *Floyd v. City of New York*, 283 F.R.D. 153, 160 (S.D.N.Y. 2012)). Accordingly, typicality is satisfied.

### 4.    Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

Rule 23(a)(4) permits certification of a class only if "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement is two-fold and requires the court to consider whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Esposito,* 2020 WL 3489417, at *3; *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 60 (2d Cir. 2000). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Id.* "Where there is no evidence that the lead plaintiff and class members' interests are at odds, Courts presume the

adequacy requirement of class certification is satisfied." *Rincon-Marin v. Credit Control, LLC,* No. 3:17-CV-07 (VLB), 2018 WL 1035808, at *3 (D. Conn. Feb. 23, 2018).

Here, Plaintiffs and their counsel are adequate representatives. Plaintiffs' interests are closely aligned with those of the Class. Like all members of the Settlement Class, Plaintiffs have claims against Defendants in connection with their purchases of the DSPs during the Class Period. And Plaintiffs, like all members of the Settlement Class, were allegedly injured by Defendants' allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages allegedly caused by Defendants' wrongful conduct. Plaintiffs do not have any conflicts of interest with the absent members of the proposed Settlement Class, as their claims are coextensive with those of the proposed Settlement Class. *See In re Frontier Commc'ns Corp.,* 2022 WL 4080324, at *8 (D. Conn. May 20, 2022) (plaintiffs' interests are aligned with the class where they "share[] a common goal" of "maximizing recovery").

With respect to the second part of the inquiry, Plaintiffs retained competent counsel to vigorously investigate and prosecute their claims. *See Edwards v. N. Am. Power & Gas, LLC*, No. 3:14-CV-01714, 2018 WL 3715273, at *8 (D. Conn. Aug. 3, 2018) ("Adequacy of counsel asks whether the attorneys who seek to represent the class are competent to do the job." (quoting 1 Newberg on Class Actions § 3:54 (5th ed.)). Interim Lead Class Counsel invested considerable time and resources into the investigation of this action – bringing the alleged benzene contamination in Unilever's DSPs to light through this action, which pre-dated Unilever's recall of certain DSPs, and in their continued prosecution of this case (Bloch Decl. at ¶ 11) and, as the

Court has already found, they have the qualifications, experience, and ability to prosecute the claims. *See* ECF No. 60.

Accordingly, adequacy is satisfied, and the Court should appoint the Named Plaintiffs as Class representatives, and Interim Lead Class Counsel Silver Golub & Teitell LLP as Lead Class Counsel and the firms Sauder Schelkopf LLC and Squitieri & Fearon LLP as the Executive Committee for the Settlement Class.

### 5.    The Class Is Sufficiently Ascertainable.

The Second Circuit has "recognized an implied requirement of ascertainability in Rule 23." *Edwards,* 2018 WL 3715273, at *8  (citing *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017)). "Ascertainability requires only that a proposed class is defined using objective criteria that establish a membership with definite boundaries." *Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.,* 62 F.4th 704, 716 (2d Cir. 2023).

Here, the Class is readily ascertainable because it is defined using objective criteria with a sufficiently definite Class definition to allow class members to determine if they are part of the Class. *See, e.g., Simerlein v. Toyota Motor Corp.,* No. 3:17-CV-1091 (VAB), 2019 WL 1435055, at *11 (D. Conn. Jan. 14, 2019) (ascertainability present where class definition allowed class members to determine if they met the objective criteria of owning, purchasing, or leasing certain model year vehicles during class period); *Elkind,* 2017 WL 9480894, at *11 (ascertainability present because "proposed class is comprised of individuals who purchased foundation, powder or concealer belonging to the 'Revlon Age Defying with DNA Advantage' line of cosmetics"). Accordingly, ascertainability is met.

**B.  All Requirements of Rule 23(b)(3) Are Satisfied for Purposes of the Settlement.**

Once a court determines that the proposed class satisfies Rule 23(a), the next is inquiry is that the class must satisfy one of the requirements of Rule 23(b). *Rincon-Marin,* 2018 WL 1035808, at *2. Plaintiffs seek certification pursuant to subsection (b)(3). A class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). As set forth below, common issues predominate on each element of Plaintiffs' claims for the purpose of settlement, and a class action is the superior—and likely the only—way to fairly and efficiently adjudicate the controversy.

**1.    Common Issues Predominate on Each Element of Plaintiffs' Claims.**

Predominance "is a test that has been held to be 'readily met' in cases involving alleged consumer fraud." *Elkind*, 2017 WL 9480894, at *14; *Hasemann v. Gerber Prods. Co.,* 331 F.R.D. 239, 273 (E.D.N.Y. 2019) (same); *Amchem Prods., Inc*, 521 U.S. at 625 (same). "Predominance is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Edwards,* 2018 WL 3715273, at *8 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *Amchem Prod., Inc.,* 521 U.S. at 625 (explaining that consumer fraud cases readily satisfy the predominance inquiry). The purpose of predominance requirement is to avoid "the need for a series of mini-trials" to resolve individualized issues. *Moore v. PaineWebber, Inc.,* 306 F.3d 1247, 1253 (2d Cir. 2002).

Importantly, "the predominance requirement differs between trial and settlement" because "with a settlement class, the manageability concerns posed by numerous individual questions disappear*." In re Petrobras Sec. Litig.,* 317 F. Supp. 3d 858, 870 (S.D.N.Y. 2018), aff'd, 784 F. App'x 10 (2d Cir. 2019) (quoting *Am. Int'l Grp.,* 689 F.3d at 241) (cleaned up). Because a settlement effectively resolves any such issues, "settlement itself allows common issues to predominate." *NFL Concussion Litig.,* 307 F.R.D. 351, 381 (E.D. Pa. 2015), amended sub nom. *In re Nat'l Football League Players' Concussion Inj. Litig.,* No. 2:12-MD-02323-AB, 2015 WL 12827803 (E.D. Pa. May 8, 2015).

Here, Plaintiffs' claims arise out of Defendants' manufacture, marketing, and sale of the DSPs and components thereof and are susceptible to class wide proof. Each Settlement Class Members' claims depend upon a showing that Defendants improperly manufactured, marketed, sold, and distributed the Covered Products, including the components thereof, and that the Covered Products, or components thereof, were contaminated (or risked being contaminated) with unsafe levels of benzene as such. As discussed, Section I(A)(2), *supra*, common questions include, but are not limited to, whether the Products contain benzene, whether Defendants knew or should have known of the alleged benzene contamination, and whether Defendants' failure to disclose the presence of benzene in the DSPs was likely to deceive reasonable consumers. These central common questions predominate over any questions that may affect individual Settlement Class Members, are subject to "generalized proof," and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases,* 461 F.3d 219, 227–28 (2d Cir. 2006); *Hasemann,* 331 F.R.D. at 273 ("a class plaintiff is only required to show that "*questions* common to the class predominate" (emphasis in original)). Accordingly, predominance is met.

## 2.    A Class Action is Superior to Other Methods of Adjudication.

Under Rule 23(b)(3), a court assesses the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in a single forum, and the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. 23(b)(3)(A)-(D).

A class action is the superior method for the fair and efficient adjudication of the claims in this litigation. Plaintiffs' claims are shared by tens of thousands of consumers (if not hundreds of thousands) nationwide, and resolution of all Settlement Class Members' claims in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Edwards*, 2018 WL 3715273, at \*9 ("The common evidence and question of law and fact also ensure that a class would be efficient and preserve judicial resources, especially given is geographical scope and the number of individuals in the class." (citing *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008)); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,* 269 F.R.D. 468, 480 (E.D. Pa. 2010) (in consumer product class action, recognition that "the class action mechanism both promotes judicial economy and provides a greater number of potential plaintiffs with the opportunity to seek compensation").

Additionally, it is unlikely that any Settlement Class member would be willing or able to pursue relief on an individual basis. Litigation costs, including the costs of hiring economic experts, would quickly exceed any potential recovery on an individual basis. *See Edwards,* 2018 WL 3715273, at \*9 ("The individual claims are too small to be brought absent the class action; they are the type of small claims that represent the very core of the class action mechanism....."); *see also In re Scotts EZ Seed Litig.,* 304 F.R.D. 397, 415 (S.D.N.Y. 2015) (where "proceeding

individually would be prohibitive" the class action device is "frequently superior") (cleaned up);

*Spann v. J.C. Penney Corp.,* 314 F.R.D. 312, 323 (C.D. Cal. 2016) (noting that in consumer case,

"the ultimate recovery by settlement class members would be dwarfed by the cost of litigating on

an individual basis, and any settlement class member who wishes to opt out may do so"). Thus, a

class action is the most effective means to pursue relief.

Moreover, because class certification is only for purposes of settlement, "the Court need

not inquire as to whether the case, if tried, would present management problems." *Nichols v.*

*Noom, Inc*., 2022 WL 2705354, at \*6 (S.D.N.Y. July 12, 2022).

## II.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL UNDER FED. R. CIV. P. 23(e)(2).

The second part of preliminary approval is the court's determination of "whether a given

settlement agreement is 'fair, reasonable, and adequate.'" *Edwards,* 2018 WL 3715273, at \*9

(citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 194 (S.D.N.Y. 2012)). In doing

so, the court assesses whether it "will likely be able to approve the proposal Rule 23(e)(2)." Fed.

R. Civ. P. 23(e)(1)(B). The factors relevant to this assessment include:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Within this framework, if "the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class and falls within the

reasonable range of approval, preliminary approval is granted." *O'Connor v. AR Res., Inc.,* 2010

WL 1279023, at *3 (D. Conn. Mar. 30, 2010) (quoting *In re Nasdaq Mkt.-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997)). Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes,* 270 F.R.D. at 101 (quoting *In re Traffic Executive Association–Eastern Railroads,* 627 F.2d 631, 634 (2d Cir.1980)).

### A.  The Settlement Is Procedurally Fair Under Rule 23(e)(2)(A)-(B).

To be procedurally fair, the class representative and class counsel must have adequately represented the class, and the proposal must have been negotiated at arm's length. Fed. R. Civ. P. 23(e)(2). These factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2), Advisory Committee Note to 2018 Amendment; *see also Simerlein v. Toyota Motor Corp.,* 2019 WL 2417404, at *17 (D. Conn. June 10, 2019). Where the settlement is the result of "arm's-length negotiations between experienced, capable counsel after meaningful discovery," there is a presumption of fairness, reasonableness, and adequacy. *McReynolds v. Richards-Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005)).

First, Plaintiffs and Interim Lead Class Counsel are adequate representatives of the Class because there are no conflicts of interest between Plaintiffs and other Class members, and because Interim Class Counsel have the necessary qualifications and experience to effectively represent the interests of the Class. *See* Section I(A)(4), *supra*. Additionally, Plaintiffs have demonstrated their commitment as advocates by stepping forward to prosecute these claims, producing documents in response to Defendants' discovery requests, answering interrogatories, and being willing to testify at deposition – and, if necessary – at trial. Interim Class Counsel have likewise

been vigorous in their pursuit of the Class's claims, beginning with their initial investigation and continuing through settlement, expending substantial time and resources.

Second, the Settlement Agreement was negotiated at arm's length by highly experienced counsel after two and a half years of litigation. After more than a year of discovery, which included responses to discovery requests by both Plaintiffs and Defendants, analysis of documents and data produced, completing full briefing on Defendants' various motions to dismiss, consulting with experts, and staying apprised of developments in consumer product benzene contamination case law in similar benzene contamination cases, counsel was well-informed about the facts and strengths and risks of the claims during the extensive negotiation process. Bloch Decl., *passim*.

Additionally, the Settlement occurred after mediation before an experienced mediator. *See In re Synchrony Fin. Sec. Litig.*, No. 3:18-CV-1818-VAB, 2023 WL 4992933, at *5 (D. Conn. Aug. 4, 2023) ("That the negotiations included active participation by an experienced mediator supports finding that the Settlement is procedurally fair."); Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("[T]he involvement of a neutral or court affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). Therefore, the Settlement Agreement is entitled to a presumption of fairness, reasonableness, and adequacy.

**B.  The Settlement Is Substantively Fair under Rule 23(e)(2)(C)-(D).**

Preliminary approval is appropriate "where the settlement appears to fall within the range of possible approval." *Menkes,* 270 F.R.D. at 101 (quoting *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 33 (E.D.N.Y. 2006)). "In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage." *Reade-*

*Alvarez,* 237 F.R.D. at 34. Preliminary approval "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *Menkes,* 270 F.R.D. at 101.

As stated by the Advisory Committee Notes to the 2018 amendments, the amendment to Rule 23(e) "directs the parties to present the settlement to the court in terms of a shorter list of core concerns, by focusing on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." Fed. R. Civ. P. 23, advisory committee notes to 2018 amendments. Those factors include: (1) "the relief provided for the class is adequate, taking into account[:] (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3)"; and (2) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C).

Prior to the codification of Rule 23(e)(2)(C)'s four-factor framework in December 2018, courts in this Circuit employed the nine-factor framework set forth in Cit*y of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

The *Grinnell* factors overlap substantially with the four-factor test in Rule 23(e)(2)(C), but to the extent a factor does not, it is separately addressed in Section II(B)(3), *infra*.

**1.    The Proposed Settlement Provides Adequate Relief under Rule 23(e)(2)(C).**

*a.   The Costs, Risks, and Delay of Trial and Appeal*

To decide whether a settlement falls within the range of reasonableness, courts must consider "the costs, risks, and delay of trial and appeal." Rule 23(e)(2)(C)(i). In determining the risks of establishing liability and damages, courts need not 'adjudicate the disputed issues or decide unsettled questions; rather, [courts] need only assess the risks of litigation against the certainty of recovery under the proposed settlement.'" *Frontier Commc'ns,* 2022 WL 4080324, at *13 (quoting *In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them and courts therefore favor class action settlements." *Berryman v. Avantus, LLC,* No. 3:21-CV-1651-VAB, 2024 WL 2108824, at *7 (D. Conn. May 10, 2024) (internal quotation marks omitted) (citing *Grinnell,* 495 F.2d at 463)

Here, the litigation is over two and a half years old and has encompassed several rounds of pleadings, motion to dismiss briefing, and fact discovery. If the case were to continue (after the Court issued decisions on Defendants' respective motions to dismiss), the parties would need to conduct additional fact and class discovery and brief class certification, engage in expert discovery, brief summary judgment and likely *Daubert* issues, and then trial. *See Berryman*, 2024 WL 2108824, at *7 (recognizing that this weighs in favor of approval where, "[i]f the parties had not reached their proposed settlement, this case would have proceeded through a ruling on Plaintiff's motion for class certification, dispositive motions, and trial"). Obtaining and maintaining certification of a litigation class would likewise involve lengthy and complex factual and legal development, expensive expert analysis, and likely requested Rule 23(f) review. *See In re Frontier Commc'ns Corp.,* 2022 WL 4080324, at *13 ("Though the Court has certified the

class for settlement purposes, the process of class certification would have subjected Plaintiffs to considerably more risk than the certification that was ordered for the sole purpose of the Settlement.") (cleaned up).

The Settlement, by contrast, provides immediate, certain, and meaningful relief to the Class in the form of a full refund of the purchase price to Settlement Class Members with Proof of Purchase and $3.00 (approximately half the average purchase price of the Covered Products) to Settlement Class Members without Proof of Purchase. Thus, notwithstanding the substantial risks and uncertainty present in this case, the Settlement provides Settlement Class Members as good a result on an individual basis as they could have achieved at trial.

Here, based on the documents and data produced by Defendants, purchases of DSPs from a pool of approximately 10 million units were potentially subject to the alleged benzene contamination. Bloch Decl. ¶ 20, Based on price premium analyses that have been employed in other actions, the $3,625,000.00 Settlement Fund represents approximately a 24% recovery as compared to the Settlement Class's best recovery at trial in compensatory damages.

        b. *The Effectiveness of Any Proposed Method of Distributing Relief To The Class*

Settlement Class Members need only submit a simple claim form in order to receive monetary relief. *See* Decl. Ex. 1 at § 3.4. Courts have recognized this as a reasonable method of distributing relief.  *See, e.g., Patellos v. Hello Products, LLC,* 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (holding "the relief provided to the Settlement Class is adequate taking into account, inter alia … the proposed method of distributing payments to the Settlement Class" where class members were required to submit a claim form to receive monetary relief); *Kolinek v. Walgreen Co.,* 311 F.R.D. 483, 499 (N.D. Ill. 2015) (holding it was "neither unfair nor

unreasonable" to ask claimants to submit a "short and direct" claim form that required claimants to provide their names, address, and signature, and to check a box if they wished to make a claim).

### c.  The Terms of Any Proposed Award of Attorney's Fees

Under the Settlement Agreement, Class Counsel may apply to the Court for an award of attorneys' fees and expenses incurred on behalf of the Class not to exceed one-third of the total Settlement Amount ($1,208,333), plus reimbursement of Costs, which are capped at $115,000. *See* Decl. Ex. 1 at § 5.1. Although the Court need not yet reach this determination, this amount is in line with the award of attorneys' fees and costs in similar actions and legal precedent in this Circuit. *Shallin v. Payless Shoesource, Inc.,* No. 3:14-CV-00335-RNC, 2015 WL 13636424, at *1 (D. Conn. June 10, 2015) (finding "on a preliminary basis, an award of attorney's fees and litigation expenses not to exceed thirty-three and one third percent of the Maximum Settlement Amount is fair, reasonable and justified").

By granting preliminary approval of the proposed settlement, the Court does not in any way pass upon the reasonableness of any fee or expense application. In accordance with the terms of the Settlement Agreement, Class Counsel will submit full briefing supporting their request for attorneys' fees and expenses in time for Class members to consider it before the deadline for objections to the Settlement. *See* Decl. Ex. 1 at § 5.1. Class Counsel will not receive any payment unless and until the Court grants their fee request.

### d.  Any Agreement Required to be Identified Under Rule 23(e)(3)

No agreement between the parties in connection with this litigation other than the Settlement exists. All the terms of the proposed Settlement are contained within the Settlement Agreement.

27

2.    **The Proposal Treats Class Members Equitably Relative To Each Other under Rule 23(e)(2)(D).**

Rule 23(e)(2)(D) requires that the Class Members be treated equitably. The Settlement proposal here does not grant preferential treatment to Class Representatives or any segment of the proposed Settlement Class.  Although those with Proof of Purchase will be eligible to receive compensation for as many Covered Products for which they have proof—as opposed to being limited to four Covered Products—that does not mean Class Members are treated inequitably. *See Patellos v. Hello Products, LLC*, 2022 WL 2159566, at *1 (S.D.N.Y. June 15, 2022) (finding "the Settlement Agreement treats the Settlement Class Members equitably relative to one another" where class members with proof of purchase could make claims for up to ten products, versus up to five products without proof of purchase). The cap on claims without Proof of Purchase is necessary in order to deter fraudulent claims. Bloch Decl. ¶ 21. Further, all Settlement Class Members' claims are subject to an upward or downward pro rata adjustment if they exceed the available Settlement Fund, which is recognized as an equitable method in this Circuit. *Meredith Corp. v. SESAC, LLC,* 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata distribution plan "appears to treat the class members equitably … and has the benefit of simplicity").

3.    **Additional Factors to Consider**

a.    *Range of Reasonableness*

Under *Grinnell,* this Court considers "the range of reasonableness of the settlement fund," both given the risks discussed above and "in light of the best possible recovery." *Grinnell,* 495 F.2d at 463. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Philemon v. Aries Cap. Partners, Inc.,* 2019 WL 13224983, at *12 (E.D.N.Y. July 1, 2019). Instead, "[w]hen the

proposed settlement provides a meaningful benefit to the class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Id.*

As discussed previously herein, the Settlement obtained by Plaintiffs—which provides immediate relief to the Class—is well within the range of reasonableness based on settlements approved by courts in benzene litigation. *See, e.g., Barnes* (settlement fund of $2 million); *Goldstein* (settlement fund of $1.95 million); *Evans* (settlement fund of $2.5 million); *Henning* (settlement fund of $850,000); *Bangoura* (settlement fund of $2.3 million).

### b.  Stage of the Proceedings

Also under *Grinnell,* relevant to preliminary approval inquiry is the "the stage of the proceedings and the amount of discovery completed." *Grinnell,* 495 F.2d at 463. "Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims." *Berryman*, 2024 WL 2108824, at *8 (D. Conn. May 10, 2024).

Interim Lead Class Counsel has litigated this case from pre-suit investigation through the briefing of multiple motions to stay by Unilever and Defendants' respective motions to dismiss and a motion to stay. Bloch Decl. at ¶ 11. Further, the parties exchanged discovery requests, with both Plaintiffs and Defendants serving responses and objections thereto, Plaintiffs and all three Defendants produced documents in response to requests for production, and Plaintiffs' counsel reviewed and analyzed the documents provided by Defendants. *Id.* at ¶¶ 7-8. Additionally, Plaintiffs' counsel consulted with laboratory testing facility Valisure regarding the testing of Unilever's DSPs and several consumer product litigation experts, including relating to the harm from benzene, manufacturing standards, and economic analysis. *Id.* at ¶ 8. After more than a year of discovery, the parties engaged in critical analysis of the strengths and weaknesses of the parties'

claims and defenses in a second mediation before Judge Hodgson, who, as the mediator in another consumer product benzene contamination case against Unilever that reached a settlement (*Barnes v. Unilever United States, Inc.*, Case No.: 1:21-cv-06191, N.D. Ill. (MFK)), was well-versed in the issues of this case and similar benzene litigation. Bloch Decl. at ¶ 9. Accordingly, the stage of the proceedings and discovery had sufficiently progressed for Interim Lead Class Counsel to "have weighed their position based on a full consideration of the possibilities facing them." *Berryman*, 2024 WL 2108824, at *8 (citing *Global*, 225 F.R.D. at 458).

## III.    THE PROPOSED NOTICE PLAN COMPLIES WITH FED. R. CIV. P. 23(c).

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Complex Litigation § 21.312 (4th ed. 2023). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 113 (2d Cir. 2005). For notice to be satisfactory, it must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Here, after engaging claims administrators in a bidding process, Plaintiffs selected, and Defendants approved, Angeion to oversee the administration of the Settlement. Angeion is an experienced settlement and claims administration firm with sophisticated technological

capabilities, including fraudulent claim detection abilities, and is staffed by personnel well-versed in class action litigation, including cases of alleged benzene contamination in consumer products. *See, e.g., Henning v. Luxury Brand Partners LLC,* Case No. 3:22-cv-07011 (N.D. Cal.) (class action alleging benzene contamination in consumer dry shampoo products); *Evans et al. v. Church & Dwight Co. Inc.,* Case No. 22-cv-06301 (N.D. Ill.) (same); *Barnes et al. v. Unilever United States Inc.,* Case No. 1:21-cv-06191 (N.D. Ill.) (class action alleging benzene contamination in consumer antiperspirant products); *Goldstein v. Henkel Corporation et al.,* Case No. 3:22-cv-00164-AWT, ECF No. 97 (D. Conn. Dec. 13, 2023) (same); *Bangoura et al. v. Beiersdorf Inc. and Bayer Healthcare LLC*, Case No. 1:22-cv-00291 (E.D.N.Y.) (class action alleging benzene contamination in consumer sunscreen products). Accordingly, Angeion, as an experienced Claims Administrator, is a proper Claims Administrator for the Settlement.

The Parties have agreed upon a notice plan for Angeion to administer that satisfies the requirements of Fed. R. Civ. P. 23 and Due Process. As set forth in the Declaration of Stephanie Saunders, Vice President of Class Action and Mass Tort Services at Angeion, Angeion will provide direct notice to the Settlement Class via e-mail where possible and will otherwise provide notice to the Settlement Class via a comprehensive social media campaign. Saunders Decl. ¶¶ 14-40. Angeion's plan is designed to reach in excess of 70% of Settlement Class members. Saunders Decl. ¶ 45; Federal Judicial Center, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE, at 3 (2010) (explaining a proposed notice plan should "reach between 70-95%" of class members).

Angeion also will establish a Settlement Website containing all salient Settlement documents, access to important Court documents, upcoming deadlines, and the ability to file claim forms online. Saunders Decl. at ¶¶ 37-40. Additionally, the Claims Administrator will

provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"). Saunder Decl. at ¶ 41.

The Notice provides detailed information about the Settlement, including: (i) a comprehensive summary of its terms; (ii) Plaintiffs' Counsel's intent to request attorneys' fees, reimbursement of expenses, and service awards for the Class Representatives; (iii) detailed information about the Released Claims; (iv) information about the Final Approval Hearing date; (v) the right of Settlement Class Members to seek exclusion from the Settlement Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so); and (vi) the procedure to receive additional information. *See* Saunders Decl. ¶ 37; Set. Agmt. Exs. B, B1, and B2. This information is adequate to put Settlement Class Members on notice of the proposed Settlement and is well within the requirements of Fed. R. Civ. P. 23(c)(2)(B).

Accordingly, the Court should approve Angeion as Claims Administrator and approve the form and plan of the proposed notice.

## IV.    THE PROPOSED SCHEDULE OF SETTLEMENT EVENTS IS FAIR.

As set forth in the proposed order, the parties have proposed the below schedule for completing Settlement-related events, the timing of each of which is determined by the date the Preliminary Approval Order is entered and the date of the Settlement Hearing.

| Event | Suggested Deadline Pursuant to Settlement |
|---|---|
| Notice Date | 30 days after Preliminary Approval |
| Motion for Final Approval | 75 days prior to the Final Approval Hearing |
| Application for Attorneys' Fees and Costs and Service Awards | 15 days prior to the Objection and Exclusion Deadlines |

| Claim Filing Deadline | 60 days prior to Final Approval Hearing |
|---|---|
| Objection Deadline and Exclusion Deadline | 60 days prior to Final Approval Hearing |
| Reply in Support of Final Approval and responses to any objections | 30 days prior to Final Approval Hearing |
| Reply in Support of Application for Attorneys' Fees and Costs and Service Awards and responses to any objections | 30 days prior to Final Approval Hearing |
| Class Counsel submits declaration from Claims Administrator (1) stating the number of claims, requests for exclusion, and objections to date and (2) attesting that Class Notice was disseminated in a manner consistent with the Settlement or otherwise required by the Court. | 21 days prior to Final Approval Hearing |
| Notice of Intention to Appear at the Final Approval Hearing | 14 days prior to Final Approval Hearing |
| Final Approval Hearing | 150 days after Notice Date, or as soon thereafter as may be heard by the Court |

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (i) granting preliminary approval of the Settlement Agreement, (ii) preliminarily certifying the Settlement Class, (iii) preliminarily approving the Plan of Allocation set forth in the Settlement Agreement; (iv) appointing Silver Golub & Teitell LLP as Lead Class Counsel, and appointing Sauder Schelkopf LLC and Squitieri & Fearon LLP as the Executive Committee, (v) appointing

the Named Plaintiffs as Class Representatives, (vi) approving the form and manner of notice to

the Class, and (vii) appointing Angeion as Settlement Administrator.

Dated: May 5, 2025                          Respectfully submitted,

                                            **SILVER GOLUB & TEITELL LLP**

                                            */s/ Steven L. Bloch*
                                            Steven L. Bloch (ct31246)
                                            Ian W. Sloss (ct31244)
                                            Johnathan Seredynski (ct30412)
                                            Krystyna Gancoss (ct31660)
                                            SILVER GOLUB & TEITELL LLP
                                            One Landmark Square, 15th Floor
                                            Stamford, CT 06901
                                            Telephone: (203) 325-4491
                                            Facsimile: (203) 325-3769
                                            sbloch@sgtlaw.com
                                            isloss@sgtlaw.com
                                            jseredynski@sgtlaw.com
                                            kgancoss@sgtlaw.com

                                            *Interim Lead Class Counsel*

                                            SAUDER SCHELKOPF
                                            Joseph G. Sauder*
                                            1109 Lancaster Avenue
                                            Berwyn, PA 19312
                                            Telephone: (888) 711-9975
                                            Facsimile: (610) 421-1326
                                            jgs@sstriallawyers.com

                                            SQUITIERI & FEARON, LLP
                                            Stephen J. Fearon, Jr.*
                                            305 Broadway, 7th Floor
                                            New York, New York 10007
                                            P: (212) 421-6492
                                            F. (212) 421-6553
                                            stephen@sfclasslaw.com

                                            *Admitted pro hac vice*

                                            *Interim Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2025, a copy of the foregoing was filed electronically with the Clerk of Court via CM/ECF. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the court's CM/ECF system.


*/s/ Steven L. Bloch*
Steven L. Bloch